## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **CRIMINAL NO. 12-65 (CKK)** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **PAUL DAVID HITE,** | **:** | |
| **Defendant.** | **:** | |

## GOVERNMENT'S MOTION *IN LIMINE* TO INTRODUCE
## EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(B)

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves *in limine* for admission of certain evidence found on the defendant's computer pursuant to Federal Rule of Evidence 404(b). The United States relies upon the points and authorities cited herein and at any hearing on this matter to support its request for admission of this evidence.

## PROCEDURAL BACKGROUND

1.      The defendant, Paul David Hite, was arrested on February 17, 2012, and charged with attempted coercion and enticement of a minor, in violation 18 U.S.C. § 2422(b). The defendant's arrest arose from Internet chatroom and telephone conversations with Metropolitan Police Department Detective Timothy Palchak between February 1 and February 17, 2012.[1]

2.      On March 13, 2012, a federal grand jury returned a one-count indictment against the defendant, charging him with Attempted Coercion and Enticement of a Minor (a 12-year-old girl), in violation of 18 U.S.C. § 2422(b). On April 10, 2012, a federal grand jury returned a superseding indictment, charging the defendant with two counts of Attempted Coercion and Enticement of a

---

[1] Detective Palchak was working in an undercover capacity, posing as an adult with sexual access to a 12-year-old girl and a 3-year-old boy. Detective Palchak is referred to herein as "the Adult".

Minor (one count for a 12-year-old girl and one count for a 3-year-old boy).

3.      On May 3, 2012, the defendant filed a pre-trial motion to dismiss Counts One and

Two of the Indictment on insufficiency of the evidence and First Amendment grounds (Def.'s Mot.,

ECF No. 11).  By memorandum opinion, dated June 30, 2012 (ECF No. 15), this Court denied the

defendant's motion to dismiss.  On July 23, 2012, the defendant filed a supplemental motion to

dismiss Counts One and Two of the Superseding Indictment on First Amendment grounds (Def.'s

Supp. Mot., ECF No. 16).  By memorandum opinion, dated October 9, 2012 (ECF No. 23), this

Court denied the defendant's supplemental motion to dismiss.

4.      At a status hearing on September 24, 2012, this Court set a further status hearing for

October 24, 2012, at which time the Court expected to set a trial date.  This Court also ordered that

the government file any motion to introduce evidence pursuant to Federal Rule of Evidence 404(b)

by October 19, 2012.  For the reasons provided herein, the government respectfully requests that the

Court admit the evidence described below pursuant to Federal Rule of Evidence 404(b).

## FACTUAL BACKGROUND

On February 1, 2012, the defendant initiated contact with the Adult, indicating "love perv"

and further stating "love pedo here".  (Chat Transcript, at 1.)[2]  After being informed that the Adult

had engaged in sexual activity with two minors, "limited with 3 yo nephew, full active with my gf

12 yo girl", the defendant responded "mmmm---HOT" and "would love both for sure".  Id.  The

---

[2]  In support of his first motion to dismiss, the defendant provided the Court with a 65-page transcript of the chat communications between the defendant and the Adult (ECF No. 11-1) [hereinafter "Chat Transcript"], and transcripts of his February 14, 2012, and February 17, 2012, recorded one-party consent telephone calls with the Adult (ECF No. 12-1 [hereinafter "First Call Transcript"]) and ECF No. 12-2 [hereinafter "Second Call Transcript"], respectively.)  The chat and call transcripts are quoted verbatim herein, including spelling and syntax errors.

defendant asked questions about sexual activity with the 12-year-old girl, specifically "how long you been doing the girl?" and further stated "girl must love it" and "she have any pubes now?" before suggesting that he and the Adult "stay in touch" and giving the Adult his Yahoo screen name.  Id.

After switching to Yahoo, the defendant continued to ask questions about sexual activity with the minor girl and continued to express interest in engaging in sexual activity with the minor girl, stating, "she still basically smooth?", "love to get my tongue in that", "she like to be eaten out", "she tasty?", "how often you get to play with her?", and "HOT---- tits?"  Id. at 3.  The defendant then asked about the 3-year-old boy, stating "you have a 3 nephew" and after the Adult responded, "yes, limited with him though don't have a lot og alone time with him", the defendant replied "gotcha-----maybe as he get a bit older can hang with him more".  Id. at 4.

The defendant continued to ask questions about sexual activity with the minor girl, stating "she like cum?", "fuck her bare?", "cum in her pussy?", "she had her period?", "what really gets her hot/excited?", and "ever rim her?"  Id. at 5-6.  The defendant then continued to expressed interest in engaging in sexual activity with the minor girl, stating, to the Adult, "you are a hot guy from your body pic" and "BOTH of you would excite me".  Id. at 6.  The defendant then asked the Adult to find out from the minor girl whether she would be willing to engage in sexual activity with him. After the Adult stated "would be totally hit to all hook up, i have talked to her loosely about a third getting involved she knows im bi" the defendant responded "would work for me for sure" and after the Adult stated "sweet if you want i will ask her and see if she would agree" the defendant responded "MMMMMM---sounds like a plan to me".  Id.  After the Adult stated "do you want me to show her your pic if she asks" the defendant asked the Adult to show his photo to the minor girl, stating  "sure---you can show her the pic".  Id.

The defendant and the Adult then discussed scheduling a meeting with the Adult and minor girl based on the defendant's availability, with the defendant stating "weekends generally would be better" and after the Adult indicated he had the minor "on some weekends as well as maybe like a Friday night or sat" the defendant responded "that would be PERFECT with some notice".  Id. at 7.

After the Adult informed the defendant "but of course I will ask her prior to make sure she wants to do it" the defendant asked the Adult to find out what the minor girl thought of the plan, stating "YES----want her to be into it".  Id.  The defendant again discussed engaging in sexual activity with the minor girl, stating "and we can suck your cock . . . we both can eat her pussy" and "one rim and one eat pussy and then switch".  Id.  After the Adult indicated "i will i have a pic of her if you wanna see" the defendant requested to see a photo of the minor girl, stating "love to see" and upon receipt of the photo then commented "oh wow . . . MMMMM" and "she is fuckin ADORABLE".  Id. at 8.  After the Adult inquired "any pic of you that you want me to show her or just your pro pics on [the website]", the defendant asked the Adult to show the minor girl a specific photo of him, stating "the shirtless pic on [the website] works".  Id. at 9.  The defendant later stated "THANKS for letting me see" adding "we could have a BALL".  Id.

On February 3, 2012, the defendant stated that he "loved the pic of Christy" (the minor girl). Id. at 11.  When the Adult indicated "i told her about what we discussed" later adding "yes, i have loosely floated the idea about a third but wasn't sure if she knew i was serious", the defendant asked the Adult what the minor girl thought of the plan responding "understand----did she like the idea?" Id.  After the Adult stated that "she seemed to be ok with it", the defendant indicated he was willing to adjust to make the minor feel more comfortable responding "hot----very low key and sane here----

willing to take it slowly at her pace". <u>Id.</u> at 12.  The defendant again discussed scheduling a meeting with the Adult and the minor girl based on the defendant's availability, with the Adult stating "i may haver next Fri if that works let me know i will reach out to my gf", to which the defendant responded "mmmm----not sure about next Friday---dammit". <u>Id.</u> at 13.  The Adult replied "let me know what dates are good for you and i will try to coordinate it with Christy and my gf". <u>Id.</u>

The defendant then asked about sexual activity with the 3-year-old boy, stating "plus that 3yo nephew", "bet he is a CUTIE", "he get hard?", "get to rim him?", and "what did he think of your hard man cock?" <u>Id.</u> at 14.  When the Adult asked "would you suck a 3 yo cock if you could", the defendant responded "FUCK YEAH". <u>Id.</u>  When the Adult further stated "be hot with a 3rd with him but we aould be lmited to oral . . . not sure if that is your thing or not", the defendant asked to engage in sexual activity with the minor boy responding "oh YEAH----LOVE oral . . . count me IN with him also". <u>Id.</u> at 15.  When the Adult stated "best part about him he is pretty much non-verbal, very limited vocabulary . . . which one first would you feel more comfortable with him first?" the defendant expressed a preference for the minor boy, responding "NICE----was curious how you kept him from blabbing\ . . . mmmmm----that might work better for sure". <u>Id.</u>  Afer the Adult stated "i offer to watch him from time to time, they always take me up on it cause he keeps them busy as shit", the defendant again asked to engage in sexual activity with the minor boy by responding "HOT----would love to help you with him sometime---plus love to play while he still not very verbal". <u>Id.</u>

On February 6, 2012, the defendant and the Adult again discussed scheduling a meeting with the Adult and the minor boy based on the defendant's availability, with the Adult stating "i told my

brother that i would watch him in the near future so he and his wife could get a break", to which the defendant responded "NICE . . . they open to that?". <u>Id.</u> at 20. After the Adult stated "have to check my schedule to but was thinking a frday towards the end of the month like the 24", the defendant responded "will have to do the same but sounds plausible for sure". <u>Id.</u> When the Adult stated, "if your more into the fantasy and not realtime its cool just let me know, don't want you to be uncomfortable or freak out", the defendant responded "awww----THANKS-----appreciate your being receptive to my needs" adding "LOVE to help you out, though". <u>Id.</u> The defendant again discussed plans to meet with the Adult and the minor boy. After the defendant suggested, "think we should meet just us 2 before the introduction of the hotties just to make sure we are comfortable?", the Adult suggested "you could come on a Friday and stay over and all play on sat, up to you, again no worries if your not interested in the little one", to which the defendant replied "lol---I AM interested in little one", "just very cautious here", and "we meet and play and hit it off---maybe look at some pics----confirm expectations and THEN------MMMMM . . . count me IN". <u>Id.</u> at 21. The defendant further suggested "us meeting and getting naked and taking perv", "lol----cops won't get naked and have sex with you", and "we do that----should be very comfortable on both sets to let it totally hang". <u>Id.</u> at 22. After the Adult stated "and again if your just into me let me know and we can do just that", the defendant replied "lol----NO---am TOTALLY into your scene . . . THAT is not the issue . . . just want to be sure we are both whom we say we are". <u>Id.</u> After the Adult stated "i would tell my brother i would watch him on Sat, gives us time to play and prove to each other on Fri", the defendant responded "nothing wrong with 2 adult males meeting on Friday to have sex" and "once we are comfortable, bring IT on". <u>Id.</u> The defendant then again discussed engaging in sexual activity with the minor boy, stating "want to have him lick and suck my cock, your cock". The

defendant also asked for the Adult's permission with regard to planned sexual activity with the minor boy, asking "so he okay with penetration with your pinkie?" "LOVE that-----we will have to do that also----IF you are ok with it". Id. at 24-25. The defendant and the Adult then discussed a date, times, and logistics of meeting at the Adult's residence in the District of Columbia, including where the defendant might be able to park his car. Id. at 25-26.[3]

The defendant also asked whether the Adult ever gave either minor alcohol, stating "ever give Christy of the nephew any alcohol to relax them?", and after the Adult indicated he had given alcohol to the minor girl and Benadryl to the minor boy, the defendant responded "NICE on BOTH accounts" and asked the Adult to obtain Benadryl for the minor boy, stating "hehe—make sure you have some with the nephew". Id. at 30.

On February 7, 2012, the Adult and the defendant again discussed plans to meet with the Adult and the minor boy, with the Adult stating "ok i wasnt sure if it was a thrill discussion or about being careful for realtime with [the minor boy] either way is fine" to which the defendant responded "WANT real time with him" Id. at 33. The defendant later stated "IF after we meet you don't think I fill what you are looking for to proceed-----I understand" before continuing "I WANT your nephew to ENJOY this", "teach him the pleasures his body holds for him", "count me totally IN", "and with the 2 of us there----we can show him how to suck cock . . . how 2 guys MUTUALLY pleasure each other . . . lol----that is why you need me----hehe". Id. at 34. The defendant again asked the Adult to obtain Benadryl for the minor boy, stating "we need Benadryl for him when we meet", adding

---

[3] The defendant reiterated his interest in the 12-year-old girl, stating "want to meet [the minor girl] also." (Chat Transcript, at 28). The defendant further stated "one area we have to be careful with her is that I am not 'fixed'", adding that he would have to use a condom with her even though he "would love to fuck her sweet cunt bare". Id. The defendant later stated he would "ADJUST to the circumstances for sure" . Id. at 29.

"plus will distort any recollection he could have". Id. at 36.  Later in the conversation, the defendant

again discussed plans to meet with the Adult and the minor boy, with the Adult stating "my brother

text me today and said that it was up to me since i am doing them the favor of watching him.  I told

him sat Feb 18" adding "that way you and i can meet Fri and do our validation thing", to which the

defendant responded "that works fantastically for me".  Id. at 37-38.  The defendant then asked

"what time Saturday with the hottie arrive" before offering to do anything to facilitate sexual activity

with the minor boy, stating "will do anything you want to enable this arrangement".  Id. at 39.

The defendant then discussed how to initiate sexual activity with the minor boy, asking "you

know your nephew----how you want to start with him on Saturday?"  Id. at 40.  The defendant

offered to bring items for sexual activity with the minor boy, asking "should I bring bananas?" and

suggesting "was wondering if jelly or honey might work better than a banana", "what about peanut

butter?", "he would REALLY have to lick to get the peanut butter", "do want to put some peanut

butter in your ass so we can both rim you", and "with both of those should keep him enticed".  Id.

at 40-41 (emphasis added).

On February 9, 2012, the defendant again discussed items for sexual activity with the minor

boy, stating "have a great prop to bring for us to use" adding "got a gag gift of a jar of peanut butter

and grape jelly pre-mixed----hehe—THAT should be fun", "lol—thought that might be perfect for

our HOT scene", and "but the more I think about it---should be perfect to stimulate oral

exploration".  Id. at 46-47.  The defendant also asked the Adult to pass along a message to the minor

girl, asking "when you gonna see Christy again?" and "tell her hello from me---can't wait to meet

her".  Id. at 47.

On February 10, 2012, the defendant again discussed sexual activity with the minor boy, asking "ever done any piss play with him?" Id. at 52. After the Adult indicated "big into piss play, "done it with both Christy and the nephew", and "i have set up these cheap little plastic toys around my cock and stomach and he knocks them down with his piss", the defendant responded "would love that too" and further inquired "ever had him piss in your mouth?", "drink him", "he ever piss with a hardon?", and "he likes piss play?" Id. at 52-53. The defendant added "love lil boy piss", "will help you clean up the mess", and "love that is on the menu also----hehe". Id. The defendant also sent the Adult an email so that they would be able to keep in touch. Id. at 54.[4]

---

[4] The defendant and the Adult communicated by chat and telephone on February 14, 2012. During those communications, the defendant began to try to lay the groundwork for a defense, stating, inter alia, that he was "nervous", we are "2 adults meeting Friday night to explore and discuss common interests----NOTHING else expected or implied----are you OK with that?", "my big concern is that have not been involved in a long time and may not decide to go there and this is NOT what you are looking for . . . and afraid I may disappoint you in that regard" (Chat Transcript, at 56-57), and that "Friday night, it's just the two of us, two adults meeting. Any of the conversation that we have I'm sure on my end, and on your end also has been totally fantasy, and it's just the two of us meeting Friday night to explore and, you know, discuss various things, correct?", and "the last thing we want to do is participate in any illegal activity" (Call Transcript, at 5, 8). Yet the defendant later stated "we were talking about some edible things" and "I've got a jar of peanut butter and jelly that I want to try on ya, and you know, we can see how that works" (id. at 11) and he and the Adult discussed "that urination thing" and the need to "find some cheap . . . targets" (id. at 11-12). The Adult and the defendant confirmed plans to meet that Friday, including arrival time and traffic. Id. at 13-16.

On February 16, 2012, during chat communications, the defendant continued to try to lay some groundwork for his defense. The defendant and the Adult discussed "targets", "piss play", and "Benadryl". (Chat Transcript, at 61-62.) After the Adult stated "me to we are uniquely compatible", the defendant responded "wish I had the reassurance that we are both as 'compatible' as it seems without actually having to meet to prove but no other way that I can see" and "just validation that we are compatible" adding "plus any chat previously regarding anything potentially not legal was just fantasy". Id. at 63. The defendant later added "documented we have nothing else arranged than our Friday night consensual adult enjoyment", adding "2 adults meeting for dinner-----very benign" and "have to be very cautious when we meet new guys in this internet/gay arena". Id. at 64-65.

On Friday, February 17, 2012, at approximately 5:19 p.m., the defendant and the Adult again spoke by telephone.  The defendant stated he had "spent two sleepless nights" trying to "relay may...paranoia . . . And I'm just not able to" further adding "I just need a little but more confirmation".  (Second Call Transcript, at 1.)  When the Adult stated "I don't know if you, if you think it would help you and confirm other than what we've discussed, and I would be willing to . . . do a webcam with him" the defendant expressed a desire to see the minor boy on webcam, responding "That . . . you have hit the nail on the head." Id. at 2. After the Adult stated he would "suck [the minor boy's] penis in front of you on cam" the defendant again requested to see sexual activity with the minor boy on webcam, stating, "Okay, fabulous".  The defendant stated "I'm legit man, but damn it, I would love to meet you 'cause I think we can have, you know, a ball and I would love to meet somebody that I could trust in this arena" and "I was hoping that you would suggest something like this." Id. at 3.  The defendant then confirmed plans to meet the Adult and the minor the following day after the webcam in the morning, stating "And . . . you know, because if I know that, you know, that you're, you know, legit; then I'm there." Id.  The defendant further stated "this is going to be a good association" and "I think we can benefit each other significantly." Id. at 4. The defendant then asked about the weather forecast for his trip to meet the Adult and the minor boy, stating "what is the weather forecast, you know – I should be able to get up there and back Sunday though" and adding "I was gonna drive a 4-wheel drive vehicle, so I should be . . . be totally fine." Id. at 4-5.  The defendant further stated "if you work with me, I think it will be worth your while" and "this is exactly what I need." Id. at 6. The defendant then offered to buy dinner for the Adult and the minor boy, stating "And I owe you a dinner, for sure, tomorrow night" adding "tomorrow night is my treat" and after the Adult responded that take-in would probably be the

easiest, that the minor boy only eats nuggets, and that there's a McDonald's right around the corner, the defendant responded, "Okay.  That will work."  Id. at 6-7.

The defendant was arrested that Friday evening near his home in Richmond, Virginia, pursuant to a warrant for his arrest in the District of Columbia.  During a subsequent search of the defendant's residence pursuant to a search warrant, law enforcement agents recovered, inter alia, a sealed and unopened jar of Smuckers Goober grape peanut butter and jelly stripes, matching the description of the peanut butter and grape jelly pre-mixed that was mentioned in the chats.  The jar was located next to a pair of sunglasses on top of the washing machine or dryer in the laundry room directly next to the door to the garage.  Law enforcement also seized, pursuant to the warrant, the defendant's two computers, including the defendant's laptop computer.  Subsequent to the defendant's arrest, law enforcement obtained search warrants for the defendant's Yahoo and Hotmail email accounts.

### SUMMARY OF FEDERAL RULE OF EVIDENCE 404(B) EVIDENCE

At this time, the government seeks to introduce, at trial, evidence recovered from the forensic analysis of the defendant's laptop computer[5] and evidence recovered from the defendant's Yahoo email account.

**A.      Evidence from the Defendant's Laptop Computer.**

Forensic computer expert Christie Gardner conducted a search of the defendant's computer and cell phone pursuant to search warrants.[6]  At this time, the government seeks to admit the

---

[5]  The defendant's other seized computer, a desktop computer, was not able to be processed forensically.

[6]  A copy of the forensic report is attached hereto as Exhibit A.  All of the information outlined below either was directly provided to the defense in the listed attachments to the report

following evidence seized from the defendant's computer:

**         Approximately 421 images of the image and video files found in the computer's "thumbcache" database file which depict children engaged in sexually explicit conduct.  These images include depictions of prepubescent boys and girls engaging in sexual acts with themselves, each other, and/or adult men.  (These child pornography images are identified in Attachment 1 of the forensic report and have been made available to the defense for review.)

**         Evidence that the defendant's deleted Internet Explorer web browser history included image and media files containing file names consistent with child pornography.  Specifically, on January 2, 2011, the defendant's computer accessed files including the names "2%20Boys-Teen%20Boy%20Fucking%20Preteen-B&W.jpg"; "boyman69.pjg"; "boynbaby"; and "fuckbrothers2.jpg".  On January 20, 2011, the defendant's computer accessed a file which included the name "boydadrape.jpg".  (The referenced deleted Internet Explorer web browser history was provided to the defense as Attachment 7 of the forensic report.)

**         Evidence that the defendant's computer's listing of most recently accessed files included image and media files containing file names consistent with child pornography.  Specifically, as recently as July 25, 2010, the computer accessed the following files: "dadcum6yr"; "13facerape"; "09-raped_with_sound"; "(pedo boy) Toddler Rape"; "!!! CumOnToddler"; "11 screwing7"; "6yrorgasm"; "blond10boygetsfucked"; "8suck18"; "babypeni"; "cum 5"; and "kid+cumming[1]".  As recently as January 17, 2011, the computer accessed the following files: " " 13 pos)."; and "-10yroldsckcock".  As recently as March 5, 2011, the computer accessed the following files: "daddy sucks boya"; "Micah 2nd grade pic"; and "zadoom pedo rizmastar kdv rbv (rizmastar hots) preteen

on August 1, 2012, or has been made available to the defense to review.

boys hard sex 7yo 8yo 9yo 10yo boy (03.2005new) 028".  (The referenced listing of most recently accessed files was provided to the defense as Attachment 10 of the forensic report.)

**       Yahoo Instant Messenger chat,[7] dated June 24, 2011, between the defendant and another Yahoo user ("Yahoo User1").  The government seeks to introduce the entirety of the chat between the defendant and Yahoo User1, including but not limited to the language discussed herein.  For example, during the chat, the defendant and Yahoo User1 discussed  Yahoo User1's surreptitious recording of his 11-year-old nephew in the shower.  Yahoo User1 and the defendant also discussed sexual activity with the minor, including Yahoo User1's suggestion that he use a "roofie" to "knock [the boy] out" in order to engage in sexual activity with him.  The defendant indicated that he was sexually aroused by the suggestion, stating, "got me fuckin boned" and then suggested "have any Benadryl, anti-histamine, cold medicine?"

**       Yahoo Instant Messenger chats, dated January 6 through 7, 2012, between the defendant and another Yahoo user ("Yahoo User2").  The government seeks to introduce the entirety of the chats between the defendant and Yahoo User2, including but not limited to the language discussed herein.  For example, on January 6, 2012, Yahoo User2 reassured the defendant that he "wasnt the cops."  Yahoo User2 also sent the defendant an Internet web address and further stated, "this is me and eric lookin up at you . . . did you really think i was a cop"?  The defendant responded, "mmmm---mega hot".  Yahoo User2 again stated "told you i wasnt a cop!" and "are you glad and relieved a bit?" to which the defendant responded "for sure".  Yahoo User2 later stated "want to see my dick?" and "just wanted to show im not a cop!"  Yahoo User2 later stated "told you i was safe....lmao! will you

---

[7] All of the referenced Yahoo Instant Messenger chats discussed herein were provided to the defense as Attachment 4 of the forensic report.  Likewise, the chats are quoted verbatim herein, including spelling and syntax errors.

freaking just say im sorry" . . . "i would NEVER set anyone up" to which the defendant responded "you are right ---- MY bad". Yahoo User2 also stated "if this was the cops they would have arrested you about 4 hours ago" . . . "my ex and i didnt say shit....and he got away with it." Yahoo User2 then stated "cum fuck me" . . . "and us" . . . "i will cum to you" to which the defendant responded, "mega sweet of you, stud" and "you are HOT". Yahoo User2 then stated "im so glad you like it....now can you admit you are a pedophile?" . . . . "please????" . . . . "i wont hold against you until you do". The defendant responded, "lol----thanks" . . . . "we LIKE the same things" to which Yahoo User2 responded "don't be ashamed" . . . "and you know im not a cop" . . . "that turned you on didnt it?" The defendant responded "lil---YES" . . . "of course it did" to which Yahoo User2 responded "and guessssss what no cops around your house" . . . "you can talk freeley around me" . . . "are you learning that." Yahoo User2 further stated "im just a lil boy and you saw it and no cops". Later in the chat, Yahoo User2 stated "i will only cum for you if you spank me and call me lil boi" . . . . "you think thats why my ex cummed so quick?" . . . "just cuz i was yung". Yahoo User2 later stated "lil girl next door wants to cum over" . . . "my dad is fucking her now....she is 13". The defendant asked "you ever fuck her?" to which Yahoo User2 responded "no" . . . "but i want to." The defendant then stated "damn---you should tap that pusssy". Yahoo User2 asked "if i do you want to watch?" to which the defendant responded, "yes". The defendant later stated "love to see you with the girl" . . . "that would be HOT" and "you know I lOVE it".

**       Yahoo Instant Messenger chats, dated January 30, 2012, February 1, 2012, and February 9, 2011, between the defendant and another Yahoo user ("Yahoo User3"). The government seeks to introduce the entirety of the chats between the defendant and Yahoo User3, including but not limited to the language discussed herein. For example, on January 30, 2012, the defendant stated

"love the perv", that he was into "boys" and asked "Yahoo User3 "you got any?"  Yahoo User3

responded "yep.. U :-)" to which the defendant responded ""fuckin A----no, dammit----wish I did"

and "tell be about your boy". Yahoo User3 informed the defendant "i have access to b17month, g4,

b7" to which the defendant responded, "damn----WOW" . . . "love that" . . . "what you do with

them?" and "count me in". Yahoo User3  asked the defendant "u done anything?" to which the

defendant responded "yrs ago----son of a bud" and "wish I was there to share with you".

       As the chat resumed and continued on February 1, 2012, the defendant also stated "love your

secret games".  Yahoo User3 stated "i just had a hot session last night on skype  with english mate"

and "i love others seeing", and further stated he had been with his "yngest boy" ["the 17m" as in 17-

month-old"] and "its safer".  The defendant then stated "love pedo".  Yahoo User3 asked the

defendant "u have access?" to which the defendant responded "dammit---not currently----" . . . . "yrs

ago----son of a perv bud".  Yahoo User3 stated "loads of hot vids too.. inspirational.. but risky.. i

prefer to have someone there or watch.. never had someone here in person though.. id lfucking love

that" to which the defendant responded "oh yeah----love all of the above" . . . "love to find a guy

with access who needs a bud to help him out".  Yahoo User3 responded, "wish u were local" to

which the defendant responded "SAME for sure".  The defendant then stated "love to see you with

the 7b also----MMMMMM" . . . . "MMMM—love to suck his cock and eat out his boy ass" . . . "eve

cam with him?"  Yahoo User3 stated "yeah i don't want to get into trouble.. so i keep it with other

dads.. kinda normalises it.. but try to keep it our secret" to which the defendant responded

"TOTALLY got ya" . . . . "mmmm----wish i had someone to share with you on cam" . . . .

"mmmm—love to keep chatting and develop trust----I did have some hot vids and got cold feet a

few months ago and destroyed them".  Yahoo User3 stated "happy to chat on skype if u want.. Add

me if u like.. See how we go" to which the defendant stated, "SURE----don't have skype-----this

won't work?" Yahoo User3 responded, "yeah this isnt safe.. skype is encrypted.. much safer and

it just goes between us.. this goes via yahoo and i know they check stuff" to which the defendant

responded "gotcha----will have to download skype".

As the chat continued later in the day on February 1, 2012, Yahoo User3 asked "so how did

u get into it.. did u play when u were ynger?" to which the defendant responded "had a fuck bud yrs

ago that was pervy----he got me into it with his boy" and that the boy was "11" and "LOVED it".

The defendant later stated "so hung up on perv----lol----THAT is what really bones my anymore"

. . . . "the boner I get with perv is amazing" . . . "nothing else compares".

**      Yahoo Instant Messenger chats, dated January 26, 2012, February 7, 2012, and February 14,

2012, between the defendant and another Yahoo user ("Yahoo User4"). The government seeks to

introduce the entirety of the chats between the defendant and Yahoo User4, including but not

limited to the language discussed herein. For example, on February 14, 2012, the defendant and

Yahoo User4 discussed their respective motorcycles. The defendant asked, "who would be your

fantasy passenger?" Yahoo User4 responded, "not sure he'd reach the pegs" to which the defendant

responded "oh YEAH" . . . "love that, too".

## B.      Evidence from the Defendant's Yahoo Email Account.

During this investigation, law enforcement also obtained search warrants for the defendant's

Yahoo and Microsoft email accounts. At this time, the government seeks to admit the following

evidence seized from the defendant's Yahoo email account:

**      Two e-mails, dated February 1, 2012, and February 2, 2012, which the defendant received

from "Welcome@email.skype.com" confirming the defendant's established of a Skype, as the

16

defendant discussed during his chats with Yahoo User3 on February 1, 2012.

**       Three e-mails, dated September 28, 2011, October 2, 2011, and October 4, 2011, between

the defendant and another Internet user (Yahoo User5). Specifically, on September 28, 2011, Yahoo

User5, in an email entitled "us", forwarded three still images to the defendant. The first image was

of shirtless adult male holding a fully clothed minor boy approximately two to three years in age.

The second image was of the same adult male and same two- to three-year-old minor boy, both fully

clothed. The third image was of the same two- to three-year-old minor boy, fully clothed. On

October 2, 2011, the defendant replied to the email stating "hey handsomes" and continuing "hope

you are having a great weekend.  really have enjoyed our chats and want to do more.  just to let you

know I am thinking about you." On October 4, 2011, the defendant replied to a reply message from

Yahoo User5.  In his reply, the defendant stated "hey stud, missed you in chat last evening.  Still

thinking about you and common interests.  Take care and keep in touch."

## ARGUMENT

For the reasons set forth below, admission of the evidence found on the defendant's laptop

computer and from his Yahoo email account, outlined above, is admissible at trial in this case for

the purpose of proving the defendant's intent  to commit the charged offense pursuant to Federal

Rules of Evidence 404(b).

### A.       The Evidence Found on the Defendant's Computer and in the Defendant's Email Account, Outlined Above, Is Admissible under Federal Rule of Evidence 404(b).

All relevant evidence is admissible, except as provided by the Constitution of the United

States, by Act of Congress, by the Federal Rules of Evidence, or by other rules prescribed by the

Supreme Court pursuant to statutory authority.  See Fed. R. Evid. 402.  Evidence is relevant if it

tends to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See Fed. R. Evid. 401.

Rule 404(b) provides that evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character, but is admissible for any non-propensity purpose, including motive, intent, plan, knowledge, and absence of mistake. See United States v. Bowie, 232 F.3d 923, 926, 930 (D.C. Cir. 2000). Importantly, this rule is one of "inclusion rather than exclusion." Id. at 929. As the Court of Appeals has noted en banc, while "the first sentence of the rule is framed restrictively, the rule itself is quite permissive, prohibiting the admission of other crimes evidence in but one circumstance – for the purpose of proving that a person's actions conformed to his character. United States v. Crowder, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (internal quotations omitted). In short, " Rule 404(b) bars not evidence as such, but a theory of admissibility." Id. As the Court stated in United States v. Cassell, 292 F.3d 788, 795 (D.C. Cir. 2002) (citing United States v. Miller, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original), "[t]rue, the evidence may tend to show that [defendant] is a person of bad character, but Rule 404(b) does not thereby render it inadmissible. To reiterate what we have stated before . . . under Rule 404(b), 'any purpose for which bad acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character.'" Id. (emphasis in original).

In the instant case, evidence that the defendant possessed, received, and accessed images containing child pornography, and evidence that the defendant engaged in dialogues with others about participating in sexual acts with children and traveling to engage in sexual acts with children, is highly relevant to prove the defendant's intent, knowledge, plan, and absence of mistake in committing the charged offense.

The government has charged the defendant with attempting to induce, entice, coerce, and persuade two minors, a 12-year-old girl and 3-year-old boy, to engage in illicit sexual conduct.  In order to establish the essential elements of this charge the government must prove that the defendant intended to induce, entice, coerce, and persuade either (or both) minor to engage in sexual conduct with the child.  The evidence outlined above makes it more likely than not that his intention in chatting with the Adult and making arrangements to meet the Adult was to engage in sexual conduct with a child.

The defendant's past conduct is highly probative evidence from which the jury can infer the defendant's state of mind (intent) as to the charged offenses.  See, e.g., Huddleston v. United States, 485 U.S. 681, 6859 (1988)  ("[e]xtrinsic acts evidence may be critical, . . . especially when th[e] issue involved the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct."); United States v. Lewis, 318 Fed. Appx. 1, 2 (D.C. Cir. 2009) (court upheld admission at trial of child pornography found in the defendant's bedroom in a case involving charges of attempted coercion and enticement of a minor and traveling interstate with intent to engage in illicit sexual contact with a minor under both Fed. R. Evid. 404(b) and 414); United States v. Long, 328 F.3d 655, 663 (D.C. Cir. 2003) (court held evidence of a defendant's prior sexual crimes against children is relevant evidence of his intent and is admissible under Rule 404(b); United States v. Brand, 467 F.3d 179, 196-201 (2d Cir. 2006) (images of child pornography found on defendant's computer were admissible under Rule 404(b) to show the defendant's intent, and were otherwise admissible to show his predisposition, to have sex with person he believed was 13 years old ); United States v. Curtin, 489 F.3d 935, 948 (9th Cir. 2007) (en banc) (admitting, in traveler case, text stories that "clearly illuminated [defendant's] thoughts and his subjective intent

to carry out his daddy/daughter sexual initiation escapades with a juvenile"); United States v. Davenport, No. 05-1336, 2005 WL 2476344, at * 1 (7th Cir. Oct. 7, 2005) (in case involving transportation of a minor for illicit sexual purposes, affirming admission of sexually oriented drawings found in the defendant's home, links to sexually oriented websites on his computer, and uncharged internet chat logs between the defendant and another minor, and noting that be because the defendant denied having the requisite criminal intent, the court properly admitted this evidence to show his intent to engage in sexual conduct with the minor); see also United States v. Riccardi, 258 F. Supp. 2d 1212, 1233-35 (D. Kan. 2003) (admitting numerous non-sexually explicit photographs of minors found in albums that defendant neatly arranged as probative of defendant's knowing possession of child pornography).

Most recently, in United States v. Beauchamp-Perez, Crim. No. 110-310 (JDB), the Honorable John D. Bates, following Lewis, admitted evidence of possession, receipt, and distribution of child pornography and chat communications relating to sexual activity with minors against a defendant charged with interstate travel with the intent to engage in illicit sexual activity with a minor, in violation of 18 U.S.C. § 2423(b)).  (A copy of Judge Bates's Order finding this 404(b) evidence admissible is attached hereto as Exhibit B.)  All of these decisions illustrate the broad array of evidence of other sex-related acts that have been deemed admissible under Rule 404(b) for the permissible purposes of proving that a defendant has acted with the requisite state of mind in committing computer-facilitated, child exploitation offenses.

The government need only establish "similarity and some connection" between the 404(b) evidence it seeks to admit and the current case for the evidence est forth above to be admissible. Long, 328 F.3d at 663 (noting that other crimes evidence need only meet a "threshold level of

similarity" in order to constitute proof of intent); Brand, 467 F.3d at 197 (government is required only to show a "similarity or some connection" to establish that a prior act is relevant to intent).  The similarities between the conduct which the government seeks to introduce and the instant case are numerous, including, for example, that the subject matter of the images and chat is sexual acts between adults and minors (both make and female); the specific sexual acts reflected in the other evidence is identical or similar to the sexual acts the defendant discussed with the Adult in this case; the other evidence involves the use of the computer to facilitate the criminal activity (as does the conduct at issue in the instant offense); like the instant offense, the chats involved discussions of using a web cam to film sexual activity with minors and using drugs, including Benadryl, to incapacitate minors in order to engage in such sexual activity; and also like the instant offense, the chats involved concerns about law enforcement as well as whether the minor was old enough to report the illicit sexual activity to others.

This evidence of extrinsic acts is critical to the government's case as it goes directly to the defendant's state of mind, i.e., his intention when he chatted with the Adult, and provides an important means of ascertaining the defendant's mental state.  Huddleston, 485 U.S. at 685.  The government expects the defense in this case to be that the defendant's discussions about engaging in sexual acts with a child were mere fantasy.  Certainly, earlier chats where the defendant discussed in detail the logistics of engaging in sexual acts with minors, his interest in engaging in sexual acts with children, and his arousal at viewing minors engaging in sexual acts with adults juxtaposed with the defendant's actions and substantial steps of his chat communications in this case and preparations to engage in illicit sexual activity with a minor is highly probative of the defendant's intent in this case.  Similarly, his possession, receipt, and accessing of images of minors engaging

in sexual acts with themselves and adults, and the other evidence outlined above, shows that the defendant is interested in having sex with minors and that his intent in communicating with the Adult was to induce, entice, persuade, and coerce minors to engage in sexual activity.

The 404(b) evidence the government seeks to have admitted will also provide meaning and context to the government's case and, thus, goes to the 404(b) issues of his plan, knowledge, and absence of mistake.  The Yahoo Instant Messenger chats, for example, discuss some of the exact transactions and facts as those in the chats with the Adult.  At certain points, the defendant even uses some of the exact same language he does with the Adult in this case and discusses the same sexual acts.  Moreover, the proffered evidence tends to prove that the defendant intended to induce, entice, persuade, or coerce sexual activity with minors, and supplies a motive and plan based on the defendant's sexual interest in minors.  In short, the evidence shows that the defendant is sexually attracted to minors, and interested in both participating in and viewing such sexual activity.

All of the evidence the government seeks to admit pursuant to Rule 404(b) is highly probative and relevant to the fundamental question of the defendant's motive and intent in communication with the Adult, as well as his knowledge, plan, and an absence of mistake.[8]

B.     **The Evidence Found on the Defendant's Computer, Outlined Above, Is Admissible under Federal Rule of Evidence 403**.

All evidence, including evidence admissible under Rule 404(b), is subject to the strictures of Rule 403.  Thus, the admissibility of other crimes or bad acts evidence rests on a two-step inquiry:

---

[8] Should the Court deny the government's motion to admit the 404(b) evidence set forth above in its case-in-chief, the government seeks to admit the evidence if the defendant, either through opening statements, cross-examination, or through the defense case, opens the door by suggesting that the defendant, when he traveled, did not intend to induce, persuade, entice, or coerce minors to engage in sexual activity in this case.

1) whether the other crimes evidence is relevant to an issue in the case, see Fed. R. Evid. 404(b), and if so, 2) whether the evidence is admissible under Rule 403 because its probative value is not substantially outweighed by the danger of unfair prejudice. As its language reflects, Rule 403 "tilts, as do the rules as a whole, toward the admission of evidence in close cases" -- even when other crimes evidence is involved. See United States v. Moore, 732 F.2d 983, 987, 989 (D.C. Cir. 1984); Huddleston, 485 U.S. at 688-89 ("Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence").[9]

For the reasons set forth above, the evidence at issue is relevant to prove the defendant's intent to commit the charged offenses of Attempted Coercion and Enticement of a Minor. Moreover, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to the defendant. The evidence further tends to negate the possibility of the defendant's lack of criminal intent – an issue the defendant will, in all likelihood, raise. All evidence introduced by the prosecution, so long as it is relevant, is prejudicial in that its purpose is to prove the defendant guilty of a crime. In this case, the government is required, as noted earlier, to establish the motive and intent of the defendant. The fact that the evidence in question depicts

---

[9] As for the burden that must be met in presenting other crimes evidence, the Court is not required to make any sort of preliminary finding or to weigh the evidence as to the other crimes. Indeed, as the Supreme Court has emphasized, "[i]n determining whether the Government has introduced sufficient evidence to meet Rule 404(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence." Huddleston, 485 U.S. at 690 (emphasis added). Instead, the trial court "simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact [other crimes evidence] . . . by a preponderance of the evidence." Id. And in doing so, the trial court must consider all the pieces of evidence presented to the jury, both as to the other crimes evidence and the charged conduct. Ibid.

disturbing images and language does not justify exclusion under Rule 403.  The evidence is highly probative of essential elements of the government's case, i.e., motive and intent.  For many jurors, it is truly impossible to understand the motivation and thought processes of an individual who is interested in engaging in sexual acts with children.  The evidence on the defendant's computer, outlined above, goes directly to the these essential elements.

To minimize the danger of any unfair prejudice, the court can give an extensive limited instruction.  Courts routinely recognize that such limited instructions "ordinarily suffice to protect the defendant's interests."  Long, 328 F.3d at 662 (citing Spencer v. Texas, 385 U.S. 554, 561 (1967)).

In summary, evidence that the defendant possessed, received, and accessed child pornography depicting minors engaging in sexual acts with each other and adults, evidence that the defendant enjoyed viewing such child pornography, and evidence that the defendant engaged in dialogues with other adult men about engaging in sexual acts with children should be admitted in this case pursuant to Rule 404(b) to prove his intent to commit the charged offenses.

WHEREFORE, for the above-stated reasons, the government respectfully requests that this Court grant its motion in limine to admit the proposed evidence pursuant to Rule 404(b) of the Federal Rules of Evidence.

## <u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that the Court grant this motion in limine and enter an order admitting the evidence discussed herein for use in the Government's case-in-chief or rebuttal case.

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney
Bar No. 447889

By:   _____/s/_____
DAVID B. KENT, D.C. Bar 482850
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W., 4th Floor
Washington, D.C. 20530
202-252-7763
202-514-8707 (fax)