## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **CRIMINAL NO. 12-65 (CKK)** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **PAUL DAVID HITE,** | **:** | |
| **Defendant.** | **:** | |

### GOVERNMENT'S MOTION *IN LIMINE* REGARDING ENTRAPMENT DEFENSE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following memorandum on the issue of entrapment and moves this Court to prohibit the defendant from presenting an entrapment defense at trial. Alternatively, the government moves this Court to require the defendant to provide pre-trial notice if he intends to raise an entrapment defense and that, if necessary to the Court's determination on the issue, the Court hold a pre-trial hearing so that it can rule on the government's motion before a jury is sworn. The government relies upon the points and authorities set out in this memorandum and motion and any such further points and authorities which may be cited at any hearing on this matter.

### PROCEDURAL BACKGROUND

1. The defendant, Paul David Hite, was arrested on February 17, 2012, and charged with attempted coercion and enticement of a minor, in violation 18 U.S.C. § 2422(b). The defendant's arrest arose from Internet chatroom and telephone conversations with Metropolitan Police Department Detective Timothy Palchak between February 1 and February 17, 2012.[1]

---

[1] Detective Palchak was working in an undercover capacity, posing as an adult with sexual access to a 12-year-old girl and a 3-year-old boy. Detective Palchak is referred to herein as "the Adult".

2.      On March 13, 2012, a federal grand jury returned a one-count indictment against the defendant, charging him with Attempted Coercion and Enticement of a Minor (a 12-year-old girl), in violation of 18 U.S.C. § 2422(b).  On April 10, 2012, a federal grand jury returned a superseding indictment, charging the defendant with two counts of Attempted Coercion and Enticement of a Minor (one count for a 12-year-old girl and one count for a 3-year-old boy).

3.      On October 19, 2012, the government filed a motion *in limine* for the admission of evidence pursuant to Federal Rule of Evidence 404(b), specifically, certain evidence recovered from the forensic analysis of the defendant's laptop computer and evidence recovered from the defendant's Yahoo email account (ECF No. 26).

4.      At a status hearing on October 24, 2012, this Court set this case for trial in February 2013.  For the reasons provided herein, the government respectfully requests that the Court prohibit defense counsel from presenting an entrapment defense at trial, or in the alternative, require the defendant to provide pre-trial notice if they intend to raise an entrapment so that this issue may be addressed prior to trial.

## FACTUAL BACKGROUND

On February 1, 2012, the defendant initiated contact with the Adult, indicating "love perv" and further stating "love pedo here".  (Chat Transcript, at 1.)[2]  After being informed that the Adult had engaged in sexual activity with two minors, "limited with 3 yo nephew, full active with my gf

_____

[2]  In support of his first motion to dismiss, the defendant provided the Court with a 65-page transcript of the chat communications between the defendant and the Adult (ECF No. 11-1) [hereinafter "Chat Transcript"], and transcripts of his February 14, 2012, and February 17, 2012, recorded one-party consent telephone calls with the Adult (ECF No. 12-1 [hereinafter "First Call Transcript"]) and ECF No. 12-2 [hereinafter "Second Call Transcript"], respectively.)  The chat and call transcripts are quoted verbatim herein, including spelling and syntax errors.

12 yo girl", the defendant responded "mmmm---HOT" and "would love both for sure". Id.  The

defendant asked questions about sexual activity with the 12-year-old girl, specifically "how long you

been doing the girl?" and further stated "girl must love it" and "she have any pubes now?" before

suggesting that he and the Adult "stay in touch" and giving the Adult his Yahoo screen name.  Id.

      After switching to Yahoo, the defendant continued to ask questions about sexual activity

with the minor girl and continued to express interest in engaging in sexual activity with the minor

girl, stating, "she still basically smooth?", "love to get my tongue in that", "she like to be eaten out",

"she tasty?", "how often you get to play with her?", and "HOT---- tits?"  Id. at 3.  The defendant

then asked about the 3-year-old boy, stating "you have a 3 nephew" and after the Adult responded,

"yes, limited with him though don't have a lot og alone time with him", the defendant replied

"gotcha-----maybe as he get a bit older can hang with him more".  Id. at 4.

      The defendant continued to ask questions about sexual activity with the minor girl, stating

"she like cum?", "fuck her bare?", "cum in her pussy?", "she had her period?", "what really gets her

hot/excited?", and "ever rim her?"  Id. at 5-6.  The defendant then continued to expressed interest

in engaging in sexual activity with the minor girl, stating, to the Adult, "you are a hot guy from your

body pic" and "BOTH of you would excite me".  Id. at 6.  The defendant then asked the Adult to

find out from the minor girl whether she would be willing to engage in sexual activity with him.

After the Adult stated "would be totally hit to all hook up, i have talked to her loosely about a third

getting involved she knows im bi" the defendant responded "would work for me for sure" and after

the Adult stated "sweet if you want i will ask her and see if she would agree" the defendant

responded "MMMMMM---sounds like a plan to me".  Id.  After the Adult stated "do you want me

to show her your pic if she asks" the defendant asked the Adult to show his photo to the minor girl,

stating  "sure---you can show her the pic".  Id.

The defendant and the Adult then discussed scheduling a meeting with the Adult and minor girl based on the defendant's availability, with the defendant stating "weekends generally would be better" and after the Adult indicated he had the minor "on some weekends as well as maybe like a Friday night or sat" the defendant responded "that would be PERFECT with some notice".  Id. at 7.

After the Adult informed the defendant "but of course I will ask her prior to make sure she wants to do it" the defendant asked the Adult to find out what the minor girl thought of the plan, stating "YES----want her to be into it".  Id.  The defendant again discussed engaging in sexual activity with the minor girl, stating "and we can suck your cock . . . we both can eat her pussy" and "one rim and one eat pussy and then switch".  Id.  After the Adult indicated "i will i have a pic of her if you wanna see" the defendant requested to see a photo of the minor girl, stating "love to see" and upon receipt of the photo then commented "oh wow . . . MMMMM" and "she is fuckin ADORABLE".  Id. at 8.  After the Adult inquired "any pic of you that you want me to show her or just your pro pics on [the website]", the defendant asked the Adult to show the minor girl a specific photo of him, stating "the shirtless pic on [the website] works".  Id. at 9.  The defendant later stated "THANKS for letting me see" adding "we could have a BALL".  Id.

On February 3, 2012, the defendant stated that he "loved the pic of Christy" (the minor girl). Id. at 11.  When the Adult indicated "i told her about what we discussed" later adding "yes, i have loosely floated the idea about a third but wasn't sure if she knew i was serious", the defendant asked the Adult what the minor girl thought of the plan responding "understand----did she like the idea?" Id.  After the Adult stated that "she seemed to be ok with it", the defendant indicated he was willing

4

to adjust to make the minor feel more comfortable responding "hot----very low key and sane here---- willing to take it slowly at her pace". <u>Id.</u> at 12. The defendant again discussed scheduling a meeting with the Adult and the minor girl based on the defendant's availability, with the Adult stating "i may haver next Fri if that works let me know i will reach out to my gf", to which the defendant responded "mmmm----not sure about next Friday---dammit". <u>Id.</u> at 13. The Adult replied "let me know what dates are good for you and i will try to coordinate it with Christy and my gf". <u>Id.</u>

The defendant then asked about sexual activity with the 3-year-old boy, stating "plus that 3yo nephew", "bet he is a CUTIE", "he get hard?", "get to rim him?", and "what did he think of your hard man cock?" <u>Id.</u> at 14. When the Adult asked "would you suck a 3 yo cock if you could", the defendant responded "FUCK YEAH". <u>Id.</u> When the Adult further stated "be hot with a 3rd with him but we aould be lmited to oral . . . not sure if that is your thing or not", the defendant asked to engage in sexual activity with the minor boy responding "oh YEAH----LOVE oral . . . count me IN with him also". <u>Id.</u> at 15. When the Adult stated "best part about him he is pretty much non-verbal, very limited vocabulary . . . which one first would you feel more comfortable with him first?" the defendant expressed a preference for the minor boy, responding "NICE----was curious how you kept him from blabbing\ . . . mmmmm----that might work better for sure". <u>Id.</u> Afer the Adult stated "i offer to watch him from time to time, they always take me up on it cause he keeps them busy as shit", the defendant again asked to engage in sexual activity with the minor boy by responding "HOT----would love to help you with him sometime---plus love to play while he still not very verbal". <u>Id.</u>

On February 6, 2012, the defendant and the Adult again discussed scheduling a meeting with the Adult and the minor boy based on the defendant's availability, with the Adult stating "i told my brother that i would watch him in the near future so he and his wife could get a break", to which the defendant responded "NICE . . . they open to that?".  Id. at 20.  After the Adult stated "have to check my schedule to but was thinking a frday towards the end of the month like the 24", the defendant responded "will have to do the same but sounds plausible for sure".  Id.  When the Adult stated, "if your more into the fantasy and not realtime its cool just let me know, don't want you to be uncomfortable or freak out", the defendant responded "awww----THANKS-----appreciate your being receptive to my needs" adding "LOVE to help you out, though".  Id.  The defendant again discussed plans to meet with the Adult and the minor boy.  After the defendant suggested, "think we should meet just us 2 before the introduction of the hotties just to make sure we are comfortable?", the Adult suggested "you could come on a Friday and stay over and all play on sat, up to you, again no worries if your not interested in the little one", to which the defendant replied "lol---I AM interested in little one", "just very cautious here", and "we meet and play and hit it off---maybe look at some pics----confirm expectations and THEN------MMMMM . . . count me IN".  Id. at 21.  The defendant further suggested "us meeting and getting naked and taking perv", "lol----cops won't get naked and have sex with you", and "we do that----should be very comfortable on both sets to let it totally hang".  Id. at 22.  After the Adult stated "and again if your just into me let me know and we can do just that", the defendant replied "lol----NO---am TOTALLY into your scene . . . THAT is not the issue . . . just want to be sure we are both whom we say we are".  Id.  After the Adult stated "i would tell my brother i would watch him on Sat, gives us time to play and prove to each other on Fri", the defendant responded "nothing wrong with 2 adult males meeting on Friday to have sex" and "once

we are comfortable, bring IT on". Id. The defendant then again discussed engaging in sexual activity with the minor boy, stating "want to have him lick and suck my cock, your cock". The defendant also asked for the Adult's permission with regard to planned sexual activity with the minor boy, asking "so he okay with penetration with your pinkie?" "LOVE that-----we will have to do that also----IF you are ok with it". Id. at 24-25. The defendant and the Adult then discussed a date, times, and logistics of meeting at the Adult's residence in the District of Columbia, including where the defendant might be able to park his car. Id. at 25-26.[3]

The defendant also asked whether the Adult ever gave either minor alcohol, stating "ever give Christy of the nephew any alcohol to relax them?", and after the Adult indicated he had given alcohol to the minor girl and Benadryl to the minor boy, the defendant responded "NICE on BOTH accounts" and asked the Adult to obtain Benadryl for the minor boy, stating "hehe—make sure you have some with the nephew". Id. at 30.

On February 7, 2012, the Adult and the defendant again discussed plans to meet with the Adult and the minor boy, with the Adult stating "ok i wasnt sure if it was a thrill discussion or about being careful for realtime with [the minor boy] either way is fine" to which the defendant responded "WANT real time with him" Id. at 33. The defendant later stated "IF after we meet you don't think I fill what you are looking for to proceed-----I understand" before continuing "I WANT your nephew to ENJOY this", "teach him the pleasures his body holds for him", "count me totally IN", "and with the 2 of us there----we can show him how to suck cock . . . how 2 guys MUTUALLY pleasure each

---

[3] The defendant reiterated his interest in the 12-year-old girl, stating "want to meet [the minor girl] also." (Chat Transcript, at 28). The defendant further stated "one area we have to be careful with her is that I am not 'fixed'", adding that he would have to use a condom with her even though he "would love to fuck her sweet cunt bare". Id. The defendant later stated he would "ADJUST to the circumstances for sure" . Id. at 29.

other . . . lol----that is why you need me----hehe". Id. at 34.  The defendant again asked the Adult

to obtain Benadryl for the minor boy, stating "we need Benadryl for him when we meet", adding

"plus will distort any recollection he could have". Id. at 36.  Later in the conversation, the defendant

again discussed plans to meet with the Adult and the minor boy, with the Adult stating "my brother

text me today and said that it was up to me since i am doing them the favor of watching him.  I told

him sat Feb 18" adding "that way you and i can meet Fri and do our validation thing", to which the

defendant responded "that works fantastically for me". Id. at 37-38.  The defendant then asked

"what time Saturday with the hottie arrive" before offering to do anything to facilitate sexual activity

with the minor boy, stating "will do anything you want to enable this arrangement". Id. at 39.

        The defendant then discussed how to initiate sexual activity with the minor boy, asking "you

know your nephew----how you want to start with him on Saturday?" Id. at 40.  The defendant

offered to bring items for sexual activity with the minor boy, asking "should I bring bananas?" and

suggesting "was wondering if jelly or honey might work better than a banana", "what about peanut

butter?", "he would REALLY have to lick to get the peanut butter", "do want to put some peanut

butter in your ass so we can both rim you", and "with both of those should keep him enticed". Id.

at 40-41 (emphasis added).

        On February 9, 2012, the defendant again discussed items for sexual activity with the minor

boy, stating "have a great prop to bring for us to use" adding "got a gag gift of a jar of peanut butter

and grape jelly pre-mixed----hehe—THAT should be fun", "lol—thought that might be perfect for

our HOT scene", and "but the more I think about it---should be perfect to stimulate oral

exploration". Id. at 46-47.  The defendant also asked the Adult to pass along a message to the minor

girl, asking "when you gonna see Christy again?" and "tell her hello from me---can't wait to meet

her". Id. at 47.

On February 10, 2012, the defendant again discussed sexual activity with the minor boy,

asking "ever done any piss play with him?" Id. at 52. After the Adult indicated "big into piss play",

"done it with both Christy and the nephew", and "i have set up these cheap little plastic toys around

my cock and stomach and he knocks them down with his piss", the defendant responded "would

love that too" and further inquired "ever had him piss in your mouth?", "drink him", "he ever piss

with a hardon?", and "he likes piss play?" Id. at 52-53. The defendant added "love lil boy piss",

"will help you clean up the mess", and "love that is on the menu also----hehe". Id. The defendant

also sent the Adult an email so that they would be able to keep in touch. Id. at 54.[4]

---

[4] The defendant and the Adult communicated by chat and telephone on February 14,
2012. During those communications, the defendant began to try to lay the groundwork for a
defense, stating, inter alia, that he was "nervous", we are "2 adults meeting Friday night to
explore and discuss common interests----NOTHING else expected or implied----are you OK
with that?", "my big concern is that have not been involved in a long time and may not decide to
go there and this is NOT what you are looking for . . . and afraid I may disappoint you in that
regard" (Chat Transcript, at 56-57), and that "Friday night, it's just the two of us, two adults
meeting. Any of the conversation that we have I'm sure on my end, and on your end also has
been totally fantasy, and it's just the two of us meeting Friday night to explore and, you know,
discuss various things, correct?", and "the last thing we want to do is participate in any illegal
activity" (Call Transcript, at 5, 8). Yet the defendant later stated "we were talking about some
edible things" and "I've got a jar of peanut butter and jelly that I want to try on ya, and you
know, we can see how that works" (id. at 11) and he and the Adult discussed "that urination
thing" and the need to "find some cheap . . . targets" (id. at 11-12). The Adult and the defendant
confirmed plans to meet that Friday, including arrival time and traffic. Id. at 13-16.
    On February 16, 2012, during chat communications, the defendant continued to try to lay
some groundwork for his defense. The defendant and the Adult discussed "targets", "piss play",
and "Benadryl". (Chat Transcript, at 61-62.) After the Adult stated "me to we are uniquely
compatible", the defendant responded "wish I had the reassurance that we are both as
'compatible' as it seems without actually having to meet to prove but no other way that I can
see" and "just validation that we are compatible" adding "plus any chat previously regarding
anything potentially not legal was just fantasy". Id. at 63. The defendant later added
"documented we have nothing else arranged than our Friday night consensual adult
enjoyment", adding  "2 adults meeting for dinner-----very benign" and "have to be very cautious
when we meet new guys in this internet/gay arena". Id. at 64-65.

On Friday, February 17, 2012, at approximately 5:19 p.m., the defendant and the Adult again spoke by telephone. The defendant stated he had "spent two sleepless nights" trying to "relay may...paranoia . . . And I'm just not able to" further adding "I just need a little but more confirmation". (Second Call Transcript, at 1.) When the Adult stated "I don't know if you, if you think it would help you and confirm other than what we've discussed, and I would be willing to . . . do a webcam with him" the defendant expressed a desire to see the minor boy on webcam, responding "That . . . you have hit the nail on the head." Id. at 2. After the Adult stated he would "suck [the minor boy's] penis in front of you on cam" the defendant again requested to see sexual activity with the minor boy on webcam, stating, "Okay, fabulous". The defendant stated "I'm legit man, but damn it, I would love to meet you 'cause I think we can have, you know, a ball and I would love to meet somebody that I could trust in this arena" and "I was hoping that you would suggest something like this." Id. at 3. The defendant then confirmed plans to meet the Adult and the minor the following day after the webcam in the morning, stating "And . . . you know, because if I know that, you know, that you're, you know, legit; then I'm there." Id. The defendant further stated "this is going to be a good association" and "I think we can benefit each other significantly." Id. at 4. The defendant then asked about the weather forecast for his trip to meet the Adult and the minor boy, stating "what is the weather forecast, you know – I should be able to get up there and back Sunday though" and adding "I was gonna drive a 4-wheel drive vehicle, so I should be . . . be totally fine." Id. at 4-5. The defendant further stated "if you work with me, I think it will be worth your while" and "this is exactly what I need." Id. at 6. The defendant then offered to buy dinner for the Adult and the minor boy, stating "And I owe you a dinner, for sure, tomorrow night" adding "tomorrow night is my treat" and after the Adult responded that take-in would probably be the

easiest, that the minor boy only eats nuggets, and that there's a McDonald's right around the corner, the defendant responded, "Okay.  That will work."  <u>Id.</u> at 6-7.

The defendant was arrested that Friday evening near his home in Richmond, Virginia, pursuant to a warrant for his arrest in the District of Columbia.  During a subsequent search of the defendant's residence pursuant to a search warrant, law enforcement agents recovered, <u>inter alia</u>, a sealed and unopened jar of Smuckers Goober grape peanut butter and jelly stripes, matching the description of the peanut butter and grape jelly pre-mixed that was mentioned in the chats.  The jar was located next to a pair of sunglasses on top of the washing machine or dryer in the laundry room directly next to the door to the garage.  Law enforcement also seized, pursuant to the warrant, the defendant's two computers, including the defendant's laptop computer.  Subsequent to the defendant's arrest, law enforcement obtained search warrants for the defendant's Yahoo and Hotmail email accounts.

## **ARGUMENT**

In the event that the defendant seeks to pursue an entrapment defense in this case, the government is requesting that the defendant provide pre-trial notice of any such defense, or waive such a defense at trial.

Affirmative defenses, such as the entrapment defense, should only be presented to the jury where "the testimony given or proffered meet[s] a minimum standard as to each element of the defense."  <u>United States v. Bailey</u>, 444 U.S. 394, 415 (1980).

As the Supreme Court has further explained, the affirmative defense of entrapment is aimed at preventing "the manufacturing of crime by law enforcement officials and their agents."  <u>Lopez v. United States</u>, 373 U.S. 427, 434 (1963).  Solicitation, initiation of, or mere involvement in, a

criminal activity by a government agent is not sufficient to show inducement.  United States v. Borum, 584 F.2d 424, 428 (D.C. Cir. 1978) (holding that government official's offer to buy and a defendant's acquiescence with reasonable readiness, was not entrapment); see also United States v. Glover, 153 F.3d 749 (D.C. Cir. 1998) (concluding that a defendant is entitled to an entrapment defense only where a reasonable jury could find entrapment); United States v. Whoie, 925 F.2d 1481, 1485 (D.C. Cir. 1991).  The Supreme Court has instructed that a valid entrapment defense has two related elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in criminal conduct.  Mathews v. United States, 485 U.S. 58, 63 (1988).  Thus, the trial court should refuse an entrapment instruction where the defendant has failed to proffer at least some evidence of government inducement.  United States v. Trejo, 136 F.3d 826, 827 (D.C. Cir. 1998); United States v. McKinley, 70 F.3d 1307, 1312 (D.C. Cir. 1995).

        The D.C. Circuit has further held that when asserting an entrapment defense, "the defendant bears the initial burden of showing government inducement."  Glover, 153 F.3d at 754; see also United States v. McLendon, 378 F.3d 1109, 1114 (D.C. Cir. 2004); United States v. Evans, 216 F.3d 80, 90 (D.C. Cir. 2000); McKinley, 70 F.3d at 1312.  However, if the defendant successfully proves inducement, the burden then shifts to the government "to prove the defendant was predisposed to commit the crime."  Glover, 153 F.3d at 754 ; see also United States v. Burkley, 591 F.2d 903 (D.C. Cir. 1978) (to prove government inducement, facts must show government "caus[ed] an otherwise unpredisposed person to commit [a] crime" and further concluding that an entrapment instruction is not warranted where there is no government inducement unless the defendant can show he was not predisposed).

## I.    THE DEFENDANT CANNOT SHOW GOVERNMENT INDUCEMENT.

Courts have long held that it is proper for the government to "use a 'sting,' at least where it amounts to providing a defendant with an 'opportunity' to commit a crime."  See, e.g., Sorrells v. United States, 287 U.S. 435, 441, 448 (1932) (holding that "artifice and stratagem may be employed to catch those engaged in criminal enterprise").  For instance, where law enforcement agents merely make themselves available to participate in a criminal transaction then there is no inducement. Burkley, 591 F.2d 903 (holding that inducement is not shown when the facts in the record merely show that an undercover police officer afforded defendant an opportunity to sell drugs); see, e.g., United States v. Poehlman, 217 F.3d 692, 701 (9th Cir. 2000).   However, when the government's tactics are such that "a law-abiding citizen's will to obey the law could have been overborne," courts have found improper inducement.  United States v. Kelly, 748 F.2d 691, 698 (D.C. Cir. 1984) (no evidence of inducement based on providing defendant single opportunity to commit crime through initial bribe of $25,000 followed by additional $75,000 and further finding defendant was predisposed); see also United States v. Gendron, 18 F.3d 955, 961 (1st Cir. 1994) (defining inducement as consisting of "an 'opportunity' *plus* something else—typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type motive").  Courts have declined to find government inducement solely on the basis of repeated solicitations except when the solicitations are "coupled with persuasive overtures." McKinley, 70 F.3d at 1312-13 (D.C. Cir. 1995) (concluding that a defendant may show inducement where the government's repeated solicitations moved an otherwise unwilling citizen to commit a criminal act); Sherman v. United States, 356 U.S. 369, 373 (1958) (finding inducement where the government informant not only made repeated requests, but also attempted to persuade the defendant

13

by resorting to the defendant's sympathy).

In the present case, the facts do not prove government inducement, but rather show that the defendant took advantage of an opportunity provided by a government agent.  The evidence of government inducement in the present case is less compelling than the defendant's claim in United States v. Brooks where the court concluded that the government did not engage in improper inducement.  567 F.2d 134, 148 (D.C. Cir. 1977).  In Brooks, the defendant claimed that he met undercover officers in a warehouse who described an illegal fencing operation, and that the officers promised to pay him money for each new customer brought to the illegal operation.  Id. at 136. Here, the evidence of government inducement is even weaker.  The chat communications reveal that the defendant initiated contact with the Adult, indicating "love perv" and further stating "love pedo here".  (Chat Transcript, at 1.)  After being informed that the Adult had engaged in sexual activity with two minors, "limited with 3 yo nephew, full active with my gf 12 yo girl", the defendant responded "mmmm---HOT" and "would love both for sure".  Id.

Moreover, during the chats, the defendant, after initially, discussing engaging in sexual activity with the minor girl and meeting for that purpose, turned his attention to the boy.  For example, the defendant discussed scheduling a meeting with the Adult and the minor girl based on the defendant's availability, with the Adult stating "i may haver next Fri if that works let me know i will reach out to my gf", to which the defendant responded "mmmm----not sure about next Friday---dammit".  Id. at 13.  The Adult replied "let me know what dates are good for you and i will try to coordinate it with Christy and my gf".  Id.  The defendant then asked about sexual activity with the 3-year-old boy, stating "plus that 3yo nephew", "bet he is a CUTIE", "he get hard?", "get to rim him?", and "what did he think of your hard man cock?"  Id. at 14.

Additionally, throughout the chat, the defendant posed numerous questions about both minors.  For example, with respect to the minor girl, the defendant asked "she still basically smooth?", "love to get my tongue in that", "she like to be eaten out", "she tasty?", "how often you get to play with her?", and "HOT---- tits?"  Id. at 3.  The defendant continued to ask questions about sexual activity with the minor girl, stating "she like cum?", "fuck her bare?", "cum in her pussy?", "she had her period?", "what really gets her hot/excited?", and "ever rim her?"  Id. at 5-6.  The defendant again discussed engaging in sexual activity with the minor girl, stating "and we can suck your cock . . . we both can eat her pussy" and "one rim and one eat pussy and then switch".  Id. With respect to the 3-year-old boy, for example, the defendant stated "plus that 3yo nephew", "bet he is a CUTIE", "he get hard?", "get to rim him?", and "what did he think of your hard man cock?" Id. at 14.  When the Adult asked "would you suck a 3 yo cock if you could", the defendant responded "FUCK YEAH".  Id.  Thus, these chats are not evidence of inducement, but show that the defendant readily seized an opportunity provided by a law enforcement agent.

Furthermore, this Court should conclude that there was no improper inducement because Detective Palchak provided the defendant with an opportunity to back out of meeting with the purported minor.  In United States v. Munro, the Seventh Circuit concluded that an entrapment instruction was not warranted where the undercover officer posing as a 13-year-old girl gave the defendant an opportunity to back out of the meeting.  394 F.3d 865 (10th Cir. 2005) (holding that the officer gave the defendant an opportunity to back out of the meeting, and therefore "vitiat[ed] the need for an entrapment instruction").

Here, when the Adult further stated, with respect to the 3-year-old boy, "be hot with a 3rd with him but we aould be lmited to oral . . . not sure if that is your thing or not", the defendant asked

to engage in sexual activity with the minor boy responding "oh YEAH----LOVE oral . . . count me IN with him also".  (Chat Transcript, at 15.)  When the Adult stated "best part about him he is pretty much non-verbal, very limited vocabulary . . . which one first would you feel more comfortable with him first?" the defendant expressed a preference for the minor boy, responding "NICE----was curious how you kept him from blabbing\ . . . mmmmm----that might work better for sure".  Id.  Afer the Adult stated "i offer to watch him from time to time, they always take me up on it cause he keeps them busy as shit", the defendant again asked to engage in sexual activity with the minor boy by responding "HOT----would love to help you with him sometime---plus love to play while he still not very verbal".  Id.   When the Adult later stated, "if your more into the fantasy and not realtime its cool just let me know, don't want you to be uncomfortable or freak out", the defendant responded "awww----THANKS-----appreciate your being receptive to my needs" adding "LOVE to help you out, though".  Id.  The defendant again discussed plans to meet with the Adult and the minor boy. After the defendant suggested, "think we should meet just us 2 before the introduction of the hotties just to make sure we are comfortable?", the Adult suggested "you could come on a Friday and stay over and all play on sat, up to you, again no worries if your not interested in the little one", to which the defendant replied "lol---I AM interested in little one", "just very cautious here", and "we meet and play and hit it off---maybe look at some pics----confirm expectations and THEN------MMMMM . . . count me IN".  Id. at 21.  The defendant further suggested "us meeting and getting naked and taking perv", "lol----cops won't get naked and have sex with you", and "we do that----should be very comfortable on both sets to let it totally hang".  Id. at 22.  After the Adult stated "and again if your just into me let me know and we can do just that", the defendant replied "lol----NO---am TOTALLY into your scene . . . THAT is not the issue . . . just want to be sure we are both whom

we say we are".  Id.  After the Adult and the defendant again discussed plans to meet with the Adult and the minor boy, with the Adult stating "ok i wasnt sure if it was a thrill discussion or about being careful for realtime with [the minor boy] either way is fine" to which the defendant responded "WANT real time with him" Id. at 33.

Finally, even after the defendant expressed some reluctance, he continued to express his desire to see and engage in sexual activity with the 3-year-old boy.  For example, on Friday, February 17, 2012, at approximately 5:19 p.m., the defendant and the Adult again spoke by telephone.  The defendant stated he had "spent two sleepless nights" trying to "relay may...paranoia . . . And I'm just not able to" further adding "I just need a little but more confirmation".  (Second Call Transcript, at 1.)  When the Adult stated "I don't know if you, if you think it would help you and confirm other than what we've discussed, and I would be willing to . . . do a webcam with him" the defendant expressed a desire to see the minor boy on webcam, responding "That . . . you have hit the nail on the head."  Id. at 2. After the Adult stated he would "suck [the minor boy's] penis in front of you on cam" the defendant again requested to see sexual activity with the minor boy on webcam, stating, "Okay, fabulous".  The defendant stated "I'm legit man, but damn it, I would love to meet you 'cause I think we can have, you know, a ball and I would love to meet somebody that I could trust in this arena" and "I was hoping that you would suggest something like this."  Id. at 3. The defendant then confirmed plans to meet the Adult and the minor the following day after the webcam in the morning, stating "And . . . you know, because if I know that, you know, that you're, you know, legit; then I'm there."  Id.  The defendant further stated "this is going to be a good association" and "I think we can benefit each other significantly."  Id. at 4.  The defendant then asked about the weather forecast for his trip to meet the Adult and the minor boy, stating "what is

the weather forecast, you know – I should be able to get up there and back Sunday though" and adding "I was gonna drive a 4-wheel drive vehicle, so I should be . . . be totally fine." Id. at 4-5. The defendant further stated "if you work with me, I think it will be worth your while" and "this is exactly what I need." Id. at 6. The defendant then offered to buy dinner for the Adult and the minor boy, stating "And I owe you a dinner, for sure, tomorrow night" adding "tomorrow night is my treat" and after the Adult responded that take-in would probably be the easiest, that the minor boy only eats nuggets, and that there's a McDonald's right around the corner, the defendant responded, "Okay. That will work." Id. at 6-7.

Because the defendant did not back out of the criminal activity, despite his innumerable opportunities to do so, this Court should conclude that he was not induced, and preclude the defendant from raising or arguing an entrapment defense at trial. United States v. Layeni, 90 F.3d 514, 517 (D.C. Cir. 1996) (affirming the district court's decision not to instruct the jury on entrapment where there was "not even a scintilla of evidence of an inducement by a governmental official").

Accordingly, based on the facts of this case and the defendant's own words and conduct, the defendant cannot, as a matter of law, show government inducement.

## II.      THE DEFENDANT WAS PREDISPOSED TO COMMIT THE CRIME.

Even if the defendant can satisfy the inducement prong, which the government argues he cannot, his predisposition to commit the offense with which he has been charged is fatal to any claim of entrapment. United States v. Sumlin, 271 F.3d 274, 284 (D.C. Cir. 2001) (holding that the burden shifts to the government "to disprove entrapment by demonstrating beyond a reasonable doubt that the defendant was predisposed to commit the crime"). The Supreme Court has instructed that the

predisposition inquiry "focuses upon whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." Mathews, 485 U.S. at 63 (citation omitted).  In evaluating a defendant's predisposition to commit a crime, courts consider "all of the events surrounding the ultimate commission of the crime." Sumlin, 271 F.3d at 284; Kelly, 748 F.2d at 699.  Among the factors that courts consider particularly relevant to the question of predisposition is a defendant's readiness to commit the crime for which he is charged as evidenced by a ready response to the criminal opportunity presented by the government.  See Burkley, 591 F.2d at 916 (D.C. Cir. 1978) (concluding that predisposition means "ready and willing to commit the crime"); United States v. Brand, 467 F.3d 179, 190 (2d. Cir. 2006) (in §§ 2422(b) and 2423(b) case, holding that the accused's ready "response to the inducement" and "unhesitating response" and fact that accused "jumped at the opportunity" were indicative of predisposition).

Any active interest or lack of hesitation by the defendant will show a predisposition to commit the act. See McLendon, 378 F.3d at 1114-15 (eagerness to sell and boasting about the crack's quality negates a claim that defendant was not predisposed); United States v. Neville, 82 F.3d 1101, 1107 (D.C. Cir. 1996) (the alacrity and active interest in which defendant embraced the plan to smuggle drugs satisfies the predisposition prong); United States v. Walls, 70 F.3d 1323, 1329 (D.C. Cir. 1995)(where a defendant shows no hesitation, that alone is enough to destroy an entrapment defense).

Here, the government can easily prove beyond a reasonable doubt that the defendant was predisposed to entice both minors.  The defendant's predisposition to commit these crimes is clear from his actions and statements, beginning with the defendant's initial contact with Detective

Palchak.  Further, after being given the opportunity to back out was unequivocal in his interest in sexual activity with both the 12-year-old girl and 3-year-old boy, and constantly re-affirmed his interests in sexual activity with both minors.  The defendant's interest, as expressed in the chats, the firming of his plans, his desire to see sexual activity over web cam, and his preparation to travel to meet the Adult for purposes of sexual activity with the 3-year-old boy demonstrate the defendant's readiness to commit the crimes, and thus prove beyond a reasonable that he was predisposed.  See United States v. Shinn, 681 F.3d 924, 930 (8th Cir. 2012) (defendant's broaching idea of in-person meeting, making travel arrangements, and ignoring of "outs" or opportunities to back out showed predisposition); United States v. Cooke, 675 F.3d 1153, 1156 (8th Cir. 2012) (upholding trial court's refusal to give entrapment instruction finding that defendant was predisposed despite fact that undercover officer initiated later phone call because defendant initiated first contact, sought assurances that he was not dealing with law enforcement, and sought to meet minors for sexual activity); United States v. Herbst, 666 F.3d 504, 512 (8th Cir. 2012) (defendant's initiation of sexual conversations, suggestion of sexual activities, and proposal to meet in person showed disposition); Brand, 467 F.3d at 200 (concluding that the government proved the defendant's predisposition beyond a reasonable doubt where the defendant initiated contact with the purported minors and promptly responded to the purported minor's mention of "sex stuff"); United States v. Strater, 150 F. App'x 610 (9th Cir. 2005) (finding that the defendant was predisposed because he did not exhibit any reluctance in meeting the purported victim after she informed the defendant of her age).[5]

---

[5]  Notably, the present case is distinguishable from the situation in United States v. Poehlman where the Court concluded that the defendant had satisfactorily demonstrated that he lacked the predisposition to commit the offenses.  217 F.3d 692, 705 (9th Cir. 2000).  There, the court concluded that the defendant was not predisposed because he had initially resisted the idea of engaging in sexual activity with minors, and only agreed to the plan after considerable

Even if the defendant can show government inducement, which he cannot, the defendant's clear predisposition to commit the offense with which he has been charged demonstrates that he is not entitled to an entrapment defense or instruction, or to raise the issue at trial.[6]

_____

government inducement.  Id..  Similarly, in United States v. Jacobson, 503 U.S. 540, 553 (1992), a child pornography case, the Supreme Court concluded that the defendant's ready response to government solicitations was insufficient to establish predisposition where the government had repeatedly solicited the defendant to engage in criminal activity, with increasing urgency and frequency and included appeals to anti-censorship motives, for more than two-and-a-half years. Important here, the Supreme Court in Jacobson observed that if government agents "had simply offered petitioner the opportunity to order child pornography through the mails, and petitioner . . . had promptly availed himself of this criminal opportunity, it is unlikely that his entrapment defense would have warranted a jury instruction." Id. at 550.  The Supreme Court further analogized that an agent deployed to stop the traffic in illegal drugs may offer the opportunity to buy or sell drugs, and, if the offer is accepted, make an arrest. Id. at 549.  In "such a typical case, or in a more elaborate 'sting' operation . . . where a defendant is simply provided with an opportunity to commit a crime, the entrapment defense is of little use because the ready commission of the criminal act apply demonstrates the defendant's predisposition." Id. at 550; see also United States v. Gamache, 156 F.3d 1, 9 (1st Cir1998) (concluding that defendant's initial response to detective's advertisement initially was for sexual activity with fictional mother and non-sexual activity with fictional minor children and that conversations relating to sexual activity with children were prompted by government over 7-month period).  However, as explained earlier, the evidence in the present case is different because the defendant initiated contact with Detective Palchak and immediately indicated his interest in enticing or inducing minors, as well as eagerly made arrangements to travel across state boundaries to meet up with Detective Palchak and the purported minor for the purpose of engaging in sexual activity.

    [6]  The government, in its 404(b) motion, has proffered additional evidence demonstrating the defendant's sexual interest in minors.  As discussed above, the government carries the burden of proving predisposition where the defendant establishes government inducement and 404(b) evidence of similar conduct is highly probative in rebutting claims of entrapment.  Moreover, to the extent the defendant contends that any of the 404(b) evidence should be excluded on Federal Rule of Evidence 403 grounds, any such argument is undercut by an assertion of an entrapment defense, which makes such evidence significantly more probative and necessary in proving predisposition.

### III.   DEFENDANT IS NOT ENTITLED TO AN ENTRAPMENT INSTRUCTION AND SHOULD BE PRECLUDED FROM PRESENTING AN ENTRAPMENT DEFENSE TO THE JURY.

Where a defendant fails to introduce evidence of government inducement, he is not entitled to an instruction on entrapment and should not be permitted to argue entrapment to the jury.  See, e.g., McKinley, 70 F.3d at 1314 (trial court did not abuse its discretion in refusing to allow defense counsel to argue entrapment to the jury where defendant offered no evidence of inducement warranting an instruction on entrapment); see also United States v. Johnson, 32 F.3d 304, 307 (7th Cir. 1994) (pretrial ruling on government's motion in limine precluding presentation of entrapment defense appropriate where evidence of entrapment was insufficient as a matter of law).  Moreover, a defendant should not be permitted to raise the defense of entrapment by inference or implication through ambiguous actions of defense counsel.  See, e.g., United States v. Neuman, 436 F.2d 285, 286 (D.C. Cir. 1970).  In Neuman, 436 F.2d at 286-87, the D.C. Circuit noted that "it would be unfair if defense counsel could both put the issue of entrapment before the jury through his questioning and still keep the Government from presenting evidence of predisposition by declining formally to plead entrapment as a defense . . . [c]onsequently, when defense counsel asks questions thought to be suggestive of entrapment, he should be instructed to plead the defense or abandon the line of questioning."

If the defendant intends to raise a defense of entrapment, he should be required to proffer their evidence to the Court pretrial so that the Court can hear argument from all parties and determine whether there is sufficient evidence to put the issue before the jury.  If the Court finds that the defendant cannot produce sufficient evidence of government inducement, the defendant should be precluded from raising the defense in opening statements, through questioning of witnesses, or

22

in closing arguments.  The government requests a pre-trial ruling on the issue to avoid any unnecessary delays during the trial.

## **CONCLUSION**

WHEREFORE, the government respectfully requests that the Court grant the government's Motion *In Limine,* excluding the entrapment defense, or, in the alternative, that the Court require the defendant to provide pre-trial notice if he intends to raise an entrapment defense and that, if necessary to the Court's determination on the issue, the Court hold a pre-trial hearing so that it can rule on the government's motion before a jury is sworn.

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney
Bar No. 447889

By: _____/s/_____
DAVID B. KENT, D.C. Bar 482850
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W., 4th Floor
Washington, D.C. 20530
202-252-7763
202-514-8707 (fax)