UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | Criminal No. 12-65 (CKK) |
| | : | |
| **PAUL DAVID HITE,** | : | |
| | : | |
| **Defendant.** | : | |

## SENTENCING MEMORANDUM ON BEHALF OF DEFENDANT PAUL DAVID HITE

    Virtually every aspect of this case has been contested. Dr. Hite has, as is his absolute right, litigated the charges through and including a jury trial. The jury has now spoken and Dr. Hite has been found guilty of two extremely serious charges. With all that has been disputed in this case, what is not in dispute is that Paul David Hite is a 58-year-old physician who not only has no history of criminal conduct, but has a long and distinguished record of service to his community. Dr. Hite has literally spent his life saving the lives of others. He is at an age that after the service of any sentence imposed on him, his likelihood of recidivism is extraordinarily low. Regardless of his term of incarceration, he has lost his medical license and the professional and personal reputation that he spent a lifetime building. He will live out his days as a registered sex offender. Dr. Hite respectfully asks this Court to take into account his decades of good work, the collateral consequences he has already suffered and will suffer, and the extremely low risk that he will re-offend in imposing a sentence that is sufficient to take into account the seriousness of the offense, but also truly is not greater than necessary to effectuate the goals of sentencing.

**ARGUMENT**

Pursuant to 18 U.S.C. § 3553(a), the Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and then fashion "a sentence sufficient, but not greater than necessary: to meet statutorily enumerated sentencing goals.

I. <u>HISTORY AND CHARACTERISTICS OF THE DEFENDANT</u>

Two characteristics about Dr. Hite stand out above all others.  First, Dr. Hite is devoted to his family.  Second, Dr. Hite has spent his entire professional life healing and comforting others.

 A. <u>Family</u>

Dr. Hite was raised by his parents, Paul L. Hite and Genevieve Hite.  His parents are now 85 and 82, respectively, and have been married for 63 years.  Presentence Investigation Report at ¶ 62, April 24, 2103 [DE 116] ("PSR").  Paul L. Hite is a retired constructioncontractor.  *Id.*  Genevieve Hite is a retired registered nurse.  *Id.*  Paul David Hite is the oldest child of Paul L. and Genevieve Hite.  He has a younger brother, Kevin Hite.  *Id.*  Kevin Hite is a sales representative for a pharmaceutical company.  *Id.*

Paul David Hite has never been married and has no children.  *Id.* at ¶ 65.  His brother Kevin is married to Bonnie Hite.  They have two children.  *See* Declarations of Kevin and Bonnie Hite, (attached as Exhibit 1).

  i. <u>Dr. Hite's Parents</u>

Honor your father and your mother, so that you may live long in the land the Lord your God is giving you.

— *Exodus 20:12 (NIV).*

By all accounts, Dr. Hite has a close and loving relationship with his parents.  As the Court is aware, both of Dr. Hite's parents attended Dr. Hite's trial.  Even though their son faced serious criminal charges and even though sitting in court meant exposing themselves to graphic

testimony, they wanted to support their son. As they have written the Court, they did so because of who their son is:

> David has been and continues to be a polite, helpful, responsible, and caring person. . . He was raised in a Christian home where has learned good morals and values accordingly. We are proud to say he has always adhered to those morals and values. He is part of a close knit and supportive family who loves him dearly.

Letter from Genevieve and Paul Hite to The Hon. Colleen Kollar-Kotelly (June 7, 2013) (attached as Exhibit 2).

As Dr. James W. Stone, who has known Dr. Hite for nearly a quarter of a century, has written to this Court, "I have gotten to know Bea and Paul Hite well over the years and it is evident that David has great love for them." *See* Letter from James W. Stone, M.D. to The Hon. Colleen Kollar-Kotelly (May 23, 2013 (attached as Exhibit 3) ("David loves his family and is generous and giving to his mother and father . . ."). Angela Thomas, who has worked for Dr. Hite cleaning his house for eighteen years, has written about her observations about his interactions with his parents: "The holidays were very special, seeing how they cared for each other by reflecting on the special gift giving and doing special things that mattered to each other. His parents meant everything to him." Letter from Angela Thomas to The Hon. Colleen Kollar-Kotelly (May 23, 2013) (attached as Exhibit 4). Dr. Margaret T. Montgomery, who has known Dr. Hite for 23 years, writes, "I have known David's parents for almost as long as I have known him because they are such an important part of his life. He has always been a caring and attentive son to his aging parents." Letter from Margaret T. Montgomery, M.D. to The Hon. Colleen Kollar-Kotelly (May 30, 2013) (attached as Exhibit 5); *see also* Letter from M. Abey Albert, M.D. to The Hon. Colleen Kollar-Kotelly (attached as Exhibit 6) (describing Dr. Hite as "family centered and a loving son").

## ii. Dr. Hite's Brother and His Family

A friend loves at all times, and a brother is born for adversity.

--- *Proverbs* 17:17 (NIV).

Dr. Hite is extremely close to his brother. His brother, who is thirteen years younger than Dr. Hite, writes: "David and I have remained close throughout my entire life." Letter from Kevin Hite to The Hon. Colleen Kollar-Kotelly (attached as Exhibit 7). In addition, Dr. Hite has a close relationship with his brother's wife and with their children, his niece and nephew. *Id.* ("My wife and two children, who are now ages 13 and 9, love David very much."); Letter from Bonnie Hite to The Hon. Colleen Kollar-Kotelly (June 8, 2013) (attached as Exhibit 8) ("I have known David Hite for 17 years and have had the privilege of having him as my brother-in-law for the last 15 of those. . . . Both of my children look up to him in so many ways."); Letter from Evelyn S. Baker to The Hon. Colleen Kollar-Kotelly (May 20, 2013) (attached as Exhibit 9) ("He adores his nephew and niece, and they love him. He has set a good example for them by his actions, being polite, courteous, calm and loving."); Letter from Christopher S. Corbett to the Hon. Colleen Kollar-Kotelly (attached as Exhibit 10) ("His niece and nephew adore and highly respect and look up to their Uncle which they call 'Bro.'"). There has never been a hint of impropriety in that relationship. Indeed, aware of the charges pending against Dr. Hite, both his brother and his sister-in-law filed declarations with this Court expressing not only that they had no concerns about Dr. Hite visiting their children, but also, given how close their children are to their uncle, their view that it was harmful to the children for them to be deprived of their relationship with Dr. Hite. *See* Exhibit 1 (declarations) at ¶ 12.

### B. Career

The physician's highest calling, his only calling, is to make sick people healthy -- to heal, as it is termed.

--- *Samuel Hahnemann*

Dr. Hite has devoted his life to serving and healing others. He has always done so with great skill and compassion. David Reutinger, a physician who has worked with Dr. Hite on hundreds of occasions for almost 30 years, knows Dr. Hite "to be a compassionate and capable anesthesiologist" who "exemplifies excellent patient care." *See* Letter from David Reutinger, M.D. to The Hon. Colleen Kollar-Kotelly (May 29, 2013) (attached as Exhibit 11); *see also* Letter from Frank T. McCormick to The Hon. Colleen Kollar-Kotelly (May 28, 2013) (Dr. Hite was "a prominent and skilled physician at Johnston-Willis Hospital in Richmond") (attached as Exhibit 12); Letter from Margaret T. Montgomery, M.D. to The Hon. Colleen Kollar-Kotelly (May 30, 2013) (attached as Exhibit 5) ("I have always found David to be a trustworthy and dependable individual and a skilled and compassionate physician."); Letter from David S. Geckle, M.D., FACS to The Hon. Colleen Kollar-Kotelly (May 31, 2013) (attached as Exhibit 13) (Dr. Hite "provided excellent care to patients undergoing surgery. In addition, he was well liked by patients. He had a very professional, calm manner and handled emergency situations in a calm and efficient manner.")

Dr. Richard Binns, a General and Vascular Surgeon who was a professional colleague of Dr. Hite's for 20 years, characterizes Dr. Hite's career:

> Dr. Hite has always been professional, thoughtful and kind in his dealings with patients, their families and other physicians. In my interactions with Dr. Hite he exhibited a competent, proficient, intelligent demeanor enabling him to care for my most critically ill patients. Dr. Hite's clinical expertise was so well respected that many of the staff members at CJW Medical Center requested his services as an Anesthesiologist for either themselves or their loved ones during surgery.

5

Letter from Richard L. Binns, M.D., FACS to The Hon. Colleen Kollar-Kotelly (May 21, 2013) (attached as Exhibit 14); *see also* Letter from Jerome M. Parsons, M.D. to The Hon. Colleen Kollar-Kotelly (May 30, 2013) (attached as Exhibit 15) (Dr. Hite was "a consummate physician"); Letter from Stephen W. Powelson, M.D. to The Hon. Colleen Kollar-Kotelly (May 27, 2013) (attached as Exhibit 16) ("I would feel comfortable with any family member receiving care from this compassionate physician."); Letter from Evelyn S. Baker to The Hon. Colleen Kollar-Kotelly (May 20, 2013) (attached as Exhibit 9) ("My husband and I unfortunately had several operations, and we requested that David do the anesthesia.  At the time, he was the head of the department at Johnston Willis Hospital in Richmond.  He was well-known and well-liked among his colleagues.  He had a stellar reputation for his work."); Letter from Barry W. Burkhardt, M.D. to The Hon. Colleen Kollar-Kotelly (June 7, 2013) (attached as Exhibit 17) ("He has always been a kind and considerate physician and very respectful of the patients he takes care of.  He has given anesthesia to two of my children and to myself in the past.  When interacting with his patients, he has always conducted himself with the highest of moral integrity and respect.")

Marie Wilborn, a nurse anesthetist who has worked with Dr. Hite for fifteen years, shares this:

> Dr. Hite is a man who always has kind words for others and shows compassion for his colleagues.  I remember the time when my husband was diagnosed with a rare neurological disorder and had to have emergency brain surgery.  Dr. Hite was there to comfort my family and to offer assistance.  As a physician he always went the extra mile to provide reassurance to the patients whose lives were entrusted to him.  I know of times when he would stay at a patient's bedside to ensure that the patient care was being well managed.

Letter from Marie Wilborn to The Hon. Colleen Kollar-Kotelly (attached as Exhibit 18).[1]

James Stone, a doctor who worked with Dr. Hite on a daily basis for more than 23 years, says that Dr. Hite "was a reliable colleague" and "compassionate to his patients."  Dr. Stone recalls in vivid detail an occasion where Dr. Hite's action saved someone's life.  A patient suffered a catastrophic bleeding event after surgery and Dr. Stone was not able to insert a breathing tube.  Dr. Hite jumped in and was able quickly to get the patient intubated.  According to Dr. Stone: "Because of David's skill and willingness to help the patient survived."  *See* Letter from James W. Stone, M.D. to The Hon. Colleen Kollar-Kotelly (May 23, 2013) (attached as Exhibit 3); *see also* Letter from Kay E. Griffin to The Hon. Colleen Kollar-Kotelly (May 22, 2013) (attached as Exhibit 19) (Dr. Hite "is a very dedicated and professional doctor.  He has helped save lives and been there for families.")[2]

---

[1] Ms. Wilborn was not alone in experiencing that Dr. Hite's compassion and decency extended not only to his patients, but also to his colleagues.  As Dr. M. Abey Albert observes, the "worst nightmare for any physician is the unexpected death of a patient."  Letter from M. Abey Albert, M.D. to The Hon. Colleen Kollar-Kotelly (attached as Exhibit 6).  When Dr. Albert experienced this situation, it was Dr. Hite who comforted him, assisted with his workload, and helped him "manage an incredibly difficult situation."  *Id.*; *see also* Letter from Mathis Ann Kirby, M.D. to The Hon. Colleen Kollar-Kotelly (May 27, 2013) (attached as Exhibit 20) ("David has always shown the most professional attitude to both his patients and the nurses."); Letter from David S. Geckle, M.D., FACS to The Hon. Colleen Kollar-Kotelly (May 31, 2013) (attached as Exhibit 13) (Dr. Hite "was well respected by staff during his tenure at our hospital."); Letter from Barry W. Burkhardt, M.D. to The Hon. Colleen Kollar-Kotelly (June 7, 2013) (attached as Exhibit 17) ("Dr. Hite has always interacted with his colleagues, other surgeons and members of the surgical team with the highest degree of professionalism.")

[2] While this Memorandum is focused on Dr. Hite as a family man and his career as an anesthesiologist, his compassion is limited neither to his family nor to his medical practice.  Christopher Corbett wrote to the Court to discuss a time that Dr. Hite, while at a conference in Hawaii, was at dinner when a woman dining in the same restaurant started choking.  Dr. Hite immediately took charge of the situation, calmed her family, successfully performed the Heimlich maneuver, and saved the woman's life.  Letter from Christopher Corbett to The Hon. Colleen Kollar-Kotelly (attached as Exhibit 10).  Sandra S. Shelton, who attends the same church as Dr. Hite, has written to the Court about the kindness Dr. Hite extended to her son, Glenn, and to her, when Glenn died in a tragic fire a couple of years ago: "David has always told me that 'Glenn had a good heart,' but since this happened, <u>I know that it was and still is David that has a good heart.</u>"  Letter from Sandra S. Shelton to The Hon. Colleen Kollar-Kotelly (May 25, 2013) (attached as Exhibit 21).

## II.     NATURE AND CIRCUMSTANCES OF THE OFFENSE

There can be no doubt that the offense conduct in this case is serious. Dr. Hite expressed an interest in sexual activity with two minors, one extremely young. Had the children not been fictitious and had Dr. Hite actually followed through and engaged -- in the real world with a real child -- in the conduct he discussed on the Internet, the consequences would have been devastating. In sentencing Dr. Hite, the Court can and should take this into account. However, Dr. Hite respectfully asks the Court to consider two other things as well. First, the fact of the matter is that the children in this case were wholly fictitious and Dr. Hite did not travel to meet them. Second, Dr. Hite, who is 58 years old, has no prior history of similar conduct.

Other than his niece and nephew with whom he obviously has a very positive relationship, there is no evidence that Dr. Hite has ever put himself in a position to be around children. He has spent his career working with an adult patient population. He does not volunteer with the Boy Scouts or other organizations that would put him in proximity with children. Indeed, there is only one other child besides his niece and nephew with whom he had significant exposure, the son of a man with whom he had a long-term romantic relationship. The evidence is that Dr. Hite never engaged in any inappropriate conduct with respect to this child. *See* FBI Form-302 of interview of Michael Edward Etto (May 24, 2012) (attached as Exhibit 22) (Mr. Etto had custody of his son for six weeks a year and over Christmas while he was living with Dr. Hite, which was from the time his son was four or five to the time he was fourteen or fifteen; after learning of the charges, Etto immediately called his son, now 26, who said, "there was never anything inappropriate and that he would have told his dad if there had been.").

Indeed, apart from the offense conduct, the evidence demonstrates that Dr. Hite has led an exemplary life. Those who have known Dr. Hite for decades have noted that the offense

conduct is wholly out of character for him.  *See* Letter from James W. Stone, M.D. to The Hon. Colleen Kollar-Kotelly (May 23, 2013) (attached as Exhibit 3) ("We have all been shocked and surprised over what has transpired in the past 15 months."); Letter from Jerome M. Parsons, M.D. to The Hon. Colleen Kollar-Kotelly (May 30, 2013) (attached as Exhibit 15) ("Prior to the current situation, [Dr. Hite] had been an outstanding member of the Richmond community for over 5 decades."); Letter from Stanley M. Gordon, D.D.S. to The Hon. Colleen Kollar-Kotelly (June 11, 2013) (attached as Exhibit 23) ("During all this time I cannot recall any interaction that would reflect negatively or be of any concern whatsoever as to his ability in the future to be a good and contributing law abiding member of society."); Letter from Barry W. Burkhardt, M.D. to The Hon. Colleen Kollar-Kotelly (June 7, 2013) (attached as Exhibit 17) ("Dr. Hite has always been viewed as a highly respected member of our medical community.  Needless to say, the events of the past year have been a shock to all of us.")

> Thomas J. O'Donnell, III has known Dr. Hite for 40 years.
>
>> Those of us who know Dr. Hite remain in shock and disbelief at the circumstances surrounding his arrest and conviction. . . .  I have always known him to be a person of impeccable character.  Up until his arrest Dr. Hite was a highly respected member of our community and a very well known anesthesiologist.  He is one of the kindest people that I know.

Letter from Thomas J. O'Donnell, III to The Hon. Colleen Kollar-Kotelly (May 20, 2013) (attached as Exhibit 24); *see also* Letter from Angela Thomas to The Hon. Colleen Kollar-Kotelly (May 23, 2013) (attached as Exhibit 4) (Dr. Hite's housekeeper of eighteen years expressing her reaction to the news of his arrest: "when I heard it I cried . . . out of shock!"); Letter from Kay E. Griffin to The Hon. Colleen Kollar-Kotelly (May 22, 2013) (attached as Exhibit 19) ("David has had a stellar medical career with no negative marks on his life and record."); Letter from Evelyn S. Baker to The Hon. Colleen Kollar-Kotelly (May 20, 2013)

(attached as Exhibit 9) ("We know David as a kind human being, a responsible citizen, and a doctor with an outstanding reputation.").

Dr. James Embrey worked closely with Dr. Hite for over 30 years. He has written to the Court to share his thoughts about Dr. Hite:

> At no time have I ever observed any unprofessional or unethical behaviors or have had anything but the upmost respect for him as a physician and human being. Dr. Hite has spent a lifetime building a reputation as being a kind, hardworking, and dedicated individual. . . . Dr. Hite is a warm and gentle individual who is deserving of a second chance.

Letter from James P. Embrey, PhD, CRNA to The Hon. Colleen Kollar-Kotelly (May 30, 2013) (attached as Exhibit 25).

Dr. Embrey's observations are shared by Dr. Hite's pastor:

> Dr. Hite has quietly and competently served his home community as a respected anesthesiologist for approximately thirty years. Patients have put their lives in his hands and he has performed his work in a way that has earned their respect and trust. His reputation has been impeccable. . . . This is a man who has lived a consistently helpful and unobtrusive life in a community that highly regards him professionally and loves him personally. I respectfully ask the court to consider the long-standing reputation and exemplary conduct of Dr. Hite.

Letter from Dr. Herbert O. Browning, Jr., Pastor, Huguenot Road Baptist Church to The Hon. Colleen Kollar-Kotelly (May 16, 2013) (attached as Exhibit 26).

## III.   Low Risk of Recidivism

Given Dr. Hite's age, there is a very low risk that he will re-offend. Dr. Hite is currently 58 years old. Following service even of the mandatory minimum term of incarceration he faces, he will be 66.[3] Studies show that age is an important, and often the most important, predictor of

---

[3] *See* PSR at ¶ 103 (a ten year mandatory minimum applies to each of the counts of conviction). The mandatory minimum for each count of conviction may be imposed concurrently. 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively."); *see also United States v. McGee*, 379 F. App'x 875, 876 (11th Cir. 2010) (affirming district court's sentencing of defendant convicted of two

recidivism. Rates of recidivism fall dramatically for older offenders. This drop is not only true generally, but it also applies to sex offenses. *See* Seena Fazel *et al*. "Risk Factors for Criminal Recidivism in Older Sexual Offenders," *Sexual Abuse: A Journal of Research and Treatment*, Vol. 18, No. 2 (April 2006) (largest single sample – over 1,300 offenders – ever studied to examine risk factors for sexual recidivism by age, finding significant differences in the rates of reconviction in four age bands investigated, with those aged 55 years and older having the lowest rate); United States Sentencing Commission, "*Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*," at 12 (May 2004) ("Recidivism rates decline relatively consistently as age increases. Generally, the younger the offender, the more likely the offender recidivates."); Florida Department of Corrections, "Recidivism Report: Inmates Released from Florida Prisons" at 11 (May 2001) ("On average, an inmate's probability of reoffending drops by 2.1% for each year older the inmate is at release."); Michael Eisenberg, Criminal Justice Policy Council, "Recidivism of Sex Offenders: Factors to Consider in Release Decisions," (Feb. 1997) (finding older sex offenders substantially less likely to recidivate than younger sex offenders).

Further, age is not the only predictor of recidivism that suggests that Dr. Hite is extraordinarily unlikely to re-offend. Other significant predictors of recidivism include whether the offender has any substantial criminal history prior to the offense of conviction and the offender's level of education. *See* United States Sentencing Commission, *"Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,"* at 28 (May 2004) (for Criminal History Category I offenders over the age of 50, the recidivism rate

---

counts of violating § 2422(b) to concurrent prison terms); *United States v. Bray*, 133 F. App'x 80 (4th Cir. 2005) (same). If the Court were to impose the mandatory minimum of ten years on each count to run concurrently, even with credit for time served and assuming full credit for good time, Dr. Hite would be 66 when released.

drops significantly); *id.* at 12 (offenders with a college degree are less likely to recidivate than those with lower levels of education); Andrew J.R. Harris and R. Karl Hanson, Public Safety and Emergency Preparedness Canada, "Sex Offender Recidivism: A Simple Question 2004-03," at ii (2004) ("Results indicated that most sexual offenders do not re-offend sexually, that first-time sexual offenders are significantly less likely to sexually re-offend than those with previous sexual convictions, and that offenders over the age of 50 are less likely to re-offend than younger offenders."); Florida Department of Corrections, "Recidivism Report: Inmates Released from Florida Prisons" (May 2001) ("On average, an inmate's probability of reoffending drops by 2.9% for each higher grade of adult basic education tested.") Taking these factors together, Dr. Hite presents an extremely low risk of re-offending upon his release from prison.

While these statistics are compelling, the Court has more than just these statistics before it in making its assessment of Dr. Hite's likelihood of re-offending. Dr. Fred S. Berlin, a noted psychiatric expert on the subject of sexual disorders, who has examined Dr. Hite, has offered the opinion that Dr. Hite "manifests no psychiatric condition that would predispose him to engage in any sort of future criminal misconduct." Letter from Dr. Fred S. Berlin to undersigned counsel, at 1, ¶ 3 (May 21, 2013) (attached as Exhibit 27). Indeed, Dr. Berlin believes that Dr. Hite's "future prognosis is excellent." *Id.* at 3.

In addition to this expert psychiatric opinion, the Court has before it a highly unusual letter written by Thomas J. O'Donnell, Jr., a retired Special Agent of the Federal Bureau of Investigation. Agent O'Donnell notes that with 34 years of criminal investigation experience, he has never written a letter on behalf of a convicted criminal defendant. Yet, he felt "compelled to do so because of the unique combination of my personal knowledge of Dr. Paul David Hite and my years as a criminal investigator." Letter from Thomas J. O'Donnell, Jr. to The Hon. Colleen

Kollar-Kotelly (May 21, 2013) (attached as Exhibit 28).  Agent O'Donnell, who has known Dr. Hite and his family for almost 40 years, offers the opinion that Dr. Hite is "a kind, thoughtful, devoted, law abiding person of excellent character" who Agent O'Donnell believes "has excellent prospects for rehabilitation." *Id.*

Whether measured by statistical probability, psychiatric assessment, or the opinions of people who have known Dr. Hite for decades, the conclusion is the same.  Dr. Hite presents an extremely low likelihood of committing another criminal offense.

## IV.   The Federal Sentencing Guidelines

The Presentence Report calculates Dr. Hite's adjusted offense level at level 39.  PSR at ¶ 56.[4]  Had Dr. Hite actually traveled to D.C. to meet with the fictitious boy, he could have been charged under 18 U.S.C. § 2423(b).  He would have been sentenced under U.S.S.G. §2G1.3.  His base offense level would be 24.  If he received the two-level enhancement for the use of a computer [§2G1.3(b)(3)], the offense level would increase to 26.  The eight-level enhancement for an offense involving a minor who had not yet attained the age of 12 years [§2G1.3(b)(5)] would result in an adjusted offense level of 34.  If there had been an actual minor and he had

---

[4] This calculation includes a two-level enhancement under §2G1.3(b)(3)(A) for use of a computer to persuade, induce, entice, or coerce a minor to engage in prohibited sexual contact. Application Note 4 states that this enhancement can apply to the use of a computer to communicate with a person who exercises custody, care, or supervisory control over a minor. In this case, Detective Palchak, with whom Dr. Hite communicated by computer, did not exercise custody, care, or supervisory control over any actual minor. Moreover, Dr. Hite did not use the computer to persuade, induce, entice, or coerce a minor, even indirectly. For example, he did not use the computer to ask Detective Palchak to deliver to a minor a message from Dr. Hite designed to persuade, induce, entice, or coerce the minor to engage in sexual conduct. Understanding the Court's instruction to the jury that Dr. Hite could be found guilty of the charged offenses if he intended to persuade an adult to cause a minor to engage in sexual activity (Final Jury Instructions at 29-30, Feb. 15, 2013 [DE 111], such conduct does not merit the §2G1.3(b)(3)(A) enhancement. Even if Dr. Hite used the computer to persuade an adult to cause a minor to engage in sex, this is not using a computer to persuade, induce, entice, or coerce a minor. Accordingly, Dr. Hite objects to the application of this enhancement. Without this enhancement, Dr. Hite's adjusted offense level is 37, rather than 39.

1337509.1

actually committed a sex act against that minor, he would have received another two-level enhancement [§2G1.3(b)(4)], for an adjusted offense level of 36.

Yet, the presentence report calculates Dr. Hite's adjusted offense level at 39. It makes absolutely no sense that Dr. Hite, who never communicated with anyone he believed to be a minor, who never travelled interstate, and who never had sexual contact with a minor (indeed, there was no real minor), should receive a *greater* sentence under the Guidelines than he would have had all of those things occurred. For the reasons set forth below, pursuant to 18 U.S.C. § 3553(a), a variance below the applicable Guidelines range is warranted in this case.

### V.   A Sentence in this Case that is Sufficient, But Not Greater than Necessary, Would Include the Mandatory Minimum Period of Ten Years Incarceration Followed By Lengthy Supervised Release Including Conditions Requiring Mental Health Treatment and Counseling

Pursuant to 18 U.S.C. § 3553(a), the Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and then fashion "a sentence sufficient, but not greater than necessary, to comply with the following purposes": A) the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" B) the need for the sentence imposed "to afford adequate deterrence to criminal conduct;" C) the need for the sentence imposed "to protect the public from further crimes of the defendant; and" D) the need for the sentence imposed to provide the defendant "with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." The Court must also consider the kinds of sentences available, the need for restitution and the need to avoid unwarranted sentencing disparities. Finally, the Court should consider the Sentencing Guidelines range and Sentencing Commission policy statements. However, the sentencing court should not presume that the Sentencing Guidelines range is reasonable and need not make any finding of compelling reasons

to vary from a Guidelines sentence. *See Rita v. United States*, 551 U.S. 338, 351 (2007); *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *United States v. Terrell*, 696 F.3d 1257, 1262-64 (D.C. Cir. 2012) (sentencing court need not have compelling reasons to vary from Guidelines sentence and imposing such a requirement is inconsistent with holdings in *Rita* and *Gall* that a Guidelines sentence is not presumptively reasonable).

### A. Seriousness of the Offense

The offense in this case is undoubtedly serious. But, as noted above, the offense conduct is not as serious as if Dr. Hite had communicated directly with someone he believed to be a minor, travelled to meet a minor for sexual purposes, or had sexual contact with an actual minor.

### B. Adequate Deterrence

Deterrence is, of course, broken down into both specific deterrence and general deterrence. With respect to specific deterrence, there is little to be gained by a period of incarceration greater than ten years. Dr. Hite has already lost his medical license, his career, and his reputation, all of which he worked a lifetime to achieve. As a result of the mandatory minimum of ten years, he will serve a substantial period of imprisonment. His risk of recidivism is low. *See* Part III, *supra*.

With respect to general deterrence, while it is always tempting to use a case "to send a message" and the argument can always be made that another lengthy prison sentence will provide general deterrence, such an argument cannot be allowed to trump the need for individualized assessments of all of the relevant sentencing considerations. Further, the sentence should also "send a message" that a life-long record of contributions to the community will be reflected in a defendant's sentence.

From family, friends, clergy, professional colleagues, and an expert psychiatrist, this Court has powerful evidence before it that Dr. Hite's offense conduct stands in stark contrast to his lifetime of good works and that he is unlikely to commit another offense.

### C. The Need to Protect the Public

As set forth above, Dr. Hite presents little threat to the public. Indeed, many have written the Court speaking in glowing terms about the benefit to the public of having Dr. Hite out in the community. Dr. Hite was in the community for a lengthy period pending trial and fully complied with all of his conditions of release. There is no reason to believe that he would not be equally successful during a lengthy period of supervised release. The Court can impose a lengthy period of supervised release with stringent conditions in addition to all of the restrictions that will already be placed on Dr. Hite as a registered sex offender.[5] Indeed, the Court may impose supervised release for life. PSR at ¶ 105.

### D. The Need to Provide the Defendant Appropriate Care

To the extent that Dr. Hite needs mental health treatment and counseling, these services can be obtained while he is not incarcerated, at no cost to the public.

### E. Restitution

The Probation Office has no information indicating there are victims in this case entitled to restitution. PSR at ¶ 122.

---

[5] *See* V.A. Code § 18.2-370.2 (prohibiting convicted sex offender "from loitering within 100 feet of the premises of any place he knows or has reason to know is a primary, secondary or high school . . . or . . . child daycare program," or "going, for the purpose of having any contact whatsoever with children that are not in his custody, within 100 feet of the premises of any place owned or operated by a locality that he knows or should know is a playground, athletic field or facility, or gymnasium").

### F. The Applicable Guidelines Range

As set forth above, the Probation Office calculates Dr. Hite's offense level as 39. Dr. Hite contends that the correct offense level is 37. However, as set forth above, this Guidelines range is wholly unreasonable as it is a greater offense level than would result from traveling and engaging in sexual contact with an actual minor. Indeed, the low end of the sentencing range that the Probation Office believes to be applicable would result in a sentence of nearly 22 years. As a 58 year old male, this is equal to Dr. Hite's remaining life expectancy and would be the functional equivalent of a life sentence. Thus, not only would this sentence be the same sentence Dr. Hite would have received if he had engaged in sexual contact with a prepubescent minor, it would be the same sentence he would receive if he raped and killed a prepubescent minor. The Court should not be contemplating a sentence anywhere near a life sentence in this case based on the offense conduct that actually occurred.

### G. The Need to Avoid Unwarranted Sentencing Disparity

The Court's mandate is not to avoid sentencing disparity, but rather unwarranted sentencing disparity. While similarly situated people should be sentenced similarly, the converse is equally true. Differently situated defendants must be sentenced to take into account those differences. Quite simply, not only must the actual offense conduct that occurred in this case, serious as it was, be distinguished from offenses causing significantly more harm, but also the Court must consider that Dr. Hite brings a unique set of characteristics that need to be considered in fashioning a sentence appropriate for him. Dr. Hite respectfully submits that the following factors, taken individually or in aggregate, warrant a variance sentence: Dr. Hite's character, as established by his lifelong track record apart from the offense conduct, his history of providing compassionate and life-saving medical care, and his low likelihood of recidivism.

### H. The Kinds of Sentences Available

Given the nature of the offenses of conviction, Dr. Hite understands that this Court will impose a significant term of incarceration. The mandatory minimum sentence is ten years. Given Dr. Hite's age, his lifetime record, and his low likelihood of recidivism, this is a reasonable sentence in this case. This is especially true in light of the fact that Dr. Hite will be a registered sex offender upon his release, with all the attendant restrictions on his liberty, and the Court can impose a lengthy period of supervised release with stringent additional conditions. On top of conditions available to protect the public and further reduce any risk of recidivism, the Court can also impose further conditions. Given Dr. Hite's level of education and skill set, a condition of community service would be appropriate. Dr. Hite respectfully submits that a sentence of ten years of imprisonment, followed by a lengthy period of supervised release with mental health and other appropriate conditions, plus a substantial community service requirement, is a sufficient sentence to meet all of the statutory sentencing objectives. Any sentence of imprisonment greater than the mandatory minimum in this case would be greater than necessary to effectuate the goals of sentencing.

### CONCLUSION

Dr. Hite respectfully requests that the Court conclude that the applicable Guidelines range in his case is not warranted upon a full consideration of the nature and circumstances of the offense and the history and characteristics of the defendant. Rather, the Court should impose a ten-year period of incarceration to be followed by a period of supervised release with mental health counseling and treatment and other appropriate conditions, as well as a substantial community service requirement.

Respectfully Submitted,

/s/
Barry J. Pollack (Bar # 12415)
Miller and Chevalier Chartered
655 Fifteenth Street, N.W., Suite 900
Washington, D.C.  20005
Phone: (202) 626-5830
Fax: (202) 626-5801
bpollack@milchev.com

James M. Nachman
808 North Hamilton St.
Richmond, VA 23221
Telephone: (804) 355-9955
Fax: (804) 355-9956
*Admitted Pro Hac Vice*

Claire G. Cardwell
Stone, Cardwell & Dinkin, PLC
101 Shockoe Slip, Suite K
Richmond, VA 23219
Telephone: (804) 359-0000
Fax: (804) 257-5555
*Admitted Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 12th day of June, 2013, a true and genuine copy of Defendant Paul David Hite's Sentencing Memorandum On Behalf of Defendant Paul David Hite was sent via electronic mail by the Court's CM/ECF system to the following:

> David B. Kent
> Assistant United States Attorney
> U.S. ATTORNEY'S OFFICE
> Judiciary Center Building
> 555 Fourth Street, NW
> Washington, DC 20001
> Telephone: (202) 252-7763
> Email: david.kent@usdoj.gov

/s/
Barry J. Pollack

1337509.1