**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

PAUL DAVID HITE,

Defendant.

**Criminal No. 12-65 (CKK)**

**MEMORANDUM OPINION**
(June 20, 2013)

Presently before the Court is the Defendant's oral motion for a judgment of acquittal following the close of the Government's evidence, on which the Court reserved its decision pursuant to Federal Rule of Criminal Procedure 29(b). Based on the evidence in the record, the parties' arguments,[1] and the relevant legal authorities, the Court finds that the Government presented sufficient evidence to sustain a conviction on both counts of the Superseding Indictment. Accordingly, the Defendant's motion for a judgment of acquittal is DENIED.

## I. BACKGROUND

The Superseding Indictment charged the Defendant with two counts of "using facilities of interstate commerce, that is, a telephone and computer connected to the Internet, [to] knowingly attempt to persuade, induce, entice, and coerce a minor of the [ages of 3 and 12 years], to engage in sexual activity under such circumstances as would constitute a criminal act" under D.C. Code § 22-3008. The evidence introduced by the Government demonstrated that the Defendant engaged in a number of online and telephonic conversations with an individual known to the Defendant as "JP" concerning sexual activity with JP's three year-old nephew and the twelve

[1] Excerpts of the trial transcript containing the parties' arguments on the Defendant's motion are attached to this Memorandum Opinion.

year-old daughter of JP's girlfriend. 2/6/13 AM Tr. 113:12-132:19; 2/6/13 PM Tr. 3:11-101:22; 2/7/13 AM Tr. 11:16-29:23; 2/7/13 AM Tr. 30:3-114:5 (cross-examination); 2/7/13 PM Tr. 4:3-52:18 (cross-examination); 2/7/13 PM Tr. 52:24-58:19 (re-direct); Gov't Ex. 4 (gay.com chat transcript); Gov't Ex. 5 (Yahoo chat transcripts); Gov't Ex. 10 (recording of 2/14/12 telephone call); Gov't Ex. 11 (recording of 2/17/12 telephone call).

At the close of the Government's case the Defendant moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, on two grounds. First, the Defendant argued that the Government failed to produce sufficient evidence to show the Defendant intended to entice or coerce the minors at the time of the alleged offense, or took substantial steps towards completion the offenses. 2/8/12 PM Tr. 30:11-31:6, 34:8-35:2. The Defendant also argued that, as a matter of law, section 2422(b) requires the Government to prove the Defendant could be charged with attempting to violate the underlying state offense identified in the indictment. *See id*. at 18:19-20:9. The Court reserved its decision on the Defendant's motions pending the jury's verdict. *Id*. at 38:16-21. The Jury subsequently convicted the Defendant on both counts of the Superseding Indictment. The Court rejected the Defendant's legal argument in support of his motion for a judgment of acquittal in the June 14, 2013, Memorandum Opinion and Order, ECF Nos. [123-24]. The Court addresses the first portion of the Defendant's motion relating to the sufficiency of the evidence to sustain a conviction in this Memorandum Opinion.

## II. LEGAL STANDARD

Rule 29(a) of the Federal Rules of Criminal Procedure provides in pertinent part that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "If the court reserves decision, it

must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b). "In ruling on a motion for a judgment of acquittal, the trial court must view the evidence in the light most favorable to the Government giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *United States v. Treadwell*, 760 F.2d 327, 333 (D.C. Cir. 1985) (citation omitted). "This stringent standard contemplates that the ultimate decision of guilt or innocence should be left to the jury, and that it is the province of the jury to credit certain testimony and reject other testimony." *United States v. Khanu*, 675 F. Supp. 2d 55, 60 (D.D.C. 2009).

The Court must deny a motion for judgment of acquittal when the evidence "is sufficient to permit a rational trier of fact to find all of the essential elements of the crime beyond a reasonable doubt." *United States v. Kayode*, 254 F.3d 204, 212 (D.C. Cir. 2011) (citation omitted). A judgment of acquittal is warranted "only when there is no evidence upon which a reasonable mind might find guilt beyond a reasonable doubt." *United States v. Byfield*, 928 F.2d 1163, 1165 (D.C. Cir. 1991) (citation omitted); *see also United States v. Foster*, 783 F.2d 1087, 1088 (D.C. Cir. 1986) ("[W]here the evidence viewed in the light most favorable to the prosecution is such that a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime, a motion for judgment of acquittal must be granted.") (citation omitted). The evidence "need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Maxwell*, 920 F.2d 1028, 1035 (D.C. Cir. 1990) (citation omitted). "There is no requirement of any direct evidence against the defendant; the evidence may be entirely circumstantial." *United States v. Poston*, 902 F.2d 90, 94 n.4 (D.C. Cir. 1990).

## III. DISCUSSION

*A. Intent to Persuade, Induce, Entice, or Coerce*

The Defendant argues that the evidence presented by the Government is insufficient to permit a rational trier of fact to find beyond a reasonable doubt that the Defendant intended to persuade, induce, entice, or coerce the fictitious minors to engage in illicit sexual activity. Specifically, the Defendant argues that if the jury were to credit the Government's evidence "what they would have would be that Dr. Hite entertained the notion and had the intent *at some future time* to induce a minor to have sex." 2/8/13 PM Tr. 30:23-31:1 (emphasis added). On the record before the Court at the time the Defendant made his motion, the Court finds a reasonable trier of fact could find beyond a reasonable doubt each of the essential elements of the attempt offenses with which the Defendant was charged.

As an initial matter, the Defendant's argument is based on a flawed understanding of the completed offense under section 2422(b). "Section 2422(b) criminalizes an intentional attempt to achieve a mental state—a minor's assent." *United States v. Berk*, 652 F.3d 132, 140 (1st Cir. 2011); *see* 6/30/12 Mem. Op., ECF No. [15], at 27. The offense is complete at the point a defendant obtains the minor's assent; the timing of the sexual activity is irrelevant. Thus, the relevant question for purposes of this motion is whether the Government introduced sufficient evidence from which a reasonable trier of fact could conclude that the Defendant intended to persuade, induce, entice, or coerce the fictitious minors to engage in illicit sexual activity regardless of when the illicit sexual activity is supposed to take place.

With respect to the twelve-year-old girl, the Government introduced evidence that during the first Yahoo chat with JP on February 1, 2012, the Defendant: (1) expressed a desire to engage in sexual activity with the girl, Gov't Ex. 5 at 1 ("damn—love to get my tongue in that");

(2) asked what sexually excited the girl, *id.* at 2; (3) suggested a sexual encounter with himself, JP and the girl, *id.* at 2 ("BOTH of you would excite me"), *id.* ("would love to do a bi 3 way with you and a yng girl"); (4) discussed what days of the week would be most convenient for an encounter with the girl, *id.* at 3; (5) indicated JP could show the girl a picture of the Defendant, *id*. at 3; (6) said he would "love to see" a picture of the girl, *id.* at 4; (7) thanked JP "for the potential experience"; and (8) twice said "let me know what she thinks," *id.* at 4, 5.  During subsequent chats, the Defendant (1) asked if the girl liked the idea of a sexual encounter with JP and Defendant, Gov't Ex. 5 at 10; (2) offered that he was "willing to take it slowly at her pace," *id.*; (3) said he "can't wait to see her naked," *id*.; (4) when he was not available on the date suggested by JP to engage in sexual activity with the girl, the Defendant indicated when he would be available, *id.* at 11; and (5) stated that if JP had custody of the girl "any other time, let me know," *id.*  Subsequent discussions focused on the three-year-old, but the Defendant indicated that he still also wanted to meet the girl, Gov't Ex. 5 at 26, and asked JP to "tell her hello from me—can't wait to meet her," *id.* at 46.  The Defendant raised the issue that he had not had a vasectomy and would need to "be careful with" the girl, but would "adjust" to the fact JP would require him to wear a condom when having sex with the girl. *Id.* at 26-27.  On this record, viewing the evidence in the light most favorable to the Government, there is more than sufficient evidence to permit a rational trier of fact to find beyond a reasonable doubt that during his conversations with JP, the Defendant at that time intended to persuade, induce, entice, or coerce the fictitious twelve-year-old girl to engage in sexual activity.

The evidence was likewise sufficient for the three-year-old boy.  The Defendant first suggested the Defendant engage in sexual activity with the boy. Gov't Ex. 5 at 13 ("count me IN with him also"); *id.* ("would love to help you with him sometime").  The Defendant proposed

scenarios for engaging in sexual activity with the boy, *e.g.*, *id.* at 21-23, and told JP to "make sure you have some" Benadryl to give the boy as a sedative, *id.* at 28, 34 ("we need Benadryl for him when we meet").  The Defendant emphasized that he was "VERY interested" in the boy, and that the Defendant wanted "real time with him." *Id.* at 31.  The Defendant proposed "meet[ing] just us 2 before the introduction of the hotties just to make sure we are comfortable." Gov't Ex. 5 at 19, 24; *see also id.* at 44 ("if us 2 are totally comfortable---on to the REAL fun").

The Defendant and JP agreed to meet on February 17, 2012, the Defendant indicated what time he would arrive, and they decided to have dinner once the Defendant arrived. *Id.* at 36.  The Defendant asked what time the boy would arrive the following day, and asserted that he "w[ould] do anything you want to enable this arrangement." *Id.* at 37.  The Defendant asked if he should plan on spending Friday night so they could "play Saturday," or leave Friday evening and return Saturday. *Id.* at 38.  The Defendant asked how JP "want[ed] to start with him on Saturday," and asked if he should bring bananas, or if "jelly or honey might work better" for engaging the boy in sexual activity. *Id.* at 38-39; *see also id.* at 40 ("think our plan is as you say---games and benedryl [sic]").  The Defendant later indicated he "got a gag gift of a jar of peanut butter and grape jelly pre-mixed---hehe---THAT should be fun." *Id.* at 45.  The Defendant and JP also discussed in detail what sexual acts they might perform on the boy. *Id.* at 41-42.

JP called the Defendant on February 17, 2013, and the Defendant indicated that he was trying to relay his "paranoia" about meeting up with JP, stating that "I would enjoy it immensely and I think you're probably, would be.  I just need . . . you know, I just need a little bit more confirmation."  JP offered to "do a webcam" showing JP engaging in sexual activity with the boy the following day, to which the Defendant replied "I was hoping that you would suggest something like this," and "if I know that, you know, that you're, you know, legit; then I'm

there." JP indicated that he was returning the boy to his parents on Sunday evening rather than having the parents pick up the boy, to which the Defendant replied "you know that would be absolutely, you know, perfect." The Defendant further indicated that "I owe you dinner, for sure, tomorrow night . . . tomorrow night is my treat." JP suggested that take-in from McDonald's would be the easiest, and that the only thing the boy eats is nuggets. The Defendant stated "[t]hat will work."

The fact that the Defendant did not ultimately travel to Washington, D.C., is not dispositive of the Defendant's intent; the jury need only find that the Defendant intended to coerce the three-year-old to engage in sexual activity, regardless of whether the Defendant intended to ultimately engage in the sexual activity. *See United States v. Goetzke*, 494 F.3d 1231, 1236 (9th Cir. 2007) ("Travel by a defendant to meet a potential victim is probative, but not required, to advance and verify an intent to persuade, induce, entice, or coerce."). The Defendant's conversations prior to February 17, as well as the Defendant's statements regarding the proposed webcam with the boy provide a sufficient basis for the jury to make the required finding regarding the Defendant's intent to coerce the child. Viewing the evidence in the light most favorable to the Government, the Government introduced sufficient evidence from which a reasonable trier of fact could conclude beyond a reasonable doubt that the Defendant intended to persuade, induce, entice, or coerce the fictitious three-year-old boy to engage in sexual activity.

*B. Substantial Step*

After a colloquy with the Court, the Defendant's argument appeared to shift from the issue of intent to the issue of whether the Government proved the Defendant took a substantial step towards completion of the offenses. 2/8/13 PM Tr. 34:8-35:2. "[W]hile words and discussions would usually be considered preparations for most crimes, a specific discussion

could be so final in nature that it left little doubt that a crime was intended and would be committed." *United States v. Pratt*, 351 F.3d 131, 136 (4th Cir. 2003); *accord, e.g.*, *United States v. Broussard*, 669 F.3d 537, 550 (5th Cir. 2012) ("[T]he prohibited act of persuasion can occur over a distance, as the statute expressly contemplates, and logic would appear to dictate that having discussions with TL and KH about meeting to have sex is a substantial step toward persuading them to have sex.").

Beginning with the twelve-year-old girl, the Government submitted sufficient evidence to show the Defendant went beyond mere preparations. The Defendant discussed what days he would or would not be available to engage in sexual activity with the girl and suggested alternative dates when he was not available on the day suggested by JP, Gov't Ex. 5 at 3, 11, discussed what sexual activity with the girl would be permitted, *id.* at 26-27, raised the issue that he had not had a vasectomy and would have "to be careful" with the girl, *id.*, and followed up regarding JP's conversations with the girl as to whether she would be interested in engaging in sexual activity with the Defendant and JP, *id.* at 10. With respect to the three-year-old, the Defendant selected a date to engage in sexual activity with the boy, *id.* at 36, discussed where to park when he arrived in Washington, D.C., and what car he would drive, *id.* at 25, 57, discussed in detail what sexual acts they might perform on the boy, *id.* at 41-42, and indicated that he had a jar of peanut butter and jelly to use during sexual activity with the boy, *id.* at 45. The Defendant also searched for directions to the Verizon Center in Washington, D.C. 2/8/13 AM Tr. 137:20-138:4. During the February 17, 2012, conversation, the Defendant discussed whether the weather would be an issue when he drove to Washington, D.C., the following day, as well as the parties' plan for dinner following the Defendant's arrival. As the Third, Sixth, Ninth, and Tenth Circuits have held, "when a defendant initiates conversation with a minor, describes the sexual

acts that he would like to perform on the minor, and proposes a rendezvous to perform those acts, he has crossed the line toward persuading, inducing, enticing, or coercing a minor to engage in unlawful sexual activity." *Goetzke*, 494 F.3d at 1236; *see also* 6/30/12 Mem. Op. at 25-26 (collecting cases).

**IV. CONCLUSION**

For the foregoing reasons, the Court finds that, drawing all reasonable inferences in favor of the Government, the Government introduced sufficient to permit a rational trier of fact to find the Defendant intended to intended to persuade, induce, entice, or coerce the fictitious minors to engage in sexual activity, and took a substantial step towards completion of the offense as to each minor, beyond a reasonable doubt. Accordingly, the Defendant's motion for a judgment of acquittal is DENIED. An appropriate Order accompanies this Memorandum Opinion.

*/s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **Plaintiff,** | : | Criminal Action |
| | : | No. 12-65 |
| **v.** | : | |
| | : | |
| **PAUL DAVID HITE,** | : | February 8, 2013 |
| | : | 2:00 p.m. |
| | : | |
| | : | |
| **Defendant.** | : | Washington, D.C. |
| | : | |
| ............................ | : | |

**DAY 5 - AFTERNOON SESSION**
**TRANSCRIPT OF JURY TRIAL PROCEEDINGS**
**BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY**
**UNITED STATES DISTRICT JUDGE**

APPEARANCES:

For the United States:

**Julieanne Himelstein, Assistant U.S. Attorney**
U.S. ATTORNEY OFFICE
Judiciary Center Building
555 Fourth Street, NW, 10th Floor
Washington, DC 20001
(202) 252-7726
Email:
Julieanne.himelstein@usdoj.gov

**David B. Kent, Assistant U.S. Attorney**
U.S. ATTORNEY'S OFFICE
Judiciary Center Building
555 Fourth Street, NW
Washington, DC 20001
(202) 252-7963
Email: David.Kent@usdoj.gov

01:51 hands back there.

01:51 MR. POLLACK: Fine.

01:51 THE COURT: So if we could, and I'll take a break and see whether I want -- I mean, the other possibility, as a practical matter depending on what you're putting on, would be to take it under advisement, which I'm -- you know, I can do under the rules, and that might be a better way of doing it. I mean, I -- let me give this thought.

01:51 What are the rest of your arguments so I at least know what they are?

01:51 MR. POLLACK: Sure. In addition, both with respect to the 12-year-old girl and with respect to the three-year-old boy, I don't believe that the government has shown that Mr. -- that Dr. Hite enticed, induced, persuaded, coerced either to engage in sexual activity, and I don't think that he persuaded, coerced or induced Detective Palchak posting as JP to turn around and induce the minors or that he used the -- Detective Palchak as a vehicle to deliver some form of inducement.

01:53 THE COURT: You don't think that there's evidence on the record that the jury could decide to credit that would -- you know, I mean, it seems to me they have to decide whether to credit the chats along with the other evidence that was admitted.

01:53 MR. POLLACK: I think, at best, if they were to credit the government's evidence, what they would have would be that Dr. Hite entertained the notion and had the intent at some future

01:53 time to induce a minor to have sex. So, for example, if one believed that he was serious at some point in getting together with JP and having Christie there, at that point he would induce Christie to have sex or there'd be some, you know, tangible meeting. I don't think talking about some vague future plan constitutes a present act of enticement.

01:54 With respect to the boy, it's the same thing. There is no entics6ement that has actually happened, there's simply discussion about a future act of enticement.

01:54 THE COURT: Okay. What else?

01:54 MR. POLLACK: And, Your Honor, I'm trying to craft this portion of the argument in conformity with what I understand from the ruling on the motion to dismiss and the proposed jury instructions as the Court's view of the law.

01:54 THE COURT: Right.

01:54 MR. POLLACK: Obviously, I'm preserving my objections with respect to the fact that it needs to use the instrumentally of interstate commerce to actually commit the offense, as opposed to simply use that instrumentally in furtherance of the offense, that it has to be direct persuasion and all the other arguments I've raised. But evenly accepting all of the rulings to date and even giving favorable inference to the government as, of course the Court should on a Rule 29, I think at best you have an intent to engage in course in the future -- or inducement in the future.

01:55 THE COURT: Okay. What's your other argument? Is that

01:55 it, those two?

01:55 MR. POLLACK: I think those are the arguments.

01:55 THE COURT: Okay. Then let me hear the second argument, the second one which is the intent to do this at a future time.

01:55 MS. HIMELSTEIN: Thank you, Your Honor. The evidence is sufficient to sustain a conviction. With respect to the girl, the evidence is that the defendant expressed his desire for the girl, he directed a picture of himself to go to the girl. He asked questions about what her reaction was. He talked about having a threeway. He talked about possibly giving her alcohol. It was clear, based on the defendant's statements, that he thought that -- he was scared that the girl, since she was 12, would possibly tell.

01:56 It was clear from the evidence that he was much more sexually attracted to the boy, and in the course of the conversation told the -- told JP that he wants to start with the boy, and that is how the communication began with the boy.

01:56 THE COURT: Okay. But let me -- that -- the evidence is there and I understand that. His argument is focused on, it was an intent to potentially do this at some future time. That's his argument: It's whether it's an intent now, or to do it in the future. You need to respond to that.

01:56 MS. HIMELSTEIN: The offense in this case is whether or not he intended to entice or induce a child to engage in sexual activity as he was communicating over a facility of interstate

commerce. During the course of his communication, that is when he has to have the intention to entice --

THE COURT: And the intention, from your perspective, is at the time that he's actually communicating plans?

MS. HIMELSTEIN: That's correct.

THE COURT: Anything you want to respond to that?

MR. POLLACK: Sure. I think under that, if I, you know, send a e-mail to somebody and I honestly say I intend ten years from now to molest a child, that that would suffice, and I don't -- I submit that that doesn't. I mean, there has to be a present intent to induce, and there has to be a substantial step, and here --

THE COURT: Well, that -- you could argue about the substantial steps in terms of various discussions back and forth about it since it is in the context of an attempt, but yours seems to be that the intent has to still have -- your view of the attempt is he didn't carry it out and therefore, you know, that's why it's an attempt, and not the issue of whether or not he had the intention at the time he was communicating about this over the Internet.

MR. POLLACK: Well, it -- I mean, it has to be an attempt. They're not charging a substantive offense. They're only charging it as an attempt because it was a fictitious minor, but the fact that it's --

THE COURT: I'm just trying to get what you're --

MR. POLLACK: Yes.

THE COURT: I'm trying to figure out your argument in the context of -- do you disagree that if there's enough evidence in the context of the Internet chats, et cetera, the plans, et cetera, you know. He didn't actually drive to D.C., but if he had all these other plans, et cetera, you're claim that's not enough?

MR. POLLACK: Planning a future crime is not enough. It's got to be a current crime, so it would have to be the actual --

THE COURT: Well, the question is: Does he have the intent at the time he's making these plans to do it?

MR. POLLACK: No. It's not -- he has to -- there has to be a combination of a state of mind and action. If I'm sitting here right now and I have the intent to do something ten years from now, that is not an attempt. I have to do something today on the Internet. And the "something" has to not be talk about some future act, it has to be taking a current act to induce the child, it has to be something directed towards the child today saying, you know, I --

THE COURT: So you're view is it's not enough to have conversations about it, it would have to be you'd have to take some action?

MR. POLLACK: Correct. And especially conversations that are all forward-looking conversations. You know, at some point, if I get up the nerve to go through with it, you know, I'll --

I'll -- we'll execute this plan. That's what we've got here.

THE COURT: Okay. Do you want to respond anything to this?

MS. HIMELSTEIN: Just very briefly, Your Honor. The requirement that we have protects against that. It's built-in, because we have the burden of also showing that the defendant took a substantial step toward the enticing, inducing, et cetera. And in this case we have clearly showed by all sorts of evidence that the defendant took, not just one substantial step, but many substantial steps.

THE COURT: Okay. So give me, in quick form, you know, some of these, from your perspective.

MS. HIMELSTEIN: I'm sorry, I didn't hear the Court.

THE COURT: From your perspective, what you view as the substantial steps, in summary form.

MS. HIMELSTEIN: Discussion about parking; discussion about date and time; discussion about place that they are going to meet; the defendant's looking up on the Internet the Verizon Center; the fact that he was worried about the weather; the fact that he mentioned the car that he was going to drive, which was a 4-wheel drive; the fact that the meeting was arranged around his schedule and his availability; the fact that he was covering his tracks in the course of both the phone call and the chats, which showed that he was actually going to do it, because if he wasn't going to do it then he would not have needed to cover his tracks;

the fact that he was worried about getting caught; the fact that he required confirmation from the intermediary before he would act, that he needed to have confirmation so that he knew that he wouldn't get caught; the fact that he told his friend after the phone call from the intermediary that he had not decided whether or not he was going to go to D.C., but that he would decide tomorrow morning, the exact same time that the intermediary was supposed to show him the webcam of himself and the three-year old boy. Those are just some examples of his substantial steps.

THE COURT: Okay. I think the way I'm going to do this is I'm going to take a break, go back quickly and look at them. I'm going to look at the legal issue first for a second to see how complicated this is, go back and look in terms of whether things can be taken under advisement under these circumstances or not, and now I would ask whether you take a look with that argument at least, in terms of what -- whether you need more time, don't need more time, so we get a sense of whether we should try to proceed today with this or we should, you know, send them home and do a better, you know, job on it. All it does is postpone the day until after the trial and whatever we come back with, depending on what the jury verdict is, as to whether you need to address it.

So I think what I would suggest is I'm going to take about 15 minutes to go, quickly get a view of how quick or not quick this is going to be, and make a decision as to whether I want