UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO. 12-65 (CKK)** |
| | : | |
| v. | : | |
| | : | |
| **PAUL DAVID HITE,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MOTION FOR RESTITUTION**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its motion for restitution on behalf of the victims in the "Misty," "8 Kids,", and "Sponge B" series,[1] victims in the above referenced case.

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

On February 17, 2012, the defendant, Paul David Hite, was arrested and charged with attempted coercion and enticement of a minor, in violation 18 U.S.C. § 2422(b). On March 13, 2012, a federal grand jury returned a one-count indictment against the defendant, charging him with Attempted Coercion and Enticement of a Minor (a 12-year-old girl), in violation of 18 U.S.C. § 2422(b) (ECF No. 8). On April 10, 2012, a federal grand jury returned a superseding indictment, charging the defendant with two counts of Attempted Coercion and Enticement of a Minor (one count for a 12-year-old girl and one count for a 3-year-old boy) (ECF No. 10).

On February 13, 2013, a jury returned guilty verdicts on both counts (ECF No. 107). This Court ultimately sentenced the defendant to 264 months' incarceration (ECF No. 156). On October 21, 2014, the U.S. Court of Appeals for the D.C. Circuit vacated the defendant's

---

[1]    The victim in the "Misty" series is often referred to as "Amy." The "8 Kids" series was formerly known as the "Erik" series. The "Sponge B" series is also referred to as the "Sponge Bob" series.

convictions and remanded the case for a new trial. *United States v. Hite*, 769 F.3d 1154 (D.C. Cir. 2014).

Following a status hearing on January 9, 2015, this Court scheduled a re-trial for July 6, 2015 (ECF No. 200). On April 15, 2015, the defendant pled guilty, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), to a superseding information charging one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), and one count of Arranging for a Sexual Contact with a Real or Fictitious Child, in violation of 22 D.C. Code § 3010.02 (ECF No. 232). As the defendant admitted in a signed Statement of Offense and under oath at the plea hearing, following the defendant's arrest on February 17, 2012 near his home in Richmond, Virginia, law enforcement recovered an HP laptop computer, Model DV7-3065DX, S/N CNF93647RQ, from the defendant's home (ECF No. 231 at 5-6). Forensic analysis of the defendant's laptop computer further determined that between at least October 2009 and March 2011, approximately 409 files of child pornography were located on an external storage drive that had been connected to the computer (*id*. at 5). Defendant Hite knew that the external storage drive contained child pornography (*id*.). These files included depictions of prepubescent boys and prepubescent girls engaging in sexually explicit conduct and sexual acts with themselves, each other, and adult men (*id*.).

The files of child pornography located on the external storage drive that had been connected to the computer included one image of the victim in the "Misty" series, two images of the victims in "8 Kids" series, and two images of the victim in the "Sponge B" series. Attorneys for the victims in these series provided the government with packages of materials requesting restitution, which the government has filed separately under seal.

With respect to the victim in the "Misty" series, the filed documents include: (1) letter from James Marsh, Esq., attorney for the victim in the "Misty" series, dated April 29, 2015 (Exhibit A, filed under seal); (2) Victim Impact Statement from the victim in the "Misty" series (Exhibit B, filed under seal); (3) Curriculum Vitae and Reports of Psychological Consultation from Dr. Joyanna Silberg, dated November 21, 2008, October 21, 2010, January 23, 2011, October 23, 2012, and December 8, 2014 (Exhibit C, filed under seal); (4) Curriculum Vitae and Report of Economic Losses from Dr. Stan Smith, dated September 15, 2008 (Exhibit D, filed under seal); and (5) restitution payment instructions (Exhibit E, under seal).

With respect to the victims in the "8 Kids" series, these documents include: (1) letter from Tanya Hankins, Esq., attorney for the victims in the "8 Kids" series, dated April 28, 2015 (Exhibit F, filed under seal); (2) Report of Psychological Evaluation and Damages Assessment for John Doe I, a victim in the "8 Kids" series, from Dr. Mark Whitehill, dated February 2, 2015 (Exhibit G, filed under seal); (3) Report of Psychological Evaluation and Damages Assessment for John Doe II, a victim in the "8 Kids" series, from Dr. Mark Whitehill, dated March 23, 2014 (Exhibit H, filed under seal); (4) Victim Impact Statements for the victims in the "8 Kids" series (Exhibit I, filed under seal); (5) Vocational Evaluation and Life Care Planning Report for the victims in the "8 Kids" series, from Carol Gann, dated April 23, 2008 (Exhibit J, filed under seal); (6) Report concerning long-term effects of child sexual abuse and developmental risks for the victims in the "8 Kids" series from Dr. Kimberly Barrett (Exhibit K, filed under seal); and (7) Economic loss report for the victims in the "8 Kids" series from Robert Moss, dated May 14, 2008 (Exhibit L, filed under seal).

With respect to the victim in the "Sponge B" series, these documents include: (1) letter from Heidi Nestel, Esq. and Bethany Warr, Esq., attorneys for the victim in the "Sponge B"

series, dated May 6, 2015 (Exhibit M, filed under seal); (2) Report from Dr. David Corwin, dated March 13, 2014 (Exhibit N, filed under seal); and (3) Economic Loss Report from Dr. Stan Smith, dated April 30, 2014 (Exhibit O, filed under seal).

## II.     ARGUMENT

### A.     Restitution is Mandatory

The Court is required by statute to award restitution to the victims in the "Misty," "8 Kids and "Sponge B" series. They are all victims of the defendant's offense who are entitled to the full amount of losses that the defendant's conduct proximately caused.

Under 18 U.S.C. § 2259(a), a district court "shall order restitution for any offense" in violation of Chapter 110, "Sexual Exploitation and Other Abuse of Children," which includes offenses involving the possession, receipt and distribution of child pornography. The restitution order must direct the defendant to pay the "victim" what the district court determines to be the "the full amount of the victim's losses." 18 U.S.C. § 2259(b)(1). "Victim" is defined as "the individual harmed as a result of a commission of a crime" under Chapter 110. 18 U.S.C. § 2259(c). The "full amount of the victim's losses" is defined as costs incurred for: medical services; physical and occupational therapy or rehabilitation; necessary transportation, temporary housing, and child-care expenses; lost income; attorney's fees and other litigation costs; and "any other losses suffered by the victim as a proximate result of the offense. 18 U.S.C. § 2259(b)(3). A court may not decline to award restitution because of the defendant's economic circumstances or the victim's entitlement to restitution from another source. 18 U.S.C. § 2259(b)(4)(B). An order of restitution under this section "shall be issued and enforced in accordance with section 3664," 18 U.S.C. § 2559(b)(2), which provides that the "burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the

Government," 18 U.S.C. § 3664(e).  The court shall resolve any dispute "as to the proper amount or type of restitution" by the "preponderance of the evidence."  18 U.S.C. § 3664(e).

In *United States v. Paroline*, the Supreme Court recently examined "how to determine the amount of restitution a possessor of child pornography must pay to the victim whose childhood abuse appears in pornographic materials possessed."  134 S. Ct. 1710, 1716 (2014).  The Court held that restitution is "proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses."  134 S. Ct. at 1722.  Proximate cause is a "flexible concept" that "generally refers to the basic requirement that…there must be some direct relation between the injury asserted and the injurious conduct alleged."  *Id.* at 1719 (internal quotation marks and citations omitted).

The Court acknowledged that it may be "simple enough for the victim to provide the aggregate losses, including the costs of psychiatric treatment and lost income, that stem from the ongoing traffic in [the victim's] images as a whole" – what the Court refers to as "general losses."  134 S. Ct. at 1722.  But the "difficulty is in determining the 'full amount' of those general losses, if any, that are the proximate result of the offense conduct of a particular defendant who is one of thousands who have possessed and will in the future possess the victim's images but who has no other connection to the victim."  *Id.*

The Court rejected the argument that "the victim's entire losses from the ongoing trade in her images" were suffered as a proximate result of one possessor's offense.  134 S. Ct. at 1726.  However, the Court did find that even just one person's possession of the victim's images proximately caused some portion of the victim's losses:

> The cause of the victim's general losses is the trade in her images.  And [the defendant] is a part of that cause, for he is one of those who viewed her images. While it is not possible to identify a discrete, readily definable incremental loss he

caused, it is indisputable that he was a part of the overall phenomenon that caused her general losses.

*Id.* at 1726. The Court held:

> In this special context, where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses. The amount would not be severe in a case like this, given the nature of the causal connection between the conduct of a possessor…and the entirety of the victim's general losses from the trade in her images, which are the product of the acts of thousands of offenders. It would not, however, be a token or nominal amount.

*Id.* at 1727.

The Supreme Court did not adopt a formula for determining restitution in this type of case. Indeed, the Court said, "[t]his cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment." 134 S. Ct. at 1728. Rather, the Court identified a number of factors that courts "might consider" in determining restitution and, more specifically, in assessing the causal significance of the defendant's conduct in producing the victim's losses: "the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed, and other factors relevant to the defendant's relative causal role." *Id.* These factors are "rough guideposts for determining an amount that fits the offense." *Id.*

> **B.   General Losses and Restitution Request on Behalf of the Victim in the "Misty" Series.**

The victim in the "Misty" series was evaluated by Dr. Joyanna Silberg in 2008, and on several follow-up occasions. *See* Exhibit C. Following treatment for her initial abuse, the victim's condition deteriorated upon notification of the widespread presence and dissemination of pornographic images of her over the Internet (*id.* at 6). Dr. Silberg's report conveys the victim's traumatization and re-victimization based on the presence of these images. Dr. Silberg's subsequent reports, including one as recently as December 8, 2014, note the victim's continued fear and anxiety associated with the presence of images of her on the Internet. Dr. Silberg concluded by noting the victim's continued suffering based on the continued use of her image by child pornography viewers, traders, and abusers, and by recommending the victim's continued psychological treatment and monitoring. Dr. Stan Smith gathered information on the victim's estimated lost wages and future therapy costs, and a calculation in the reduction of value of life. *See* Exhibit D.

The economic report submitted by the victim estimates that the victim will suffer $2,855.173 in lost wages and employee benefits (*id.* at 11). This estimate starts in the year 2011 (the year of the defendant's most recent possession of the victim's image) and assumes full-time work to age 67, along with other assumptions set forth in the report. *See* Exhibit D at 11 and related tables. The economic report estimates that the average cost of future therapy for the victim, starting in 2009 (the year of the defendant's earliest possession of the victim's image), will total $512,681. *See* Exhibit D at 11 and related table. The economic report estimates an average reduction in the value of life (from 1999 to 2070) of $8,886,300. *See* Exhibit D at 11 and related table. The economic report summarizes the victim's losses as follows: lost wages

7

$2,855.173; cost of future therapy, $512,681; reduction in value of life $8,886,300. *See* Exhibit D at 11.

This evidence is sufficient to show that the defendant's offense proximately caused losses to the victim. As *Paroline* acknowledged, "the victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured." 134 S. Ct. at 1726. Because the defendant's conduct is a proximate cause of additional losses to the victim in the "Misty" series, she is entitled to restitution.

The government requests that, as required by statute, the Court order restitution to the victim in the "Misty" series for all losses proximately caused by the defendant in this case after consideration of the factors set forth in *Paroline* and other relevant considerations. The government has not been informed of any expenses, such as attorneys' or experts' fees, that were incurred by the victim as a result of this particular case. Further, any loss amounts should exclude losses incurred prior to this defendant's possession of these images in 2009, and to the extent practicable, should exclude losses attributable to the original abuse as opposed to the child pornography circulation.

With regard to the number of past defendants found to have contributed to the victim's general losses, the government is aware of approximately 196 cases in which the victim in the "Misty" series has been awarded restitution, including settled-on amounts, as of January 5, 2015.[2] The restitution awards to the victim range from $50 to $3,543,471, with 187 of 197 awards in the range of $50 to $50,000. In this District, restitution has been awarded to the victim in the "Misty" series in one other case: *United States v. John Moreira*, 10-CR-02 (ESH) (Oct. 25,

---

[2] The government received this information from the Child Exploitation and Obscenity Section with the Department of Justice.

2010) ($5,800 awarded). Litigation in a second case, *United States v. Michael Monzel*, 09-CR-243 (GK), is pending. As helpful as these figures might be, they too, have their limitations. Although the Child Exploitation and Obscenity Section (CEOS) of the Department of Justice keeps track of restitution awarded to child pornography victims in cases prosecuted in federal district courts, no one can know whether the restitution will be upheld on appeal, or whether it will even be collectible once the offenders have completed their terms of incarceration.

    C.    **General Losses and Restitution Request on Behalf of the Victims in the "8 Kids" Series.**

One of the victims in the "8 Kids" series, John Doe I, was evaluated by Dr. Mark Whitehill on December 23, 2014. *See* Exhibit G. Dr. Whitehill described the victim's continued distress and isolation by the fact that "others continue to be able to witness his abuse and that of his brother by the presence of online documentation of it." *See* Exhibit G at 6. Another victim, John Doe II, also was evaluated by Dr. Whitehill on October 22, 2013 and November 4, 2013. *See* Exhibit H. Dr. Whitehill described the victim's continued vulnerability based on "the knowledge that others continue to be able to witness his abuse." *See* Exhibit H at 8. The victim impact statements (Exhibit I); Vocational Evaluation and Life Care Planning Report from Carol Gann, dated April 23, 2008 (Exhibit J); and report concerning long-term effects of child sexual abuse and developmental risks from Dr. Kimberly Barrett (Exhibit K) all document the damage and impact to all of the victims in the "8 Kids" series. Finally, Robert Moss's economic loss report documents each of the victim's losses in lifetime earning potential and future medical and rehabilitation costs (Exhibit L).

This evidence is sufficient to show that defendant's offense proximately caused losses to the victims in the "8 Kids" series. The government requests that, as required by statute, the Court order restitution to the victims in the "8 Kids" series for all losses proximately caused by

the defendant in this case after consideration of the factors set forth in *Paroline* and other relevant considerations. The government has not been informed of any expenses, such as attorneys' or experts' fees, that were incurred by the victim as a result of this particular case. Further, any loss amounts should exclude losses incurred prior to this defendant's possession of these images in 2009, and to the extent practicable, should exclude losses attributable to the original abuse as opposed to the child pornography circulation.

With regard to the number of past defendants found to have contributed to the victims' general losses, the government is aware of approximately 66 other cases in which the victims in the "8 Kids" series have been awarded restitution, including settled-on amounts, as of January 5, 2015.[3] The restitution awards to the victims range from $50 to $37,500, with 60 of 66 awards in the range of $50 to $16,000. Other than this case, the government is not aware of any other cases in this District in which restitution was awarded to the victims in the "8 Kids" series. These figures suffer from the same limitations as those for the victim in the "Misty" series.

### D.   General Losses and Restitution Request on Behalf of the Victim in the "Sponge B" Series.

The victim in the "Sponge B" series was evaluated by Dr. David Corwin on June 14, 2013. *See* Exhibit N. Dr. Corwin's report conveys the victim's traumatization and re-victimization based on the presence of these images, constant distress, the perpetual impact of the images as they circulate over the Internet. Dr. Stan Smith gathered information on the victim's estimated lost wages and future therapy costs, and a calculation in the reduction of value of life. *See* Exhibit O.

The economic report submitted by the victim estimates that the victim will suffer $1,854,925 in lost wages and employee benefits (*id.* at 15). This estimate starts in the year 2015

---

[3]   The government also received this information from the Child Exploitation and Obscenity Section with the Department of Justice.

(four years after defendant's most recent possession of the victim's images) and assumes full-time work to age 67, along with other assumptions set forth in the report. *See* Exhibit O at 11 and related tables. The economic report estimates that the average cost of future therapy for the victim, starting in 2014 (three years after defendant's most recent possession of the victim's images), will total $267,038. *See* Exhibit O at 11 and related table. The economic report also estimates an average reduction in the value of life. *See* Exhibit O at 11 and related table.

This evidence is sufficient to show that defendant's offense proximately caused losses to the victim. The government requests that, as required by statute, the Court order restitution to the victim in the "Sponge B" series for all losses proximately caused by the defendant in this case after consideration of the factors set forth in *Paroline* and other relevant considerations. The government has not been informed of any expenses, such as attorneys' or experts' fees, that were incurred by the victim as a result of this particular case. Further, any loss amounts should exclude losses incurred prior to this defendant's possession of these images in 2009, and to the extent practicable, should exclude losses attributable to the original abuse as opposed to the child pornography circulation.

With regard to the number of past defendants found to have contributed to the victim's general losses, the government is aware of approximately 16 cases in which the victim in the "Sponge B" series has been awarded restitution, including settled-on amounts, as of January 5, 2015.[4] The restitution awards to the victim range from $1,000 to $10,000. Again, these figures suffer from the same limitations as those for the previously discussed victims.

---

[4] The government also received this information from the Child Exploitation and Obscenity Section with the Department of Justice.

### E. Additional Factors

The government does not have sufficient, reliable data from which to make reasonable estimates of the likelihood of future defendants and likely total number of possessors. Nor is there a way to estimate the number of individuals around the world who have been or are presently charged with having images of any of these victims, much less any data from which to extrapolate the number of undetected possessors and traders. The government does not have any evidence that the defendant distributed any images of the victims to other individuals or that the defendant was connected in any way to the initial production of the images of the victims. The government has no evidence that the defendant knows the victims, attempted to discover the victims' identities, or attempted to contact the victims. Nor does the government have any evidence that the defendant specifically sought images of the victims, or that the defendant paid for or received anything of value for the victims' images. The government is not aware of any efforts by the defendant to groom other minors for sexual exploitation using images of the victims.

In the end, the defendant possessed over 400 files of child pornography, including files depicting these particular victims. In light of all of these factors, the government requests that the Court order restitution to the victims in amounts that are non-token and non-nominal, in accordance with *Paroline*.

## IV. <u>CONCLUSION</u>

In *Paroline*, the Supreme Court left no doubt that "everyone who reproduces, distributes, or possesses the images of the victim's abuse . . . plays a part in sustaining and aggravating this tragedy" of trafficking in child pornography. 134 S. Ct. at 1726. Furthermore, "there can be no doubt Congress wanted victims to receive restitution for harms like this." *Id*. at 1726. Victims of child pornography should "be compensated by the perpetrators who contributed to their

anguish." *Id*. That compensation should be neither severe nor trivial, but should fit the offense conduct. *Id*.

The dissent in *Paroline* notes that child pornography victims have a "qualitatively different injury" than do victims in most other criminal cases. But because that injury is indivisible, and there is no way to factually prove each defendant's share, the dissent would have ruled that restitution simply cannot be ordered under the statute as written. *Id*. at 1733-34 (Roberts, C.J., dissenting). This position contravenes both Congress' clear intent and the interest of justice.

Ultimately, the majority opinion in *Paroline* provides some guidance, but the facts of each individual case will still be the deciding factor in restitution decisions. For the reasons set forth above, the United States proposes restitution in the instant case in an amount sufficient to cover the harm the defendant caused the victims by obtaining, viewing, and possessing their images. The proposed amount is arguably proportional, neither trivial nor severe, and is reasonably related to helping the victims cope with the emotional repercussions of worldwide dissemination of images of their sexual abuse.

WHEREFORE, for all of the reasons set forth herein, the government requests that the Court order restitution to the victims in the "Misty," "8 Kids and "Sponge B" series.

Respectfully submitted,

VINCENT H. COHEN, JR.
Acting United States Attorney
Bar No. 471489

By: _____/s/_____
DAVID B. KENT, D.C. Bar 482850
(202) 252-7763
david.kent@usdoj.gov
ANDREA L. HERTZFELD, D.C. Bar 494059
(202) 252-7808
andrea.hertzfeld@usdoj.gov
Assistant United States Attorneys
U.S. Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530

_____/s/_____
ALEXANDRA R. GELBER, D.C. Bar 473773
Assistant Deputy Chief
United States Department of Justice
Criminal Division, Child Exploitation and
Obscenity Section
1400 New York Ave, N.W.
Washington, D.C. 20530
(202) 307-1316
alexandra.gelber@usdoj.gov