**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

      Government,                CR No. 12-065

                              Washington, DC
      vs.                     April 15, 2015
                              10:48 a.m.
PAUL D. HITE,

      Defendant.
_____

TRANSCRIPT OF PLEA HEARING
BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:        David B. Kent, Esquire
                              Andrea L. Hertzfeld, Esquire
                              U.S. ATTORNEY'S OFFICE
                              555 Fourth Street, NW
                              Washington, DC 20530
                              (202) 252-7963
                              David.Kent@usdoj.gov

                              Darcy Katzin, Esquire
                              DEPARTMENT OF JUSTICE
                              Child Exploitation & Obscenity
                                Section, Criminal Division
                              1400 New York Avenue,NW
                              Washington, DC 20530
                              (202) 353-3420
                            darcy.katzin@usdoj.gov

For the Defendant:        Barry J. Pollack, Esquire
                          Addy R. Schmitt, Esquire
                          MILLER & CHEVALIER CHARTERED
                          655 Fifteenth St, NW
                          Suite 900
                          Washington, DC 20005-5701
                          (202) 626-5830
                          BPollack@milchev.com


Court Reporter:           Lisa M. Foradori, RPR, FCRR
                          Official Court Reporter
                          U.S. Courthouse, Room 6706
                          333 Constitution Avenue, NW
                          Washington, DC  20001
                          (202) 354-3269


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1                       P R O C E E D I N G S

2               COURTROOM DEPUTY:  Criminal Case 12-065.  The

3     United States versus Dr. Paul David Hite.

4               Counsel, would you please identify yourself for the

5     record.

6               MR. KENT:  David Kent on behalf of the United

7     States, good morning.

8               THE COURT:  Good morning.

9               MS. HERTZFELD:  Good morning, Your Honor, Andrea

10    Hertzfeld on behalf of the United States.

11              MR. POLLACK:  Good morning, Your Honor, Barry

12    Pollack on behalf of the defendant, Dr. Hite.

13              MS. SCHMITT:  Good morning, Your Honor, Addy

14    Schmitt on behalf of Dr. Hite.

15              THE COURT:  All right.  Good morning, all.  Good

16    morning, Dr. Hite.

17              All right.  We're here for a plea.  The first thing

18    we need to do is present him on the information.  So if we

19    could have him come up.

20              Dr. Hite, if you could come up with your counsel.

21              COURTROOM DEPUTY:  May the record reflect that the

22    defendant has received a copy of the information.  Does the

23    defendant waive formal reading of the information?

24              MR. POLLACK:  Yes.

25              COURTROOM DEPUTY:  In Criminal Case 12-065, in

1    which you are charged in Count One with possession of child

2    pornography, and Count Two, arranging for a sexual contact

3    with a real or fictitious child, how does the defendant wish

4    to plead?

5              MR. POLLACK:  The defendant pleads guilty pursuant

6    to the Rule 11(1)(c) -- 11(c)(1)(C) plea.

7              THE COURT:  All right.

8              COURTROOM DEPUTY:  Will you raise your right hand,

9    please?

10   Thereupon,

11                        PAUL D. HITE,

12   the defendant, having been first duly sworn, was examined and

13   testified as follows:

14             THE DEFENDANT:  I do.

15             THE COURT:  Pull the mic so you don't have to keep

16   leaning over.

17             All right.  I'm going to be asking you some

18   questions as part of the plea.  I need to make a finding at

19   the end that you're entering this plea knowingly.  I also need

20   to make a finding that you're doing it voluntarily.  So some

21   of the questions are going to relate to whether you're doing

22   this without any pressures, that this is your own decision.

23   And the rest of it is to make sure what you actually are

24   pleading guilty to in terms of the terms, as well as the

25   consequences of the plea.

1          If you don't understand something I'm asking, stop

2   me and ask.  I'm going to in some instances do a summary of

3   what may be in the plea letter or various other things.  If it

4   sounds different than what you've discussed or you understood,

5   please speak up.  I want to make sure that we have an

6   understanding as to precisely what it is you're agreeing to

7   and what's in the letter.

8          If you want to consult with your lawyers at any

9   time, you can do that as well.  Just let me know, you can step

10  back or talk to them in the back or whatever you want.

11          THE DEFENDANT:  Thank you.

12          THE COURT:  I'm going to go through this slowly and

13  carefully to make sure that you understand everything that's

14  been set out.  One thing I want to make sure is that we put on

15  the record, either in writing or orally, everything as you

16  understand the agreement.  You can't come back in a week or

17  whenever this thing is finalized and say, well, you know, I

18  thought this or that was part of the agreement.  So you need

19  to make sure we put everything on the record in one way or

20  another.  And also you can't, other than the terms of the Rule

21  11(c)(1)(C), you can't change your mind once this thing is

22  completed.  Do you understand?

23          THE DEFENDANT:  Yes, thank you.

24          THE COURT:  Okay.  So you've -- I've had you sworn

25  in so I want to make sure you understand that you're now under

1  oath.  If you don't answer my questions truthfully, you could

2  be prosecuted for perjury or for making a false statement.  Do

3  you understand that?

4             THE DEFENDANT:  Yes.

5             THE COURT:  Okay.  Now, I'm just going to go over

6  the very basics, there's more to the plea based on the letter,

7  but the very basics.  You were originally charged in an

8  indictment, Counts One and Two, attempted coercion, enticement

9  of a minor in violation of various federal statutes, and there

10  was a criminal forfeiture allegation as well.

11             Those are going to be dismissed, and you would be

12  pleading to an information which would have Count One,

13  possession of child pornography, which is in violation of a

14  federal statute.

15             And Count Two, which would be arranging for a

16  sexual contact with a real or fictitious child.  In this case

17  a fictitious child, and that's in violation of a D.C. statute,

18  not a federal statute.

19             Also importantly, this is a Rule 11(c)(1)(C) plea

20  agreement.  So basically you and the Government at this point

21  have agreed to a sentence.  It would be a total of 84 months.

22  Sixty months would be on Count One, the possession of child

23  pornography in terms of 60 months of jail time.  And for Count

24  Two, which is the arranging for the sexual contact with a

25  fictitious child, it would be 24 months in jail.  They would

1   be concurrent, in other words, the terms would run at the same

2   time, ten years of supervised release, and there would be a

3   total fine of $262,000.  On Count One, the fine would be

4   250,000, and on Count Two it would be 12,500.

5            So is that your understanding, at least in terms of

6   the sentencing agreement, that you and the Government have

7   agreed to?

8            THE DEFENDANT:  What's the jail time for that?

9   Okay.  Yes, it is.

10           THE COURT:  All right.  Now, how that works is

11   that --

12           MR. KENT:  Your Honor, sorry to interrupt.

13           THE COURT:  Did I make a mistake?

14           MR. KENT:  The terms of the incarceration are

15   consecutive.

16           THE COURT:  Right.

17           MR. KENT:  The supervised release terms run

18   concurrent to one another.

19           THE COURT:  Okay.  I should make that clear.  I did

20   a total of 84 months, but yes, it is -- the 60 months and the

21   24 months are obviously consecutive.  The concurrent terms of

22   ten years of supervised release so they'll run together.

23   While the jail time will run, you finish one sentence, then

24   there's the other one, they're aggregated.

25           This is an agreement between you and the

1   Government.  And generally what happens is that the Court will

2   go through and I'll accept, if I accept the plea, which is

3   different than the agreement as to the sentencing.  If I

4   accept the plea, then the issue if the Court accepts the plea

5   agreement itself, which is the actual sentence.  So I can

6   accept it, and then that would be your sentence.

7          I could reject it, and the -- you and the

8   Government can then decide whether you want to withdraw from

9   the plea.  If it's not withdrawn, then you would go forward

10  with the sentence with not having a specific agreement as to

11  the sentence.  But those are the way Rule (c)(1(C) [sic]

12  generally operates.  I will say to you that I'm inclined up

13  front, since I've already gone through this case with you

14  before, this is not something new, that I'm inclined to accept

15  it.  But let's get the plea done first, and then we'll discuss

16  the plea agreement.

17          But I mention --

18          MR. POLLACK:  Your Honor.

19          THE COURT:  I'm sorry.

20          MR. POLLACK:  If I might, just one clarification.

21          THE COURT:  Sure.

22          MR. POLLACK:  I think you had indicated that if the

23  Court were for some reason not to accept the plea, then Dr.

24  Hite and the Government could decide whether or not to

25  withdraw the plea.  As it is written, Dr. Hite would have the

1   unilateral ability to withdraw the plea.

2           THE COURT:  Oh, yes, yes.  No, I meant each of you

3   would have the ability to withdraw from the plea, and if

4   neither one of you did, then, you know, you'd proceed like you

5   would in any other sentencing.

6           MR. POLLACK:  Thank you for that clarification.

7           THE COURT:  No problem.  Made it a little too

8   shorthand.

9           You've agreed to remain held without bond, and

10  they've reserved allocution, reserved sentencing

11  recommendations, which involves the plea letter.  There may be

12  an issue ultimately in terms of restitution relating to the

13  victims, but we'll discuss that at a later point.

14          So, is that your understanding of what the basic of

15  the agreement is?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Okay.  So let me ask some personal

18  questions, background questions.  How old are you, sir?

19          THE DEFENDANT:  Sixty.

20          THE COURT:  And what's your date of birth?

21          THE DEFENDANT:  January the 26th, 1955.

22          THE COURT:  All right.  And how far have you gone

23  in school?

24          THE DEFENDANT:  Doctorate.

25          THE COURT:  Okay.  I know some of this information,

1   we've had it before, but this is a record for the plea, so I'm

2   going to be asking these questions even though some of these

3   answers I already know, but it's important as part of the

4   record as to how you handle the questions and the answers.  So

5   the doctorate in what, if you would?

6            THE DEFENDANT:  Doctor of Medicine.

7            THE COURT:  And your practice was in

8   anesthesiology; is that correct?

9            THE DEFENDANT:  Correct.

10           THE COURT:  Okay.  Where were you born?

11           THE DEFENDANT:  I'm sorry?

12           THE COURT:  Where were you born?

13           THE DEFENDANT:  Norfolk, Virginia.

14           THE COURT:  All right.  And have you taken any kind

15  of medication in the last 48 hours?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Okay.  Can you give me generally the

18  type of medication we're talking about?

19           THE DEFENDANT:  I mean, I take high cholesterol

20  medication, anti-reflux medication and an anti-depressant.

21           THE COURT:  Okay.  And in terms of the -- I'm

22  asking these questions in terms of making sure that your mind

23  is clear at this point.

24           THE DEFENDANT:  Sure.

25           THE COURT:  So are you fully engaged in terms of

1  what we're doing today, your mind clear?

2           THE DEFENDANT:  Yes.

3           THE COURT:  And at what time of the day do you take

4  the antidepressant?

5           THE DEFENDANT:  In the morning.

6           THE COURT:  Okay.  And does it have any effect in

7  terms of your, you know, dizziness, you're confused, anything?

8           THE DEFENDANT:  No.

9           THE COURT:  So there's no -- no symptoms associated

10  with it?

11           THE DEFENDANT:  No.

12           THE COURT:  All right.  Have you ever received any

13  treatment for a mental illness or emotional disturbance?

14           The anti-depressant, has that been since you've

15  been locked up or is this something that predated that?

16           THE DEFENDANT:  This is just secondary to this

17  situation.

18           THE COURT:  Sort of a situational depression?

19           THE DEFENDANT:  Yes.

20           THE COURT:  So you haven't had any other treatment,

21  mental health treatment other than the anti-depressant?

22           THE DEFENDANT:  I've seen a psychologist off and on

23  for the past ten years or so.

24           THE COURT:  Okay.  Obviously all of these questions

25  are in the context of competency.  Any issues, counsel?

1          MR. POLLACK:  No, Your Honor.

2          THE COURT:  All right.  You have, along the way you

3    received a copy originally of the indictment which, if the

4    Court accepts the plea, that will be dismissed.  And you

5    should have a copy of the information which sets out the new

6    charges that you're pleading guilty to.

7          Have you had an opportunity to read those charges

8    and discuss those charges with your lawyer?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  And do you have any questions in terms

11   of what was included in the indictment or the information?

12         THE DEFENDANT:  No.

13         THE COURT:  Are you completely satisfied with the

14   services of your attorneys in this case?

15         THE DEFENDANT:  Yes.

16         THE COURT:  And have you had enough time to talk

17   with your attorneys, discuss the case, the plea offer, and

18   whether or not you should accept it or whether you should go

19   forward for the trial, which you already have, in July?

20         THE DEFENDANT:  I have had plenty of time to weigh

21   the options and benefits and risks with both options, yes.

22         THE COURT:  All right.  Let me go through your

23   basic constitutional rights that you're giving up by pleading

24   guilty.  So my initial questions are going to be whether you

25   understand your rights.  You're pleading to a felony

1    information which does have two new charges that were not in

2    the original indictment.  So the case has not been indicted.

3              Do you understand that you have a right to a Grand

4    Jury indictment, in other words, the Government would have to

5    convince 12 Grand Jurors out of at least 16, but not more than

6    23, that there's probable cause that this crime was committed

7    and that you're the person who actually committed these

8    crimes?

9              THE DEFENDANT:  Yes.

10             THE COURT:  And are you willing to give up that

11   right?

12             THE DEFENDANT:  Yes.

13             THE COURT:  And I take it you signed the waiver?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Okay.  Now, let me go through your

16   rights.  You have a right to plead not guilty and have a jury

17   trial in this case, and you actually went through a trial

18   already a couple of years ago.  And so you know we summoned

19   citizens from the District of Columbia, they would be present.

20   You, through counsel, the Government, the Court would be

21   asking them questions in order to select 12 jurors that from

22   the District of Columbia who would be fair and impartial, make

23   a decision based only on what was presented in the courtroom,

24   and they would determine your guilt or innocence based on the

25   evidence presented in the courtroom.  Do you understand that

 1  right?

 2        THE DEFENDANT:  Yes.

 3        THE COURT:  Now, you realize that we do have a

 4  trial date set for July 6th.  There are also pending motions

 5  relating to the experts and the 404(b), which would be the

 6  images that were shown in the first trial.

 7        You're pleading guilty at a point when those

 8  motions will not be resolved.  And are you willing to do that?

 9        THE DEFENDANT:  Yes.

10        THE COURT:  So you're making a decision without

11  knowing how the Court would have resolved those?

12        THE DEFENDANT:  Yes, Your Honor.

13        THE COURT:  Okay.  Do you understand if you had a

14  trial you'd have a right to be represented by a lawyer at that

15  trial?  If you couldn't afford one, one could be appointed.

16  Do you understand?

17        THE DEFENDANT:  Yes.

18        THE COURT:  Do you understand that at a trial you

19  would have a right through your lawyer to confront and

20  cross-examine any witnesses against you?

21        THE DEFENDANT:  Yes.

22        THE COURT:  Do you understand that you would have

23  the right to present your own witnesses, and you would have a

24  right to subpoena them, in other words, to require them to

25  testify in your defense?

1              THE DEFENDANT:  Yes.

2              THE COURT:  Do you understand that if you went

3    forward to a trial you would have the right to testify and

4    present evidence on your own behalf if you wanted to, but that

5    you wouldn't have to testify or present any evidence if you

6    didn't want to.  And that's because you can't be forced to

7    incriminate yourself, that is, to present evidence of your own

8    guilt.  And if you decided to assert your constitutional right

9    and not testify, you could request, and the Court would give,

10   an instruction to the jury that your failure or decision not

11   to testify can't be held against you.  There could be no

12   inference of guilt from that decision.  Do you understand

13   that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you understand that unless and until

16   I accept your guilty plea you are presumed by the law to be

17   innocent because it's the Government's burden to prove your

18   guilt beyond a reasonable doubt, and until it does, you cannot

19   be convicted at trial?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Do you understand that if you went

22   forward to trial and were convicted, you would have a right to

23   appeal your conviction to the Court of Appeals and have a

24   lawyer help you prepare your appeal, and again, one could be

25   appointed if you could not afford one.

1          THE DEFENDANT:  Yes.

2          THE COURT:  Now, do you understand that by pleading

3    guilty you're giving up all your rights to appeal except, and

4    let me go through these.  My understanding is that you are

5    being tried in D.C. and you're waiving venue, which usually

6    relates to where the case can be tried.  It's not a

7    jurisdictional issue, but it is where you could be tried, and

8    you've agreed that you could be tried or at least in this

9    instance except the plea in D.C. and not elsewhere, such as

10   Virginia.

11         THE DEFENDANT:  Yes.

12         THE COURT:  All right.  In terms of your --

13   ordinarily you have both a constitutional right to appeal and

14   you retain that right.  There are also statutory rights to

15   appeal.  And my understanding is that you're willing to forego

16   that right.

17         If you have the plea letter in front of him, let me

18   go over it.  I don't think it's -- and it's paragraph D.  It's

19   page 11, paragraph D.  Okay.

20         So you can appeal your conviction if you believe

21   that your guilty plea was somehow unlawful or involuntary.

22   Whether some other fundamental defect in the proceedings that

23   was not provided to you.  That's not in the letter.  That's my

24   telling you that's your constitutional right, which you

25   retain.  You're not giving that up.

```
 1              You are giving up your statutory right, which is
 2    what's in the plea letter.  And that's federal law, and they
 3    specify the federal statute, gives you a right to appeal the
 4    sentence in certain circumstances.  And you're giving up that
 5    right to appeal, the statutory right to appeal, including term
 6    of imprisonment, fine, forfeiture, conditions of supervised
 7    release that were set out -- that are set out in this
 8    agreement.  The authority of the Court to set additional
 9    conditions of release, and the manner in which the sentence
10    was determined.
11              Now, there's some exceptions except if I sentence
12    you above the statutory maximum, that's an illegal sentence,
13    or the guideline range determined by the Court, or you claim
14    that you received ineffective assistance of counsel in which
15    case you would have the right to appeal the illegal sentence
16    or the above guideline sentence or raise an appeal on
17    ineffective assistance of counsel.
18              Now, the one question that I had was that the --
19    one of the sentences, I believe, is above the guideline.  Am I
20    correct?
21          (No response.)
22              THE COURT:  I think it's -- isn't it -- one is --
23    it's below, so below, okay.  So we don't have to worry about
24    it, it's below.  I knew it wasn't in the guideline range.
25    Okay.  So as a practical matter, assuming I accept this,
```

1    you're not going to have a right to statutorily appeal this,

2    but if for some reason I didn't accept it and we went forward

3    to sentencing, and unless I gave you an illegal sentence,

4    which would be above the maximum or I went above the advisory

5    sentencing guidelines, in which case you could appeal,

6    otherwise, you're giving up your right to appeal under the

7    statute, not your Constitution.  Is that your understanding

8    and agreement?

9              THE DEFENDANT:  Yes.

10             THE COURT:  And you are also reserving specifically

11   the last sentence, the right to appeal any condition of

12   supervised release that's not set out in this agreement.  The

13   agreement does set out certain conditions, both sides have

14   agreed to, and you can appeal that, and you could also appeal

15   any restitution that the Court orders, restitution to any

16   potential victims that I would order.  So those you would

17   retain your right to appeal.  Is that your understanding?

18             THE DEFENDANT:  Correct.  Yes.

19             THE COURT:  Okay.  With few exceptions, any notice

20   of appeal has to be filed within 14 days of judgment being

21   entered.  If you're unable to pay the full cost of an appeal

22   you could appeal -- ask to file it without cost to you.  Do

23   you understand all of that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Now, do you understand that if you

1    plead guilty and I accept your guilty plea, you'll be giving

2    up all of the rights I've just explained to you because there

3    isn't going to be any trial.  We've set a trial, motion

4    schedule, et cetera.  Or any appeal except on the limited

5    circumstances I have set out.

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you want to plead guilty in this

8    case, give up your rights to a trial, which we've already

9    said, and your right to an appeal except for the areas that

10   you have still preserved your rights, and all the other rights

11   that I've discussed with you?

12             THE DEFENDANT:  Yes.

13             THE COURT:  All right.  At this point we're going

14   to go over the statement of offense.  The Government will

15   state the elements of the two offenses, and they will link it

16   to the elements of the offense because at the end the Court

17   needs to make a finding that based on the proffer from the

18   Government that they have evidence beyond a reasonable doubt

19   that meets the elements of each of the offenses.

20             I want -- you can sit down and listen to this.  I

21   will then ask you, you want to listen carefully, what --

22   whether you agree with what they've said, and I'll go through

23   the statement of offense to make sure there is agreement and

24   this is something that you are aware of and not just

25   Government -- the evidence has.  Sometimes the Government has

1    evidence that the defendants are not aware of at the time.  I

2    don't remember whether there's anything in here, but I'll go

3    through all of this.  And again, based on your admissions, tie

4    it up to the elements of each of the offenses.  I need to do

5    that in order to actually accept it.  All right?

6                 THE DEFENDANT:  Thank you.

7                 THE COURT:  You may want to go ahead and sit down.

8    And my assumption is that they will work through the proffers

9    that they have been provided, and then at the end if you would

10   go through the elements.

11                I did look up the definition of child pornography

12   in order to make sure that we met that.  I don't know whether

13   you have that as well.

14                MR. KENT:  I don't have it set forth in front of

15   me.

16                THE COURT:  Okay.  Child pornography means any

17   visual depiction, can be photograph, film, video, picture,

18   computer, computer-generated images.  Whether made or produced

19   by electronic, mechanical or other means, of sexual explicit

20   conduct where (a), the production of such visual depiction

21   involves the use of a minor engaging in sexually explicit

22   conduct; (b), such visual depiction is a digital image,

23   computer image, computer generated images or as

24   indistinguishable from that of a minor engaging in sexually

25   explicit conduct or such -- (c), visual depiction has been

1    created, adapted or modified to appear that an identifiable

2    minor is engaging in sexually explicit conduct.  So I don't

3    know whether you had a particular one in mind.

4              MR. KENT:  No, Your Honor, not a particular image,

5    Your Honor.

6              THE COURT:  Okay.  So they fit A, B and C.

7              MR. KENT:  I think the images in this case would

8    fit within all three of those.

9              THE COURT:  Okay.  I take it they're not

10   computer-generated.

11             MR. KENT:  They are not computer-generated.

12             THE COURT:  Okay.

13             MR. POLLOCK:  As far as we've been able to

14   determine.

15             THE COURT:  Okay.  Then let's proceed.

16             MR. KENT:  With respect to the first offense,

17   possession of child pornography in violation of 18 U.S. Code

18   Section 2252 large A, small (a)(5)(b), each of these elements

19   the Government would have to prove beyond a reasonable doubt

20   in order to sustain a conviction.

21             First, that the defendant knowingly possessed any

22   matter that contained an image of child pornography as defined

23   in Title 18, United States Code Section 2256(8).

24             Second, that such child pornography had been

25   transported in interstate or foreign commence by any means,

1    including by computer, or that such child pornography had been

2    produced using materials that had mailed or shipped or

3    transported in interstate or foreign commerce by any means,

4    including by computer.

5            THE COURT:  So is it the first one or the second

6    one?  It's really the first, isn't it?

7            MR. KENT:  That such child -- well, the child

8    pornography in this case had been transported in interstate or

9    foreign commence by means specifically by the Internet, but it

10   also had been produced using materials that had been mailed or

11   shipped or transported in interstate or foreign commerce,

12   which would have been certainly any -- any camera or video

13   recording device.  So technically the images in this case

14   would fit under both the first and the second.

15           THE COURT:  Okay, all right.

16           MR. KENT:  And the third element the Government

17   would have to prove is that the defendant knew that such items

18   contained child pornography.

19           With respect to the second offense of arranging for

20   sexual contact with a real or fictitious child in violation of

21   22 D.C. Code Section 3010.02, each of which the Government

22   must prove beyond a reasonable doubt:

23           First, that the defendant made an arrangement with

24   an adult.

25           Second, when the arrangement was made, the adult

1    was a law enforcement officer.

2              Third, the arrangement was for the adult and/or the

3    defendant to engage in a sexual act or sexual contact with a

4    child.

5              Fourth, that the child was represented to be less

6    than 16 years of age.

7              And fifth, that the defendant and/or the adult was

8    more than four years older than the child was represented to

9    be.  It's certainly not a defense to this charge that the

10   child was fictitious and that the adult never intended to

11   provide a child to the defendant for a sexual act or a sexual

12   contact.

13             THE COURT:  All right.

14             MR. KENT:  With respect to the proffer and how the

15   proffer meets these elements, would Your Honor like me -- for

16   me to read the proffer or just --

17             THE COURT:  I would accept the proffer, and then at

18   the end in summary form just put the evidence connected to the

19   elements.

20             MR. KENT:  Okay.  Had this matter gone to trial the

21   Government's evidence would have shown beyond a reasonable

22   doubt the following:

23             On Wednesday, February 1st, 2012, Metropolitan

24   Police Department Detective Timothy Palchak was acting in an

25   undercover capacity as part of a multi-jurisdictional MPD/FBI

1    Child Exploitation Task Force.  Detective Palchak was

2    operating out of the satellite office in Washington, D.C.

3    monitoring individuals in a chat room on a social networking

4    site.  This chat room is frequented by individuals who have a

5    sexual interest in prepubescent children.

6              On that date, Detective Palchak received a private

7    instant message from an individual using the screen name Vet

8    Guy ZO6, later identified as Defendant Paul David Hite.

9              Defendant Hite and Detective Palchak discussed a

10   mutual interest in sexual activity with minors.  Detective

11   Palchak informed Defendant Hite that he had limited sexual

12   experience with his three-year-old nephew and that he was

13   fully active sexually with his girlfriend's 12-year-old

14   daughter.

15             Defendant Hite and Detective Palchak exchanged

16   Yahoo instant messenger screen names.  Later on February 1st,

17   2012, Defendant Hite and Detective Palchak continued

18   communicating via Yahoo instant messenger after Defendant Hite

19   reinitiated the conversation with Detective Palchak using the

20   Yahoo display name Black Corvette.

21             During the course of the private Yahoo instant

22   messenger chat, Defendant Hite and Detective Palchak discussed

23   engaging in sexual activity with Detective Palchak's

24   girlfriend's 12-year-old daughter in scheduling a potential

25   meeting for that purpose.

1           Detective Palchak sent Defendant Hite a photo of

2     the 12-year-old girl via Yahoo instant messenger.  Defendant

3     Hite agreed to allow Detective Palchak to show the 12-year-old

4     girl a photo of Defendant Hite, and Defendant Hite later

5     asked, "Let me know what she thinks."

6           On February 3rd, 2012, during a Yahoo instant

7     messenger communication, Defendant Hite and Detective Palchak

8     again discussed engaging in sexual activity with Detective

9     Palchak's girlfriend's 12-year-old daughter and scheduling a

10    potential meeting for that purpose.

11          Defendant Hite and Detective Palchak also discussed

12    engaging in sexual activity with Detective Palchak's

13    three-year-old nephew.  Defendant Hite provided his phone

14    number to Detective Palchak.

15          Between February 6th, 2012 and February 14th, 2012,

16    during subsequent Yahoo instant messenger communications

17    Defendant Hite and Detective Palchak discussed engaging in

18    sexual activity with the three-year-old nephew and meeting for

19    that purpose.  These discussions included Defendant Hite and

20    Detective Palchak meeting on a Friday evening and then

21    engaging in sexual activity with the three-year-old nephew the

22    following day.

23          These discussions also included Defendant Hite's

24    suggestion that they use a jar of peanut putter and grape

25    jelly premixed during sexual activity with the three-year-old

1   nephew.

2           On February 14th, 2012, Defendant Hite and

3   Detective Palchak spoke by telephone concerning plans to meet

4   later that week in the District of Columbia.

5           On February 16th, 2012, Defendant Hite and

6   Detective Palchak continued to communicate via Yahoo instant

7   messenger.  They again discussed engaging in sexual activity

8   with the three-year-old nephew and meeting the following night

9   in the District of Columbia.

10          Defendant Hite and Detective Palchak also agreed to

11  communicate the following day, Friday, February 17th, 2012,

12  prior to the meeting in the evening.

13          On Friday, February 17th, 2012, Defendant Hite and

14  Detective Palchak spoke by telephone.  Defendant Hite

15  expressed reluctance to travel to the District of Columbia as

16  previously discussed and stated, "I just need a little bit

17  more confirmation."

18          Detective Palchak indicated, "I would be willing to

19  do a webcam with the three-year-old" -- a reference to the

20  three-year-old nephew, and further indicated he would suck the

21  three-year-old's penis in front of you on cam, Defendant Hite

22  responded, "Okay, fabulous."  Defendant Hite further stated,

23  "I was hoping that you would suggest something like this."

24          Defendant Hite and Detective Palchak agreed that

25  the webcam session with the three-year-old nephew would take

1   place in the morning after which Defendant Hite would travel

2   to the District of Columbia to meet Detective Palchak and the

3   three-year-old nephew.

4           Defendant Hite also discussed the weather forecast

5   and which vehicle would be most suitable for Defendant Hite's

6   visit to the District of Columbia.  Defendant Hite was

7   arrested that evening near his home in Richmond, Virginia.

8           During searches of Defendant Hite's home in

9   Richmond, Virginia, law enforcement recovered a sealed and

10  unopened jar of Smucker's Goober Grape Peanut Butter and Grape

11  Jelly Stripes matching the description of the peanut butter

12  and grape jelly premixed that Defendant Hite mentioned during

13  his communications with Detective Palchak.

14          The jar was located next to a pair of sunglasses on

15  top of the washing machine or dryer in the laundry room

16  directly next to the door of the garage.

17          Law enforcement also recovered an HP laptop

18  computer Model DV7 dash 3065DX with the serial number

19  CNF93647RQ from Defendant Hite's home.  Forensic analysis of

20  the Defendant Hite's HP laptop computer with that model number

21  and serial number determined that Defendant Hite had used the

22  computer to communicate with Detective Palchak via Yahoo

23  instant messenger.

24          Forensic analysis of Defendant Hite's laptop

25  computer further determined that between at least October 2009

1    and March 2011, approximately 409 files of child pornography

2    were located on an external drive that had that been connected

3    to the computer.  Defendant Hite knew that the external drive

4    contained child pornography.  These files included depictions

5    of prepubescent boys and prepubescent girls engaging in

6    sexually explicit conduct and sexual acts with themselves,

7    each other and adult men.

8         Additionally these files were produced using

9    materials that had been mailed or shipped or transported in

10   interstate or foreign commerce.

11        With respect to the elements of the charged

12   offenses, starting first with the first offense charged in the

13   superseding information.  With respect to the possession of

14   child pornography, with respect to the first element that the

15   defendant knowingly possessed any matter that contained an

16   image of child pornography, those images, as described in the

17   proffer, met the definition of child pornography in that they

18   were depictions of prepubescent boys and girls engaging in

19   sexually explicit conduct and sexual acts with themselves,

20   each other, and adult men.

21        The defendant acknowledged that these images

22   were contained on an external device which were

23   connected to his computer at points between at least

24   October 2009 and March 2011.  And that the defendant

25   knew that this external storage device contained

1    child pornography.

2             With respect to the second element that such

3    pornography had been transported in interstate or foreign

4    commerce by any means, including by computer, or that such

5    child pornography had been produced using materials that had

6    been mailed or shipped or transported in interstate or foreign

7    commerce by any means, including by computer, the defendant

8    acknowledged in the proffer that the files of child

9    pornography were produced using materials that had been

10   shipped, mailed -- mailed, shipped or transported in

11   interstate or foreign commerce.

12            In addition, although not explicitly laid out in

13   the proffer, these materials were contained on an external

14   storage device which arguably would meet the first prong of

15   the definition -- first prong of the second element that such

16   child pornography had been transported in interstate or

17   foreign commerce by any means, including by computer.

18            Third, that with respect to the third element, that

19   the defendant knew that such items contained child

20   pornography, the defendant acknowledged in the proffer that he

21   knew that the external storage device contained child

22   pornography as described.

23            With respect to the second charge in the

24   superseding information, arranging for a sexual contact with a

25   real or fictitious child.

1          With respect to the first element, the defendant

2     acknowledged that he made, had communications between

3     February 1st, 2012 and February 17th of 2012 with an adult, in

4     this instance Metropolitan Police Department Detective Timothy

5     Palchak, and that there -- arrangements were made and

6     discussions, they had discussions concerning sexual activity

7     with a 12-year-old girl and a three-year-old boy.

8          With respect to the second element, when the

9     arrangement was made, the adult, in this case Detective

10    Palchak, was a law enforcement officer.  In this instance the

11    proffer indicates that Detective Palchak was working in an

12    undercover capacity as a law enforcement officer in the

13    District of Columbia.

14         With respect to the third element, the arrangement

15    was for the adult and/or the defendant to engage in a sexual

16    act or sexual contact with the child.  The discussions with

17    respect to the three-year-old boy centered around engaging in

18    sexual conduct with respect to that three-year-old boy.

19         In addition, on February 17th of 2012, there was an

20    arrangement made for Detective Palchak to engage in a sexual

21    act with that child via webcam, an arrangement to which the

22    defendant responded that it would be, "Okay, fabulous."

23         Fourth, with respect to the fourth element, the

24    child was represented to be at less than 16 years of age.  In

25    this instance, the three-year-old boy -- the boy at issue was

1   three years old.  The girl at issue was represented to be 11

2   years old.

3               THE COURT:  Eleven or 12?

4               MR. KENT:  I'm sorry, 12 years old.  The girl in

5   this case was represented to be 12 years old.

6               And with respect to the fifth element, the

7   defendant and/or the adult was more than four years older than

8   the child represented to be.  Certainly, as part of this

9   proffer the defendant acknowledges today that he was -- that

10  he is 60 years old, and these offenses occurred three years

11  ago at a time when the defendant would have been 57 years old.

12  So certainly that -- the fifth element with respect to this

13  offense is met as well.

14              THE COURT:  All right.  Okay.

15              Dr. Hite, if you'd come back up.

16              It will help if you have the proffer in front of

17  you.  It just makes it easier for me go through it.

18              The first part, obviously you were not aware that

19  Detective Palchak was the person that you were communicating,

20  you didn't know it at the time.  But as I understand it,

21  you're agreeing that you did get -- that you sent us a private

22  message using the screen name Vet Guy ZO6?

23              THE DEFENDANT:  Correct.

24              THE COURT:  Okay.  And I take it that this was a

25  chat room on a social networking site?

1              THE DEFENDANT:  Yes.

2              THE COURT:  Okay.  And is this chat room connected

3    to people who have sexual interest in prepubescent children or

4    you didn't know that?

5              THE DEFENDANT:  It's an adult gay website.  I don't

6    think it's universally known for anything of that nature.

7              THE COURT:  Okay.  Then at the bottom and moving to

8    the top, I understand that you and Detective Palchak, you

9    didn't realize he was a detective, but I'm going to use that

10   name.  Discussed a mutual interest in having sexual activity

11   with minors in terms of your communications back and forth; is

12   that correct?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  And Detective Palchak indicated to you

15   that he had access to a three-year-old nephew that he had --

16   with limited sexual experience, and he also was fully active

17   with his girlfriend's 12-year-old daughter.  And is that

18   correct?

19             THE DEFENDANT:  Yes.

20             THE COURT:  And you exchanged Yahoo instant

21   messenger screen names in order to continue the conversation;

22   is that correct?

23             THE DEFENDANT:  Yes.

24             THE COURT:  All right.  So later on February 1st,

25   2012, and it was -- the original contact was on that date.

1    You continued communicating through Yahoo instant messenger.

2    After -- is it correct you reinitiated the conversation using

3    the Yahoo display name Black Corvette?

4                THE DEFENDANT:  Correct.

5                THE COURT:  Okay.  And in regards to this

6    continuing chat, you discussed engaging in sexual activity

7    with the 12-year-old daughter of supposedly Detective

8    Palchak's girlfriend and scheduling a potential meeting for

9    that purpose; is that correct?

10               THE DEFENDANT:  Yes.

11               THE COURT:  And the detective sent you a photo of

12   the 12-year-old girl by Yahoo instant messenger; is that

13   right?

14               THE DEFENDANT:  Yes.

15               THE COURT:  And you agreed to allow the detective

16   to show the 12-year-old girl a photo of yourself, and you

17   wanted to know what she thought of your photo; is that

18   correct?

19               THE DEFENDANT:  Yes.

20               THE COURT:  And then on February 3rd, two days

21   later, again during a Yahoo instant messenger communication

22   you and the detective began discussing engaging in sexual

23   activity again with the 12-year-old and setting up a meeting.

24   And you also discussed engaging in sexual activity with the

25   detective's three-year-old nephew; is that correct?

1            THE DEFENDANT:  Yes.

2            THE COURT:  And you gave detective -- the detective

3    your phone number to contact you?

4            THE DEFENDANT:  Correct.

5            THE COURT:  So then between February 6th of 2012

6    and February 14th, continuing with these Yahoo instant

7    messenger communications you or the detective discussed

8    engaging in the sexual activity with the three-year-old and

9    meeting for that purpose; is that correct?

10            THE DEFENDANT:  Yes.

11            THE COURT:  And part of that was to set up a

12    meeting on a Friday evening, and you and the detective would

13    meet, and then there would be sexual activity with the

14    three-year-old the following day; is that correct?

15            THE DEFENDANT:  Yes.

16            THE COURT:  And this discussion included your

17    suggestion that a jar of peanut better and grape jelly be

18    premixed during the sexual activity with the three-year-old

19    nephew; is that correct?

20            THE DEFENDANT:  Correct.

21            THE COURT:  All right.  And about February 14th,

22    you and the detective again spoke by phone about the plans to

23    meet later in the District of Columbia; is that correct?

24            THE DEFENDANT:  Yes.

25            THE COURT:  And then on February 16th, you and the

 1   detective continued to have these communications through Yahoo

 2   instant messenger, again talking about having sex with the

 3   three-year-old nephew, meeting the following night in D.C.,

 4   and you agreed to communicate again on Friday prior to the

 5   meeting, which would have been that evening; is that correct?

 6             THE DEFENDANT:  Yes.

 7             THE COURT:  Okay.  And on that Friday you and the

 8   detective spoke by phone, and you expressed reluctance to

 9   travel to D.C. as you had previously been discussing.  You

10   wanted confirmation that this was legitimate, and that this

11   was not, in essence, a police officer; is that correct?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Okay.  And so the detective at that

14   point said that he would be willing to do a webcam with the

15   three-year-old nephew, he would engage in sexual activity in

16   front of you on the webcam, and you agreed that that would

17   satisfy you; is that correct?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Okay.  And you went on to say that you

20   would hope that he would suggest something that would satisfy

21   your concerns about who this person was on the other end?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Okay.  And you and the detective agreed

24   that the webcam session with the three-year-old would take

25   place in the morning after which you then, instead of the

1    night before, after which you would travel to the District to

2    meet the detective and the three-year-old nephew; is that

3    correct?

4                THE DEFENDANT:  Yes.

5                THE COURT:  Okay.  And you discussed the weather

6    forecast and whether -- what vehicle you should use in order

7    to come into the District of Columbia; is that correct?

8                THE DEFENDANT:  Yes.

9                THE COURT:  And you were arrested that evening in

10   Richmond; is that correct?

11               THE DEFENDANT:  Correct.

12               THE COURT:  Okay.  So in terms of the elements,

13   I'll do this separately.  The defendant made arrangements with

14   an adult, you made an arrangement with Detective Palchak,

15   starting on February 1st through the 17th, to make

16   arrangements to engage in sexual activity.  Initially the

17   discussions were about the 12-year-old girl, but ultimately

18   moved to the three-year-old nephew, which is the child that

19   you would actually -- were agreeing to meet and have the

20   sexual activity with; is that correct?

21               THE DEFENDANT:  Correct.

22               THE COURT:  And the adult, as you now know, was a

23   law enforcement officer, Detective Palchak.  The arrangement

24   was for the detective and you to engage in a sexual act or

25   sexual contact with a child, and this -- the detective, you

 1   agreed with the webcam with the three-year-old, and then when

 2   you would -- would arrive, if you were satisfied, you would

 3   arrive.  There would be sexual contact with the three-year-old

 4   boy when you and the detective met; is that correct?

 5              THE DEFENDANT:  Yes.

 6              THE COURT:  And the two children at issue in the

 7   discussions, the three-year-old and the 12-year-old, were

 8   clearly less than 16 years of age, and you're obviously more

 9   than four years older, even at the time, which would have been

10   57; correct?

11              THE DEFENDANT:  Correct.

12              THE COURT:  And you understand that a defense to

13   this charge, that the child was fictitious, which the child

14   was, and that the adult never intended to provide the child to

15   you for the sexual act is not a defense in this particular

16   case?

17              THE DEFENDANT:  Yes.

18              THE COURT:  Now, were there other defenses or other

19   things that were going to be raised that I should talk to

20   Dr. Hite about that he's waiving that we should put on the

21   record specifically?  I realize you're giving up your right to

22   have these motions and the experts that would be testifying,

23   the computer acts of potentially and Dr. Berlin, but is there

24   anything else?

25              MR. POLLACK:  No, Your Honor.

1           THE COURT:  Okay.  And so you are entering this

2    plea, agreeing that you're not going to have -- Detective

3    [sic] Berlin would not be testifying if you had gone to trial

4    on the original charges.  Obviously his testimony would have

5    less of an issue here since the child can be fictitious and

6    there doesn't have to be actually an intention to carry it

7    out.  So Dr. Berlin wouldn't be helpful with this charge, but

8    he would have been with your original charge.  Does that make

9    sense?

10          The original charge, as I understand it, he

11   discussed it as a fantasy, and I think here the defense is

12   that the child was, you know, was fictitious and that the

13   adult never planned on having you actually engage in anything,

14   so Dr. Berlin's testimony would probably be less relevant.

15          MR. POLLACK:  Your Honor, if Dr. Hite were to

16   proceed to trial on this charge --

17          THE COURT:  The new one.

18          MR. POLLACK:  -- his intent, that is, Dr. Hite's

19   intent would be at issue, and so Dr. Berlin's testimony --

20          THE COURT:  Would still be --

21          MR. POLLACK:  -- would still be relevant, but Dr.

22   Hite understands that by pleading guilty to this offense he is

23   foregoing the ability to call Dr. Berlin in his defense.

24          THE COURT:  Okay.  Is that correct?

25          THE DEFENDANT:  Correct.

1          THE COURT:  Okay.  And there isn't anything else we

2    need to talk about?

3          MR. POLLACK:  No, I don't believe so, Your Honor.

4          THE COURT:  Okay.  I find that the Government, both

5    the Government's proffer and Dr. Hite's admissions meet the

6    elements of the offense of Count Two, which is arranging for a

7    sexual contact with a, in this case, a fictitious child.

8          Moving on then to the other.  You were arrested,

9    and then there were searches of your home in Richmond,

10   Virginia, and they recovered the sealed and unopened Smucker's

11   grape, peanut butter and jelly; is that correct?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Which matched the description you had

14   talked about?

15         THE DEFENDANT:  Correct.

16         THE COURT:  Okay.  And it was near sun glasses on

17   top of a washing machine near the door to the garage where you

18   would have had to have gone out; is that correct?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Okay.  And they also recovered an HP

21   laptop computer from your home; is that correct?

22         THE DEFENDANT:  Yes.

23         THE COURT:  I assume the model is accurate, I'm not

24   going to go through it.  Okay.

25         And that you're agreeing they did a forensic

1   analysis of the computer, he found that you'd used the

2   computer to communicate with Detective Palchak via the Yahoo

3   instant messenger, and I take it that computer was used for

4   that; is that correct?

5              THE DEFENDANT:  Yes, it was.

6              THE COURT:  And also determined that between at

7   least October 2009 and March 2011, there were approximately

8   409 files of child pornography located on an external storage

9   drive that had been connected to the computer; is that

10  correct?

11             THE DEFENDANT:  Yes.

12             THE COURT:  And --

13             MR. POLLACK:  Your Honor, I'm not sure that it's

14  terribly relevant, and I may be wrong in my computer

15  knowledge.  I think it would be 409 images as opposed to 409

16  files.

17             THE COURT:  Okay.  Was it images?  It does make a

18  difference because files could have more than one image.  Is

19  it images or files, do you know?

20             MR. KENT:  It's -- I mean, it's --

21             THE COURT:  It's a combination because I think some

22  images and some videos or not?

23             MR. KENT:  We were unable to determine whether the

24  thumbnails were actually videos as opposed to images as

25  photos, so that's why we left it -- that's why it reads as

1    files, but we're not -- we're not suggesting that --

2         THE COURT:  All of it had -- that all of them had

3    files with multiple content.

4         MR. KENT:  That's correct.

5         THE COURT:  Some were images and evidently some may

6    or may not have had more than one image.

7         MR. POLLACK:  And what the Government's evidence is

8    is that they have 409 images, and that they cannot prove that

9    any of those images were part of any larger files.  So my

10   understanding is what Dr. Hite is agreeing to here is that the

11   Government can prove beyond a reasonable doubt that he

12   possessed 409 images.

13        THE COURT:  Is that your understanding?

14        THE DEFENDANT:  Four hundred and nine images, yes.

15        THE COURT:  Okay.  And is it true that you knew

16   that the external storage drive contained child pornography,

17   and child pornography is the, in this case it would have been

18   prepubescent, which is 12 and under, children engaging in

19   sexually explicit conduct either with themselves or adults; is

20   that correct?

21        THE DEFENDANT:  Yes.

22        THE COURT:  And you knew that that external storage

23   drive contained that -- those kind of images?

24        THE DEFENDANT:  Yes.

25        THE COURT:  Okay.  And you're agreeing that the

1    files included depictions of prepubescent boys and

2    prepubescent girls, which is children under -- 12 and under,

3    engaging in sexually explicit conduct, sexual acts with

4    themselves, each other, and adult men; is that correct?

5              THE DEFENDANT:  Yes.

6              THE COURT:  And you're agreeing that these images

7    or images on these files were produced using materials that

8    had been mailed or shipped or transported in interstate or

9    foreign commerce; in other words, they had gone over state

10   lines.

11             MR. POLLACK:  Dr. Hite is not contesting that the

12   Government can prove that.

13             THE COURT:  Okay.

14             MR. POLLOCK:  I don't think he has personal

15   knowledge, but he concedes that the Government would be able

16   to prove that.

17             THE COURT:  All right.  Okay.  Then elements of

18   that is the defendant knowingly possessed, and the possessed

19   is that you had, you know, actual control over it.  Knowingly

20   means that you would have known that these -- about -- that

21   these images contained images of child pornography, had sexual

22   explicit conduct involving children; is that correct?

23             THE DEFENDANT:  Yes.

24             THE COURT:  And transported in interstate commerce

25   means that they went over state lines, either by the computer

1   or the external device contained it, which could have been by

2   the computer or could have been, frankly, shipped in other

3   ways, but would have gone over state lines.  And that you knew

4   that this -- that these items, these images constituted child

5   pornography; is that correct?

6           THE DEFENDANT:  Yes.

7           THE COURT:  All right.  Then I'll find that the

8   Government has met the elements of the offense of possession

9   of child pornography, based on the proffer, beyond a

10  reasonable doubt, and the defendant has admitted to the

11  elements of the offense for that conduct as well.

12          All right.  Then let me get back to -- if you have

13  the letter in front of you, the plea letter.

14          MR. POLLACK:  Yes, Your Honor.

15          THE COURT:  We'll go over that.  I'm going to skip

16  around some with this, and I may discuss it in slightly

17  different ways, particularly the sentencing issues.  I find

18  it's easier to do them all in one place.  But have you read

19  this over carefully?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And how did you go about it, did you

22  read it yourself, did you have discussions with your lawyer, I

23  mean, what was sort of the process just to go through it?

24          THE DEFENDANT:  Basically, I went over it

25  line-by-line with my legal counsel.

1              THE COURT:  Okay.  All right.  Do you have any

2      questions at this point?

3              THE DEFENDANT:  No, Your Honor.

4              THE COURT:  All right.  I'm going to start with the

5      statutory penalties because the Court cannot go any -- cannot

6      sentence you to more than the maximum statute.  So I'm going

7      to go through them, you have them in different places in the

8      letter, but I'll go through them.

9              Count One, which is the child -- possession of

10     child pornography is a federal offense.  And the maximum,

11     statutory maximum is ten years in jail, maximum fine of

12     $250,000.  Supervised release would be five years to life.

13             Let me explain that if there is a violation of your

14     supervised release, and supervised release is you do your jail

15     time and then you're put in the community and you're

16     supervised by Probation during this period of time.  And there

17     are certain conditions, and you enumerated some that you

18     agreed to already.  But they also include not engaging in any

19     new legal conduct, reporting, doing various things that they

20     require of you.

21             And if you violate those, then depending on whether

22     it's a new criminal offense or whether it's a violation of the

23     actual conditions, then if the Court found that you had

24     violated, the Court would impose a new sentence.  And the key

25     part to this is you would not get credit for the period of

1  time you had already served.  So a new sentence is

2  constituted.

3        Now, the new sentence and the old one cannot be

4  more than the statutory maximum, and the -- both the advisory

5  sentencing guidelines and the statute actually set out what

6  the range is that the Court can sentence you to.  But the key

7  part is you're not going to get credit for any time that you

8  already served.  Do you understand that?  In terms of

9  supervised release.

10        MR. POLLOCK:  If there were a violation --

11        THE COURT:  A violation, right.

12        MR. POLLOCK:  -- of the supervised release, and so

13  you got a new term imposed for that violation, you would serve

14  that new term, you wouldn't get credit for what you had

15  already served for the new violation.

16        THE DEFENDANT:  This is just supervised release.

17        THE COURT:  Yeah, we're only talking about

18  supervised released.

19        MR. POLLACK:  Only if the Court finds that you

20  committed a violation during the terms of incarceration.

21        THE DEFENDANT:  Okay.  Yes.

22        THE COURT:  And it depends on whether it's a new

23  criminal offense or whether it's the violation of the

24  conditions themselves.  There are different penalties that the

25  Court looks at.  The key to your part is you would not get

1    credit for the time you've already served.  It's a new

2    sentence, and it has limitations, there are parameters that

3    are set out, both in the advisory sentencing guidelines, as

4    well as by statute.  But again, it also cannot totally be

5    beyond what your original sentence was.

6                    THE DEFENDANT:  Yes.

7                    THE COURT:  Okay.  Then Count Two is a D.C.

8    offense, and this is arranging sexual contact, in this case,

9    with a fictitious child.  The statutory maximum is five years

10   in jail.  The statutory maximum fine is 12,500.  They also

11   have a term of supervised release, and it's no more than ten

12   years.  There's a special assessment, which the Court cannot

13   waive, that you need to pay for the federal offense, and there

14   is a special assessment for the D.C. offense, which ranges

15   from a hundred dollars to 5,000, which goes into the victims

16   of crime fund, which is a little different than the federal

17   offense.

18                    So, do you understand the statutory penalties for

19   both of these charges?

20                    THE DEFENDANT:  Yes.

21                    THE COURT:  And you should also -- the Court can

22   sentence you consecutive, one sentence after the other, which

23   is actually what your Rule 11(c)(1)(C) is for the jail time,

24   or I can sentence you concurrently, they are run at the same

25   time, which is what has been agreed to in the Rule 11(c)(1)(C)

 1   sentence relating to the supervised release, but the Court has

 2   the option of making those choices.  Do you understand?

 3              THE DEFENDANT:  Yes.

 4              THE COURT:  All right.  And in this particular case

 5   you've actually agreed to certain conditions of supervised

 6   release.

 7              Okay.  Let me move along here.  At the time of

 8   sentencing the original indictment would be dismissed, and you

 9   wouldn't be prosecuted further for any of the conduct that's

10   related to what was set out in the statement of offenses.

11              Now, in terms of the -- I've gone over page 3,

12   paragraph 4, what the actual agreement, the Rule 11(c)(1)(C)

13   was, so I won't go over that again.  And the Court, the

14   acceptance by the Court or rejection and what choices there

15   are at that point.

16              So let me move to page 4 in the guidelines, and I'm

17   going to present this a little differently.  This is what the

18   Court would consider for sentencing.  I'll start with the

19   federal offense, which is Count One.  We've already discussed

20   the statutory maximum, can't sentence you to more than that.

21              There is a federal statute, 18 U.S.C. 3553(a), and

22   some other sections except for (e), and that set out things

23   that the Court has to consider, and this is sort of a broad

24   umbrella.  It's the offense conduct, considerations of

25   punishment, deterrence to you, deterrence to others, your

1  background, rehabilitation needs, those kinds of things that

2  the Court looks at.  So the Court is supposed to consider

3  those factors in fashioning a fair and reasonable sentence.

4           A presentence report would be developed as one was

5  originally.  So the Probation Office puts together one that

6  sets out the offense conduct, goes through all of the

7  statutes -- statutory penalties.  And also provides

8  information about your background, and also importantly sets

9  out the advisory sentencing guideline ranges, the

10 calculations.

11          Before I get it, you and your lawyer and the

12 Government get to look at it, makes objections.  Probation

13 will either change it, if they agree with the objection, or if

14 they don't agree with the objections, I will get the report

15 listing the objections and why they didn't change it, and then

16 I'll make rulings before I go forward with the sentencing

17 about that.  So that would be a process that we would go

18 through.

19          Now, one of their calculations would be the

20 advisory sentencing guidelines, which would be an offense

21 level, which they did originally.

22          Now, in this particular case, and this is on page 4

23 if you want to look at it.  You start off with a base offense,

24 and this is all related to the offense conduct.  And there are

25 various enhancements, and they've talked about it, that

1   prepubescent minors or minors under 12, two points; material

2   portrays sadistic or masochistic conduct, an additional four

3   points.  Use of a computer, additional two points.  At least

4   300, but fewer than 600 images, an additional four points.

5           The sadistic and masochistic conduct, what -- is

6   there bondage or something in these images that would fit this

7   bill?  I've leaned to ask.

8           MR. KENT:  It has to do with penetration.

9           THE COURT:  Oh, okay.  So some of the images -- oh,

10  in terms of the images showing that.

11          MR. KENT:  Yes, several of them.

12          THE COURT:  Okay.  All right.

13          Now, obviously, you're not showing these images

14  again because we don't want to have you reoffend by doing so,

15  but would you agree, either by memory or because your counsel

16  has reviewed them and has indicated so, that some of the

17  images do show penetration of the minors?  Would you agree

18  with that, because that's part of the calculation.

19          THE DEFENDANT:  Yes.

20          THE COURT:  Okay.  So that comes to a total of 30,

21  and then assuming you continue to accept responsibility, there

22  would be a two level reduction, which the Court can grant, and

23  then to get an additional point, the Government has to file a

24  motion indicating that you continued to accept responsibility,

25  and so you'd reduce it by three points, which would then place

1    you in category total, I guess it's 27; is that correct?

2    Yeah.

3            And then we then look at criminal history, you

4    don't have any prior convictions.  So it would be criminal

5    history category one.  And the range would be 70 to 87 months

6    for jail time, and the fine 12,500 to 125,000.

7            Now, again in the sentencing, advisory sentencing

8    guideline calculations, there are what we call departures,

9    which are very narrow.  They're basically things that the

10   Sentencing Commission has not taken into account in coming up

11   with these advisory sentencing guidelines.  I don't -- can't

12   think of anything in particular that came up the last time.  I

13   don't know whether there is anything that needs to be

14   discussed at this point in terms of what the departures, but

15   they're very small.

16           And they're very limited because, as I said,

17   they're supposed to -- everything that the Court would

18   ordinarily consider in a sentencing is supposed to have been

19   already considered.  They can also be -- so that's in the

20   aspect of the advisory sentencing guidelines.

21           You would then consider whether the Court could do

22   a variance, and that's what we call it.  These guidelines are

23   advisory, they're not required.  I am required to go through

24   the whole calculation, and that's why Probation goes through

25   it, it's in the presentence report, we discuss it, I need to

1  either adopt it, change it or whatever, but I need to set it

2  out so it's on the record.  And I need to explain if I do any

3  departures, if I decide to do a variance, in other words, a

4  different sentence than what the guidelines present, I need to

5  explain it on the record.  They're advisory so I can do this.

6           Obviously I can't sentence you to more than the

7  statutory maximum.  But it's called a variance as opposed to a

8  departure.  The departure is within the advisory sentencing

9  guidelines, a variance takes you outside of that particular

10 realm.  If I'm correct, there is a variance under the Rule

11 11(c)(1)(C), is that correct, with the 60 months?

12           MR. KENT:  That's correct.

13           THE COURT:  Okay.  So there would be a variance,

14 and usually the Government explains why they're justifying

15 doing a variance, and assuming I accepted the Rule

16 11(c)(1)(C), then I would indicate that I'm accepting this

17 variance of it being below the lowest which is 60.  Do you

18 understand all of that?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Okay.  I put it together differently,

21 but it should include all of it.

22           Now, we move to the D.C. offense.  They also have

23 their own guidelines, they're voluntary as well.  And you look

24 at the -- the type of offense and puts -- it puts you into

25 group eight.  They look at a criminal history, again, you

1    don't have any criminal history, which puts you into category

2    A, and so the sentence would be six months to 24 months.

3    Again, it's voluntary, the Court doesn't have to sentence you

4    to that, I could sentence you to something different, but that

5    if I did the guideline, that would be the guideline that I

6    would do.

7             Again, even with the advisory sentencing guidelines

8    and the voluntary D.C., I could sentence you concurrently or

9    consecutively.  Again, consecutive, one sentence after the

10   other, or concurrent, and you serve the time at the same time.

11   So do you understand all of that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  And is that -- and I may have done it,

14   discussed it differently, but is that what you've discussed

15   with your lawyer?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Okay.  So let me pick up on the letter,

18   if you have it in front of you.  I think we're on, probably on

19   top of page 6 at that point.  And you've agreed, you know,

20   nobody is going to be asking for any departures or -- and this

21   probably relates more if for some reason the Court does not

22   accept the Rule 11(c)(1)(C) plea and you don't withdraw your

23   plea, the Government doesn't withdraw the plea, and we're

24   going forward to sentencing, but I need to discuss all of this

25   anyway in order to accept it.

1          So, I could come up with a different guideline than

2    what you have done.  I will say to you that I did ask

3    Probation to do a calculation based on the information we had.

4    And they did agree that the federal one, as well as the D.C.

5    one matches what you have put in the plea letter, so at least

6    we don't start off with something different.

7          Now, if you commit a crime after this agreement,

8    then that actually may affect, you know, an upward departure,

9    it may affect your offense level.  And this is things like

10   false statements to the Probation Office, or the Court, or

11   obstructing justice in some way by doing that.  Do you

12   understand and agree?

13             THE DEFENDANT:  Yes.

14             THE COURT:  So parts of the letter I'm going to be

15   asking, I sometimes drop it, but I'm asking you, do you

16   understand it and are you agreeing to it, so if you don't

17   understand it, speak up, or if you don't agree with it, speak

18   up.

19             THE DEFENDANT:  Thank you.

20             THE COURT:  Now, we went through, I think, the

21   voluntary on the bottom of page 6.  And we'll start on page 7,

22   which talks about again the statute that I'd have to consider.

23   I've gone through really all of that.  So paragraph 8 of page

24   7 talks about your being able to present to the Court's -- in

25   allocution, which is basically recommendations to the Court at

1   the time of sentencing, and the areas that, assuming I

2   accepted the Rule 11(c)(1)(C), the areas would be if there was

3   discussions of any conditions on your supervised release

4   besides the ones that are out here and presumably any

5   potential restitution for any victims.  Those are probably the

6   areas that are sort of outside of the agreement.  I can't

7   think of any others that are not actually covered by the

8   agreement; am I correct?

9           MR. KENT:  That's correct, Your Honor.

10          THE COURT:  Okay.  Now, obviously, if I reject it,

11  you remain with the plea, then they would have an obviously a

12  broader opportunity, you and your lawyer and the Government,

13  to make arguments to the Court as to what the sentence should

14  be.  Much like we did for the original sentencing on the

15  original conviction.

16          Now, page 8, moving to the supervised release

17  conditions.  You have agreed, as well as the Government,

18  setting out certain conditions, and they go through from A to

19  S, and you've agreed -- that the Government has agreed they're

20  not going to ask for any other conditions that aren't in here.

21          Now, I may decide or Probation may recommend

22  something different.  They haven't -- sometimes they recommend

23  different things, although it looked like it covered at least

24  some -- most of the basic ones that I would think unless

25  there's something else that might come up.  So, they won't ask

1     for any others.

2          But obviously it's always possible that there would

3     be some additional ones, in which case you're in a position to

4     object and discuss it.  They're in a position to answer any

5     questions I might have about anything additionally that I

6     would add.  So any modifications that would come up, you

7     can -- both of you can argue about it.

8          I will not go through each one of them, you're an

9     educated man.  If you were not, I probably would to make sure

10    that you understood each of these, and some of these were

11    actually captured before, but did you discuss with your lawyer

12    each and every one of these?

13              THE DEFENDANT:  Yes.

14              THE COURT:  And do you understand them?

15              THE DEFENDANT:  Yes.

16              THE COURT:  Now, the one I would talk about is M,

17    the -- which is page 9, no direct contact with minors under

18    the age of 18 without the written approval of Probation and

19    the concurrence of the Court.  Most of these require Probation

20    to agree and the Court to agree if there are prohibitions on

21    particular conduct.

22          Now, you can have supervised visitation, that would

23    be without the written approval of the Probation and the

24    Court, with your niece and nephew provided that your brother

25    and his wife, I assume are the ones that are at issue, provide

 1   a one time written consent to the Probation Office and the

 2   Court consenting to that supervised visitation.  So is that

 3   something that you've agreed to?

 4                THE DEFENDANT:  Yes.

 5                THE COURT:  And the Government agreed to this as

 6   well?

 7                MR. KENT:  Yes.

 8                THE COURT:  Okay.  And is there anything in here

 9   that either you or the Government or the defense counsel think

10   I need to discuss specifically that is, you know, trickier or

11   something that's -- they look like they were fairly

12   self-explanatory, in terms of visiting issues, in terms of

13   what you would be precluded from doing, and the sexual

14   register, the Adam Walsh Child Protection Act gives them

15   authority to go into your home.  So there are certain things

16   here, much of which, I think, were actually in the original

17   one.

18                The other thing is that you are agreeing to

19   polygraph testing, which is the only way that they have in

20   most of the sex offender treatment programs include that

21   because that's to test the veracity of what you're telling

22   them, since a lot of this is self-reporting, and you've agreed

23   to that.

24                THE DEFENDANT:  Yes.

25                THE COURT:  Okay.  You were starting to stand up.

1          MR. KENT:  No, no further -- the Government doesn't

2   think there's anything further that needs to be reviewed as

3   far as his conditions.

4          THE COURT:  Okay, all right.  So as long as you're

5   satisfied, Dr. Hite, that you understand; is that correct?

6          THE DEFENDANT:  That's correct.

7          THE COURT:  And you're agreeing to them?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Okay.  The Statute of Limitations, if

10  for some reason your plea of guilty was vacated at some later

11  date, then if they wanted to re-prosecute you, if the Statute

12  of Limitations had lapsed between the plea and when they would

13  be -- it would be vacated and they wanted to re-prosecute you,

14  you would not be able to raise an offense -- this defense.

15  Most offenses, except for murder, have a timeframe within

16  which they have to charge you, after which you have a defense

17  it's beyond the Statute of Limitations.  You're agreeing that

18  if it's vacated after the plea, that they can come back and

19  re-prosecute you.  That's so that people don't plead guilty,

20  let the statute run, and then come back and argue it.  But are

21  you agreeing to that?

22         THE DEFENDANT:  Yes.

23         THE COURT:  And is that something you talked about

24  with your lawyer?

25         THE DEFENDANT:  Yes.

1           THE COURT:  Okay.  I've gone over the trial rights,

2    the one thing I did want to bring up is you're agreeing to

3    forego to the right to any further discovery or disclosures of

4    information that have not already been provided to you at the

5    time of the guilty plea; is that correct?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Okay.  And that's something you've

8    discussed, I would hope everything would have been provided,

9    but I want to make sure that that's something that's been

10   discussed with your client, Mr. Pollack; is that correct?

11          MR. POLLACK:  That's correct, Your Honor.

12          THE COURT:  Okay.  Moving to page 11.  These are

13   various rules of criminal procedure and -- or Federal Rules of

14   Evidence, and this would only come up if your guilty plea is

15   withdrawn, the earlier one was vacated, and this is -- if it's

16   withdrawn for some reason.  And what I'm not talking about, if

17   I reject the agreement, I'm talking if it's withdrawn for

18   other reasons.  Then any statements that you've made,

19   ordinarily they're limited by these rules, and in summary form

20   you can only use them to impeach you, in other words, your

21   statements today or any other statements you might have made.

22          If the plea of guilty is later withdrawn, not the

23   Rule 11(c)(1)(C), but on other grounds, then they can use your

24   statements that you will have -- admissions against you as

25   evidence.  Do you understand?

```
 1          THE DEFENDANT:  Yes.

 2          THE COURT:  And is that something you talked to

 3   them about?

 4          THE DEFENDANT:  Yes.

 5          THE COURT:  Okay.  Okay.  We've gone over appeal

 6   rights.  Okay, page 12, collateral attack.  You're agreeing

 7   not to challenge the conviction that would be entered or a

 8   sentence under the agreement or otherwise attempt to modify or

 9   change the sentence or in the manner in which it has been

10   determined in a collateral attack, in other words, not a

11   direct appeal, but you can do it through a 2255, which is a

12   form of a writ, 60B, which is a modification of judgments, but

13   you could do it if there's newly discovered evidence or if

14   you're claiming ineffective assistance of counsel.  Otherwise,

15   you're agreeing you're not going to collaterally attack the

16   conviction or the sentence, how it was determined.  Is that

17   your understanding and agreement?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Okay.  They've also put in you're

20   reserving your right to file a motion under 18 U.S.C.

21   3582(c)(2).  In essence, that's if, I'm putting it in very

22   summary forms, if the Sentencing Commission makes changes to

23   the advisory sentencing guidelines that might have an effect

24   on the guideline and your sentence, in certain instances

25   they're retroactive, sometimes they're not, you're reserving
```

 1    the right, if you had a right under that statute, to come in

 2    and ask for a different sentence, usually lower, that you're

 3    reserving your right to do that.  Is that your understanding?

 4              THE DEFENDANT:  Yes.

 5              THE COURT:  Okay.  The next one is the privacy and

 6    FOIA rights.  You're agreeing to waive all rights, whether

 7    directly or through somebody else, to request from the

 8    department or agency of the United States any records that

 9    pertain to the investigation or the prosecution of this case

10    under the Privacy Act or the Freedom of Information Act.  So

11    these are requests for records that you could make, and it's

12    limited to anything related to your prosecution, you know, the

13    case itself.  You're agreeing that you're not going to be,

14    either you or somebody else, asking for those records.  Is

15    that your understanding and agreement?

16              THE DEFENDANT:  Correct.

17              THE COURT:  And that's something you talked to your

18    lawyer about?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Okay.  Any self-incriminating

21    information can be used at the sentencing, and any -- if

22    you've had any debriefings off the record or anything else, it

23    can be used, or as I indicated, if it's withdrawn, then any of

24    those admissions can be used against you.  Do you understand

25    and agree?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Okay.

3           MR. POLLACK:  Again, Your Honor, with the exception

4    of if it were withdraw.

5           THE COURT:  Right, for the Rule 11(c)(1)(C).

6           Restitution, I believe that actually it is a

7    mandatory restitution in terms of at least the Court needs to

8    consider it, and as I understand it, at least at this point,

9    they may not have identified all the victims, and it would be

10   in the child pornography, obviously, not in the other case

11   since that child was fictitious.

12          And the -- what has happened in other cases is that

13   if there are victims that are identified, they're notified of

14   the case, and they can, sometimes they have filed recently,

15   they have been filing, they haven't in the past, but they've

16   recently been filing.  To request restitution, they need to

17   set out, there's a standard the Court needs to look at as to

18   what they make out in terms of being able to order it.  So

19   there's a whole process if somebody actually asks for the

20   restitution, and the Court would need to take a look at it.

21   This is something that would be litigated.

22          So they would file, they would request, the

23   Government gets to weigh in, you get to weigh in, and the

24   Court makes a decision, and there are standards that the Court

25   needs to follow.  But I want you to be aware that this may

1    come up if the somebody actually requests it.

2                 THE DEFENDANT:  Yes.

3                 THE COURT:  And that's something you've talked

4    about with them?

5                 THE DEFENDANT:  Correct.

6                 THE COURT:  And you have to make the restitution to

7    the Clerk of the Court, and in order to, assuming that this

8    comes up, you have to -- you're agreeing to disclose your

9    assets that you have an interest over which you exercise

10   control, directly, indirectly, even if they're held by

11   somebody else, a third party, and you're agreeing to complete

12   a financial statement on their disclosure form.  And they've

13   set out how you go about doing that, and that factors into

14   what restitution the Court would be ordering.  Do you

15   understand and agree?

16                THE DEFENDANT:  Yes.

17                THE COURT:  So you will be providing that.  And you

18   should understand that the -- you're promising that the

19   financial statement disclosure will be complete, accurate,

20   truthful.  Any willful falsehood on the financial statement

21   could again subject you to a separate criminal offense, which

22   carries an additional five years penalty of incarceration.  Do

23   you understand and agree?

24                THE DEFENDANT:  Yes.

25                THE COURT:  And you're also agreeing to let the

1    U.S. Attorney's Office get a credit report on you to evaluate

2    your ability to satisfy any financial obligations; is that

3    correct?

4              THE DEFENDANT:  Correct.

5              THE COURT:  The fines and restitutions are due

6    immediately.  I can also do a schedule of payments.  The fines

7    that have been agreed to in the Rule 11(c)(1)(C) was the

8    expectation that there would be a schedule or he would pay

9    them, or have you not discussed that?

10             MR. POLLACK:  The plea sets forth that the Court

11   can order a schedule that has a minimum monthly payment of a

12   thousand dollars.

13             THE COURT:  Okay, all right.  So the expectation

14   that it would be -- that there would be a -- would be a

15   payment over time, there might be some payment up front, but

16   some payment over time; is that correct?

17             MR. POLLACK:  Correct, Your Honor, obviously, Dr.

18   Hite could choose to satisfy the obligation early, but yes,

19   that's the expectation.

20             THE COURT:  Okay.  You're also certifying that you

21   haven't transferred any assets in contemplation of this

22   prosecution for the purpose of evading or defeating your

23   financial obligations created by this agreement or imposed by

24   the Court; is that correct?

25             THE DEFENDANT:  Correct.

1            THE COURT:  And you're promising to make such -- no

2  such transfers in the future until you fulfill your financial

3  obligations?

4            THE DEFENDANT:  Correct.

5            THE COURT:  Okay.  You're forfeiting your laptop.

6  Is that -- are you agreeing to that?

7            THE DEFENDANT:  Yes.

8            THE COURT:  And obviously all of the materials that

9  were -- the images that were captured.

10           You're consenting to them, in essence, the

11 Government going through whatever process they think is

12 appropriate, civil, administrative or otherwise, to have the

13 property forfeited, and you're giving up any right to the

14 usual notice, and there's certain requirements that you go

15 through, usually in a contested forfeiture, you're agreeing to

16 waive all of those, and it -- they will decide how they want

17 to proceed legally with the forfeiture; is that correct?

18           THE DEFENDANT:  Yes.

19           THE COURT:  You're also agreeing to waive all

20 constitutional and statutory challenges, including a direct

21 appeal to any forfeiture carried out pursuant to this plea

22 agreement; is that correct?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Okay.  The sex offender registration is

25 the next one, which is 15 on page 14.  You're agreeing that

1    pursuant to that statute you're required to register as a sex

2    offender for a minimum period of 15 years, keep the

3    registration current in the jurisdiction where you live, where

4    you reside, where you're employed, or if you're a student.

5              You understand that the requirements for the

6    registration include giving your name, residence address,

7    names, addresses of places where you'll be employed or either

8    working or studying, among other information, and that if you

9    knowingly fail to comply with it, you could be prosecuted for

10   a separate offense, so this is something to be taken

11   seriously, for a failure to register as a sex offender, and

12   then you could be subject up to a ten-year jail sentence, a

13   fine, or both.  Do you understand all of that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  And is that something you've talked

16   about with your lawyer?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Okay.  And do you understand that

19   compliance with the requirements of this sex offender

20   registration is a specific condition of the supervised

21   release, and again, failure to comply with that could subject

22   you to revocation of supervised release.  So you could wind up

23   with a sentence under a revocation of supervised release, as

24   well as prosecuted for failing as a criminal offense for not

25   registering.  Do you understand?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  The last, or moving to the end,

3   is the breach of agreement.  After entering the agreement you

4   fail to follow through with your obligations or you engage in

5   criminal activity prior to sentencing, you'll have been

6   considered to have breached the agreement, you've broken your

7   end of the bargain.  There are certain consequences:

8          The Government's free from its obligations, you

9   will not have a right to withdraw your guilty plea, you'll be

10  subject fully to criminal prosecution for any other crimes

11  that you've committed, including perjury, obstruction of

12  justice, and importantly the Government will be free to use

13  against you directly and indirectly in any criminal, civil

14  proceeding any statements you have made, any information,

15  materials you've provided, including the ones that during the

16  course of debriefings or today, that they can use against you.

17  Do you understand and agree?

18          THE DEFENDANT:  I understand and agree.

19          THE COURT:  Okay.  And in terms of a breach, this

20  is top of 15, you're agreeing that the Government shall be

21  required to prove a breach of the agreement only by a

22  preponderance of the evidence, so obviously that's at the

23  civil lawsuit level, below beyond a reasonable doubt, which is

24  criminal.  And if it's based on a violation of a new criminal

25  statute, then they only need to prove probable cause, which is

1   below even that, in terms of below a preponderance of the

2   evidence.  Do you understand and agree?

3                   THE DEFENDANT:  Yes.

4                   THE COURT:  Now, this is to prove the breach of the

5   agreement, not for any other purposes.  Okay.  And obviously

6   the agreement is not to allow you to commit any additional

7   crimes as part of it, and they are reserving the right to

8   prosecute you should you engage in that conduct.  Do you

9   understand and agree?

10                  THE DEFENDANT:  Yes.

11                  THE COURT:  Now, is this the complete agreement as

12  you understand it?  Everything that you've discussed that you

13  understand with your lawyer and in your own mind, is this as

14  I've -- I've gone over the key parts to it, but you indicated

15  you've read line by line each of it.  Is this the complete

16  agreement?  There's nothing floating out there that you think

17  is part of it?

18                  THE DEFENDANT:  No, this is the agreement totally.

19                  THE COURT:  All right.  And do you understand that

20  this agreement binds only the Criminal and Superior Court

21  Divisions of the U.S. Attorney's Office for D.C., so it would

22  be Superior Court, the local offense, or the federal offense,

23  and the Criminal Division of the U.S. Attorney's Office for

24  the Eastern District of Virginia, presumably where you've been

25  residing.  It doesn't bind any other U.S. Attorney's Office,

1  any other Civil Division or any other offices.  Do you

2  understand?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  Let me get back to my

5  questions briefly.  I've gone over the sentencing guidelines,

6  and, Mr. Pollack, you've -- did you discuss anything else?

7          What was in the agreement was what you and your

8  client and the Government agreed, were there any other things

9  that if you had an agreement you would have brought up or

10  considered that you might have talked to him about offense

11  level?

12          In other words, were there any things that you, as

13  part of this bargain, left out or arguments you would have

14  made?  In terms of the calculation.

15          MR. POLLACK:  Not that I'm aware of.

16          THE COURT:  Okay.

17          MR. POLLACK:  My recollection from last go-round

18  was that at sentencing we argued for 3553(a) variances, but I

19  do not recall arguing for downward departures, and I'm not

20  aware of downward departures that would be applicable with the

21  newly charged offense.

22          THE COURT:  Okay.  There's nothing that frankly

23  comes to mind from my perspective.  I just want to make sure

24  if there were, that you had had a discussion with your client

25  about it.

1           So I want to make sure you understand, Dr. Hite,

2      that I won't be able to determine the advisory guidelines

3      sentence until after I get the presentence report, and we'll

4      talk about that.  My inclination, and I'll bring it up here,

5      is to do a very short, not to sentence you to do -- do

6      something very short that they would amend and just put in the

7      new calculation, so there is a presentence report that goes to

8      the Bureau of Prisons that's accurate, it is not the old one,

9      because the old one has you as higher.  It would be -- it's

10     important to have the new one put in, she's already done it,

11     so it's just a matter of putting it in, that's not an issue.

12          There is time, I think, and we'll discuss, for them

13     to get, if the victims are going to file something, we need to

14     give them time to actually do that, so there's a ruling as to

15     whether there's restitution or not.  So there will be a

16     presentence [sic].

17          They may also look at your financial thing to see

18     if that has changed.  The rest, you've been locked up, so I

19     don't think the rest of it has probably changed, but they will

20     go through it.  We will do a short amended period, and they've

21     agreed to that, so we're not doing the usual 70 months.  But I

22     would get -- I would get the presentence report in terms of

23     being able to take a look at it.

24          As I said, at this point my inclination would be to

25     accept the Rule 11(c)(1)(C), but we do need to have this other

1    additional things calculated.  And I want to make sure that

2    you understand that, that it needs to come, and if for some

3    reason I didn't accept it, the pleas would not withdrawn [sic]

4    and we were going forward, then I certainly would need the

5    presentence report to make a decision, and it might be

6    different than the calculation that you have in the letter.

7    Do you understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  All right.  Now, I've talked to you

10   about the departures, which is, you know, either more severe,

11   less severe, that the Court could consider.  We've determined

12   that there doesn't appear to be any, and you're not asking to

13   do any and neither is the Government.

14             Also I need to point out that parole has been

15   abolished.  I assume you know what parole is.  There used to

16   be a system where you would spend part of your jail sentence

17   in the community, they've abolished that.  So if you're

18   sentenced to prison, which you would be, you'd serve the

19   sentence, reduction for good time, which the Bureau of Prisons

20   gives you, and obviously you'd get credit for the time you've

21   already served on the sentence relating to the earlier

22   offenses.  Now, this is a -- do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Now, because you're pleading guilty and

25   it's a felony offense, that finding may deprive you of

1  valuable civil rights.  Depends on where you live as to the

2  timeframe and how it affects it, so I won't go through it

3  specific.  But it does affect your right to vote, the right to

4  hold public office, the right to serve on a jury.

5          The right to possess any kind of firearm is a

6  federal, at this point a federal offense, and even if you

7  lived in a state where you could get one, get a license, you

8  are considered a convicted felon and, therefore, you cannot,

9  unless they change the statute in the future, you cannot own

10 or possess a firearm or ammunition.  Do you understand?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Okay.  Questions on voluntariness.  Has

13 anybody made any promises to you as to what the sentence will

14 be by pleading guilty, and I'm doing the plea separate from

15 the agreement as to the sentence.  In other words, you've got

16 an agreement, but has anybody promised you that yes, the Court

17 will definitely do it?  No, the Court won't.

18         THE DEFENDANT:  No.

19         THE COURT:  Has anyone forced, threatened or

20 coerced you in any way into entering this plea of guilty?

21         THE DEFENDANT:  No.

22         THE COURT:  Do you understand that the agreement

23 reached, at least at this point, is negotiations between your

24 lawyer and the Government's lawyer, because it includes a lot

25 of other things that the Court isn't involved with.  Do you

1   understand?

2             THE DEFENDANT:  Yes.

3             THE COURT:  Now, has anybody made any promise to

4   you in connection with your guilty plea other than those in

5   the plea letter or what we've talked about here in open court?

6             THE DEFENDANT:  No.

7             THE COURT:  And has anybody promised the sentence

8   to you prior to my agreeing to the Rule 11(c)(1)(C)?

9             THE DEFENDANT:  No.

10            THE COURT:  Okay.  Are you entering this plea of

11  guilty voluntarily and of your own free will?

12            THE DEFENDANT:  Yes.

13            THE COURT:  Are you entering this plea of guilty

14  because you are guilty?

15            THE DEFENDANT:  Yes.

16            THE COURT:  Anything you don't understand, anything

17  you want to ask me or your lawyer about?

18            THE DEFENDANT:  I'm fine.  Thank you.

19            THE COURT:  All right.  Paul David Hite, how do you

20  plead to Count One, possession of child pornography, guilty or

21  not guilty?

22            THE DEFENDANT:  Guilty.

23            THE COURT:  How do you plead to Count Two,

24  arranging for a sexual contact with a, in this case a

25  fictitious child?

1            THE DEFENDANT:  Guilty.

2            THE COURT:  All right.  I'm satisfied that the

3  defendant, Paul David Hite, is fully competent, capable of

4  making a decision today, understands the nature and

5  consequences of what he's doing.  He's acting voluntarily and

6  of his own free.  There's an adequate factual basis for his

7  plea.  Therefore, the plea is accepted, and I find Paul David

8  Hite guilty of Count One, possession of child pornography, and

9  Count Two, arranging for a sexual contact with a fictitious

10 child.

11           You can go ahead and sit down.

12           And in terms of the plea agreement itself, it would

13 be helpful -- I'm inclined to accept it.  The one thing that

14 would be helpful to me would be to have the Government file a

15 short, I don't know, a short memorandum on the justification

16 for the below guideline range.  The Court has to explain it on

17 a record, they do keep track of it, the Sentencing Commission,

18 as does Congress.  So it is helpful.  They look at my

19 sentence, they don't always look at why I did it.  So I want

20 it to be clear that it's -- the Government is suggesting that

21 you've given the justification for it.

22           So, if we could set a date for that pretty quickly.

23 Can you tell me when you think you could do it?

24           MR. KENT:  That's fine.  Certainly within a week.

25 I don't think we need that much time.

 1          THE COURT:  Okay.  All right.  How about

 2  April 24th, a week from Friday?

 3          MR. KENT:  That's fine, Your Honor.

 4          THE COURT:  Okay.  Do you have some sense of, I

 5  will order the updating of the presentence report.  Do you

 6  have any idea how -- have requests gone out to identify people

 7  or not or where are we?

 8          MR. KENT:  I expect, I mean, a couple week

 9  turnaround as far as, you know, we can certainly set a

10  deadline as far as, if there are going to be any requests, a

11  deadline by which we must receive them, you know, I'm inclined

12  to suggest within two weeks of today.  I mean, that's my

13  inclination, two or three weeks from today.

14          THE COURT:  Okay.  So why don't we make it three

15  weeks to make sure that we actually get them in and everybody

16  has a chance to sort of look at it.

17          MR. KENT:  That's fine.

18          THE COURT:  So they would come, so by May 6th, we

19  would have -- you're going to file by April 24th, by May 6th

20  we would have whatever victim requests are going to come in.

21  I'd give the extra week so we don't wind up somebody asking

22  after two weeks, two weeks is a little short, although I would

23  think some of these -- some of these may have been, I didn't

24  look through all of them, since we didn't have child

25  pornography, I didn't get into the issue of where they came

1   from.  I'm assuming that Detective Palchak and others have

2   probably looked at what the sources would be.

3          I think that they can, if -- in terms of updating

4   the report, which would be probably the financial and the

5   advisory sentencing guidelines, it will be the same probation

6   officer that did the original one, she's already done the

7   calculation, so she just needs to stick that in.

8          Let me ask if it can be done by May 6th.  If they

9   need something extra, it means that you need to get your

10  financial information back to Probation quickly because that

11  will be -- I see updating the advisory guidelines unless

12  something has happened in the family or whatever, the rest of

13  it would be the financial, so the sooner you get it, the

14  faster she can get the report done so we'd have it fixed.

15         So we can do it after -- let me look at -- I have a

16  trial that week.  Let me see what it looks like at the end.

17        (Pause.)

18         THE COURT:  I could do it in the afternoon of the

19  8th if people are around.  I have a sentencing in the morning,

20  but I could do it in the afternoon.  Does that work?  Or I

21  could do it the following week.

22         MR. POLLACK:  Your Honor, my recommendation would

23  be to push it out a week or two with the idea that that might

24  give the Government and Dr. Hite the ability to see if they

25  can reach an agreement in terms of the restitution.

1              THE COURT:  Sure.  Fine.  Why don't you confer and

2    give me a date, and I'll look at my calendar and see if it

3    works.

4              MR. POLLOCK:  If we're going to have that

5    information by the 6th, I would suggest maybe something the

6    week of the 18th or the 20th.

7              THE COURT:  Okay.  The 20th actually is not a good

8    day itself.  How about, we could do it the 19th.  All my staff

9    is out, but I may not be sitting that Friday, that's the only

10   reason.  I have a very -- actually, you know what?  I could do

11   it on the 21st in the afternoon if you're willing to do it in

12   the afternoon.  I have a bunch of matters in the morning which

13   sometimes get moved and sometimes they don't.  It's a

14   Thursday.

15             MR. POLLACK:  That's fine for the defendant, Your

16   Honor.

17              THE COURT:  Does that work?

18              MR. KENT:  That's fine.

19              THE COURT:  How about if we set it for

20   2:00 o'clock.  So it's May 21st at 2:00.  And let me file --

21   sign the papers here for a minute.

22         (Pause.)

23              THE COURT:  All right, papers are done.  Okay, is

24   there anything else?

25              MR. POLLACK:  Yes, Your Honor.  The Court had

1   entered an agreed upon order extending some of our current

2   deadlines to get us past today's date.  Since the Court is now

3   not going to be in a position until May 21st to determine

4   whether or not the Court is going to accept the plea, what I

5   would suggest is that the Court simply suspend the current

6   schedule.

7              THE COURT:  You know, as soon as I get the -- as

8   soon as I get the -- the way I'll set it up, when I get the

9   presentence report on May 6th, if you don't hear from me,

10  assume I'm accepting it.

11             MR. POLLOCK:  That's fine, Your Honor.  Then if the

12  Court could simply, I don't know if there are any deadlines

13  under our current schedules between now and then.  I just want

14  to make --

15             THE COURT:  Oh, yes, I will vacate.  I will do an

16  order vacating all of the -- we do, we have briefing dates, we

17  have *Daubert* hearings, we've got a bunch of statuses.  We can

18  go through and make sure that all of those are gone.

19             MR. POLLOCK:  And then obviously, if the Court were

20  for some reason not to accept the agreement, then we can set a

21  new schedule.

22             THE COURT:  Yeah, we'd have to do different dates

23  anyway.  But just keep in mind that if you don't hear from me

24  after we get the presentence report, assume that I'm going

25  forward.

1              MR. POLLOCK:  Understood.

2              THE COURT:  So it would be unusual that I wouldn't

3    accept it.  I think it works in the --

4              MR. POLLACK:  Thank you, Your Honor.

5              THE COURT:  -- based on what I know in the case.

6              Okay.  If there's nothing else, then let me excuse

7    everybody.

8              MR. KENT:  Thank you, Your Honor.

9              THE COURT:  Thanks.

10             MR. POLLACK:  Thank you.

11   END OF PROCEEDINGS AT 12:26 P.M.

12                              - o -

13

14                 C E R T I F I C A T E

15             I, Lisa M. Foradori, RPR, FCRR, certify that

16   the foregoing is a correct transcript from the record of

17   proceedings in the above-titled matter.

18

19

20

21   Date:_____          _____

22                                  Lisa M. Foradori, RPR, FCRR

23

24

25

**$**

**$250,000 [1]** 44/12
**$262,000 [1]** 7/3

**0**

**065 [3]** 1/4 3/2 3/25

**1**

**10:48 [1]** 1/6
**11 [19]** 4/6 4/6 5/21 6/19 16/19 31/1
46/23 46/25 47/12 51/11 51/16 52/22
54/2 58/12 58/23 61/5 63/7 69/25 72/8
**12 [9]** 13/5 13/21 31/3 31/4 31/5 41/18
42/2 49/1 59/6
**12,500 [3]** 7/4 46/10 50/6
**12-065 [3]** 1/4 3/2 3/25
**12-year-old [13]** 24/13 24/24 25/2 25/3
25/9 30/7 32/17 33/7 33/12 33/16 33/23
36/17 37/7
**125,000 [1]** 50/6
**12:26 P.M [1]** 78/11
**14 [2]** 18/20 64/25
**1400 [1]** 1/21
**14th [2]** 34/6 34/21
**15 [4]** 1/5 64/25 65/2 66/20
**16 [4]** 13/5 23/6 30/24 37/8
**16th [1]** 34/25
**17th [5]** 26/11 26/13 30/3 30/19 36/15
**18 [5]** 21/17 21/23 47/21 55/18 59/20
**18th [1]** 76/6
**1955 [1]** 9/21
**19th [1]** 76/8
**1st [5]** 23/23 24/16 30/3 32/24 36/15

**2**

**20001 [1]** 2/10
**20005-5701 [1]** 2/3
**2009 [3]** 27/25 28/24 40/7
**2011 [3]** 28/1 28/24 40/7
**2012 [14]** 23/23 24/17 25/6 25/15 25/15
26/2 26/5 26/11 26/13 30/3 30/3 30/19
32/25 34/5
**2015 [1]** 1/5
**202 [4]** 1/16 1/22 2/4 2/10
**20530 [2]** 1/16 1/21
**20th [2]** 76/6 76/7
**21st [3]** 76/11 76/20 77/3
**22 [1]** 22/21
**2252 [1]** 21/18
**2255 [1]** 59/11
**2256 [1]** 21/23
**23 [1]** 13/6
**24 [3]** 6/25 7/21 52/2
**24th [2]** 74/2 74/19
**250,000 [1]** 7/4
**252-7963 [1]** 1/16
**26th [1]** 9/21
**27 [1]** 50/1
**2:00 [1]** 76/20
**2:00 o'clock [1]** 76/20

**3**

**30 [1]** 49/20
**300 [1]** 49/4
**3010.02 [1]** 22/21
**3065DX [1]** 27/18
**3269 [1]** 2/10
**333 [1]** 2/9
**3420 [1]** 1/22
**353-3420 [1]** 1/22
**354-3269 [1]** 2/10
**3553 [2]** 47/21 68/18
**3582 [1]** 59/21

**4**

**404 [1]** 14/5
**409 [6]** 28/1 40/8 40/15 40/15 41/8
41/12
**48 [1]** 10/15

**5**

**5,000 [1]** 46/15
**555 [1]** 1/15
**57 [2]** 31/11 37/10
**5701 [1]** 2/3
**5830 [1]** 2/4

**6**

**60 [5]** 6/23 7/20 31/10 51/11 51/17
**600 [1]** 49/4
**60B [1]** 59/12
**626-5830 [1]** 2/4
**655 [1]** 2/2
**6706 [1]** 2/9
**6th [8]** 14/4 25/15 34/5 74/18 74/19 75/8
76/5 77/9

**7**

**70 [2]** 50/5 69/21
**7963 [1]** 1/16

**8**

**84 [2]** 6/21 7/20
**87 [1]** 50/5
**8th [1]** 75/19

**9**

**900 [1]** 2/3

**A**

**a.m [1]** 1/6
**ability [5]** 9/1 9/3 38/23 63/2 75/24
**able [7]** 21/13 42/15 53/24 57/14 61/18
69/2 69/23
**abolished [2]** 70/15 70/17
**about [7]** 10/18 17/23 34/21 34/22 35/2
35/21 36/17 37/20 39/2 39/14 42/20
43/21 45/17 48/8 48/17 48/25 53/22
53/24 55/5 55/7 55/16 57/23 58/16 59/3
60/18 62/4 62/13 65/16 68/10 68/25
69/4 70/10 72/5 72/17 74/1 76/8 76/19
**above [6]** 17/12 17/16 17/19 18/4 18/4
78/17
**above-titled [1]** 78/17
**accept [23]** 8/2 8/2 8/4 8/6 8/14 8/23
12/18 15/16 17/25 18/2 19/1 20/5 23/17
49/21 49/24 52/22 52/25 69/25 70/3
73/13 77/4 77/20 78/3
**acceptance [1]** 47/14
**accepted [3]** 51/15 54/2 73/7
**accepting [2]** 51/16 77/10
**accepts [2]** 8/4 12/4
**access [1]** 32/15
**account [1]** 50/10
**accurate [3]** 39/23 62/19 69/8
**acknowledged [4]** 28/21 29/8 29/20 30/2
**acknowledges [1]** 31/9
**act [9]** 23/3 23/11 30/16 30/21 36/24
37/15 56/14 60/10 60/10
**acting [2]** 23/24 73/5
**active [2]** 24/13 32/16
**activity [20]** 24/10 24/23 25/8 25/12
25/18 25/21 25/25 26/7 30/6 32/10 33/6
33/23 33/24 34/8 34/13 34/18 35/15
36/16 36/20 66/5
**acts [4]** 28/6 28/19 37/23 42/3

**actual [4]** 8/5 43/19 44/23 47/16
**actually [22]** 4/23 13/7 13/17 20/5 36/19
38/6 38/13 40/24 45/5 46/23 47/5 53/8
54/7 55/11 56/16 61/6 61/19 62/1 69/14
74/15 76/7 76/10
**Adam [1]** 56/14
**adapted [1]** 21/1
**add [1]** 55/6
**addition [2]** 29/12 30/19
**additional [9]** 17/8 49/2 49/3 49/4 49/23
55/3 62/22 67/6 70/1
**additionally [2]** 28/8 55/5
**address [1]** 65/6
**addresses [1]** 65/7
**Addy [2]** 2/1 3/13
**adequate [1]** 73/6
**administrative [1]** 64/12
**admissions [4]** 20/3 39/5 58/24 60/24
**admitted [1]** 43/10
**adopt [1]** 51/1
**adult [17]** 22/24 22/25 23/2 23/7 23/10
28/7 28/20 30/3 30/9 30/15 31/7 32/5
36/14 36/22 37/14 38/13 42/4
**adults [1]** 41/19
**advisory [16]** 18/4 45/4 46/3 48/9 48/20
50/7 50/11 50/20 50/23 51/5 51/8 52/7
59/23 69/2 75/5 75/11
**affect [3]** 53/8 53/9 71/3
**affects [1]** 71/2
**afford [2]** 14/15 15/25
**after [15]** 24/18 27/1 33/2 35/25 36/1
46/22 52/9 53/7 57/16 57/18 66/3 69/3
74/22 75/15 77/24
**afternoon [4]** 75/18 75/20 76/11 76/12
**again [11]** 15/24 20/3 25/8 26/7 33/21
33/23 34/22 35/2 35/4 46/4 47/13 49/14
50/7 51/25 52/3 52/7 52/9 53/22 61/3
62/21 65/21
**against [6]** 14/20 15/11 58/24 60/24
66/13 66/16
**age [4]** 23/6 30/24 37/8 55/18
**agency [1]** 60/8
**aggregated [1]** 7/24
**ago [2]** 13/18 31/11
**agree [17]** 19/22 48/13 48/14 49/15
49/17 53/4 53/12 53/17 55/20 55/20
60/25 62/15 62/23 66/17 66/18 67/2
67/9
**agreed [7]** 6/21 7/7 9/9 16/8 18/14 25/3
26/10 26/24 33/15 35/4 35/16 35/23
37/1 44/18 46/25 47/5 52/19 54/17
54/19 54/19 56/3 56/5 56/22 63/7 68/8
69/21 77/1
**agreeing [27]** 5/6 31/21 36/19 38/2
39/25 41/10 41/25 42/6 53/16 56/18
57/7 57/17 57/21 58/2 59/6 59/15 60/6
60/13 62/8 62/11 62/25 64/6 64/15
64/19 64/25 66/20 72/8
**agreement [43]** 5/16 5/18 6/20 7/6 7/25
8/3 8/5 8/10 8/16 9/15 17/8 18/8 18/12
18/13 19/23 47/12 53/7 54/6 54/8 58/17
59/8 59/17 60/15 63/23 64/22 66/3 66/3
66/6 66/21 67/5 67/6 67/11 67/16 67/18
67/20 68/7 68/9 71/15 71/16 71/22
73/12 75/25 77/20
**ahead [2]** 20/7 73/11
**aided [1]** 2/25
**all [62]** 3/15 3/15 3/17 4/7 4/17 7/10
9/22 10/14 11/12 11/24 12/2 12/22 16/3
16/12 18/23 19/2 19/10 19/13 20/3 20/5
21/8 22/15 23/13 31/14 32/24 34/21
41/2 41/2 42/17 43/7 43/12 43/18 44/1
44/4 47/4 48/6 48/24 49/12 51/18 51/21
52/11 52/24 53/23 57/4 60/6 61/9 63/13

**A**    Case 1:12-cr-00065-CKK

all... [15] 64/8 64/16 64/19 65/13 67/19
68/4 70/9 72/19 73/2 74/1 74/24 76/8
76/23 77/16 77/18
allegation [1] 6/10
allocution [2] 9/10 53/25
allow [3] 25/3 33/15 67/6
along [2] 12/2 47/7
already [16] 8/13 10/3 12/19 13/18 19/8
44/18 45/1 45/8 45/15 46/1 47/19 50/19
58/4 69/10 70/21 75/6
also [32] 4/19 5/20 6/19 14/4 16/14
18/10 18/14 22/10 25/11 25/23 26/10
27/4 27/17 32/16 33/24 39/20 40/6
44/18 46/4 46/10 46/21 48/7 48/8 50/19
51/22 59/19 62/25 63/6 63/20 64/19
69/17 70/10
although [3] 29/12 54/23 74/22
always [2] 55/2 73/9
am [3] 17/19 50/23 54/8
amend [1] 69/6
amended [1] 69/20
AMERICA [1] 1/3
ammunition [1] 71/10
among [1] 65/8
analysis [3] 27/19 27/24 40/1
and/or [4] 23/2 23/7 30/15 31/7
Andrea [1] 1/14 3/9
anesthesiology [1] 10/8
another [2] 5/20 7/18
answer [2] 6/1 55/4
answers [2] 10/3 10/4
anti [4] 10/20 10/20 11/14 11/21
anti-depressant [3] 10/20 11/14 11/21
anti-reflux [1] 10/20
antidepressant [1] 11/4
any [79]
anybody [4] 71/13 71/16 72/3 72/7
anyone [1] 71/19
anything [17] 11/7 20/2 32/6 37/24
38/13 39/1 50/12 50/13 55/5 56/8 57/2
60/12 60/22 68/6 72/16 72/16 76/24
anyway [2] 52/25 77/23
appeal [26] 15/23 15/24 16/3 16/13
16/15 16/20 17/3 17/5 17/15 17/16
18/1 18/5 18/6 18/11 18/14 18/14 18/17
18/20 18/21 18/22 19/4 19/4 19/9 59/5 59/11
64/21
Appeals [1] 15/23
appear [2] 21/1 70/12
APPEARANCES [1] 1/13
applicable [1] 68/20
appointed [2] 14/15 15/25
appropriate [1] 64/12
approval [2] 55/18 55/23
approximately [2] 28/1 40/7
April [3] 1/5 74/2 74/19
April 24th [2] 74/2 74/19
are [67] 4/1 4/21 4/23 6/11 7/14 7/21
8/11 9/18 10/25 11/25 12/13 12/24
13/10 14/4 14/8 15/16 16/4 16/14 17/1
17/7 18/10 19/24 20/1 21/11 38/1 44/17
45/24 46/2 46/3 46/24 47/15 48/24 50/8
50/9 50/22 53/16 54/4 54/5 54/6 54/7
55/20 55/25 55/25 56/15 56/18 57/20
58/12 60/11 61/13 61/13 61/24 63/5
64/6 66/7 67/7 69/13 71/8 72/10 72/13
72/14 74/7 74/10 74/20 75/19 76/23
77/12 77/18
areas [4] 19/9 54/1 54/2 54/6
aren't [1] 54/20
arguably [1] 29/14
argue [2] 55/7 57/20

**(col 2)**

argued [1] 68/18
arguing [1] 68/19
arguments [2] 54/13 68/13
around [3] 30/17 43/16 75/19
arrangement [9] 22/23 22/25 23/2 30/9
30/14 30/20 30/21 36/14 36/23
arrangements [3] 30/5 36/13 36/16
arranging [9] 4/2 6/15 6/24 22/19 29/24
39/6 46/8 72/24 73/9
arrested [3] 27/7 36/9 39/8
arrive [2] 37/2 37/3
as [82]
ask [5] 2/9 17 18/22 19/21 49/7 53/2
54/20 54/25 60/2 72/17 75/8
asked [1] 25/5
asking [11] 4/17 5/1 10/2 10/22 13/21
52/20 53/15 53/15 60/14 70/12 74/21
asks [1] 61/19
aspect [1] 50/20
assert [1] 55/8
assessment [2] 46/12 46/14
assets [2] 62/9 63/21
assistance [3] 17/14 17/17 59/14
associated [1]
assume [5] 39/23 55/25 70/15 77/10
77/24
assuming [6] 17/25 49/21 51/15 54/1
62/7 75/1
assumption [1] 20/8
attack [3] 59/6 59/10 59/15
attempt [1] 59/8
attempted [1] 6/8
ATTORNEY'S [5] 1/15 63/1 67/21 67/23
67/25
attorneys [2] 12/14 12/17
authority [2] 17/8 56/15
Avenue [1] 2/9
Avenue,NW [1] 1/21
aware [6] 19/24 20/1 31/18 61/25 68/15
68/20

**B**

back [10] 5/10 5/10 5/16 31/15 32/11
43/12 57/18 57/20 68/4 75/10
background [3] 9/18 48/1 48/8
bargain [2] 66/7 68/13
Barry [2] 2/1 3/11
base [1] 48/23
based [9] 6/6 13/23 13/24 19/17 20/3
43/9 53/3 66/24 78/5
basic [3] 9/14 12/23 54/24
basically [4] 6/20 43/24 50/9 53/25
basics [2] 6/6 6/7
basis [1] 73/6
be [142]
because [17] 15/6 15/17 19/2 19/16
40/18 40/21 44/5 49/14 49/15 49/18
50/16 56/21 69/9 70/24 71/24 72/14
75/10
been [45] 4/12 5/14 11/14 11/15 13/2
20/9 20/25 21/13 21/24 22/1 22/8 22/10
22/10 22/12 28/2 28/9 29/3 29/5 29/6
29/9 29/16 31/11 35/5 35/9 37/9 38/8
40/9 41/17 42/8 43/1 43/2 46/25 50/18
58/4 58/8 58/9 59/9 61/15 61/16 63/7
66/5 67/24 69/18 70/14 74/23
before [7] 1/10 8/14 10/1 36/1 48/11
48/16 55/11
began [1] 33/22
behalf [5] 3/6 3/10 3/12 3/14 15/4
being [6] 16/5 18/20 51/17 53/24 61/18
69/23
believe [4] 16/20 17/19 39/3 61/6
below [8] 17/23 17/23 17/24 51/17

**(col 3)**

benefits [1] 12/21
Berlin [4] 37/23 38/3 38/7 38/23
Berlin's [2] 38/14 38/19
besides [1] 54/4
better [1] 34/17
between [10] 7/25 25/15 27/25 28/23
30/2 34/5 40/6 57/12 71/23 77/13
beyond [10] 15/18 19/18 21/19 22/22
23/21 41/11 43/9 46/5 57/17 66/23
bill [1] 49/7
bind [1] 67/25
binds [1] 67/20
birth [1] 9/20
bit [1] 26/16
Black [2] 24/20 33/3
bond [1] 9/9
bondage [1] 49/6
born [2] 10/10 10/12
both [10] 12/21 16/13 18/13 22/14 39/4
45/4 46/3 46/19 55/7 65/13
bottom [2] 32/7 53/21
boy [6] 30/7 30/17 30/18 30/25 30/25
37/4
boys [3] 28/5 28/18 42/1
BPollack [1] 2/4
breach [4] 66/3 66/19 66/21 67/4
breached [1] 66/6
briefing [1] 77/16
briefly [1] 68/5
bring [2] 58/2 69/4
broad [1] 47/23
broader [1] 54/12
broken [1] 66/6
brother [1] 55/24
brought [1] 68/9
bunch [1] 76/12 77/17
burden [1] 15/17
Bureau [2] 69/8 70/19
butter [3] 27/10 27/11 39/11

**C**

calculated [1] 70/1
calculation [7] 49/18 50/24 53/3 68/14
69/7 70/6 75/7
calculations [3] 48/10 48/19 50/8
calendar [1] 76/2
call [3] 38/23 50/8 50/22
called [1] 51/7
cam [1] 26/21
came [2] 50/12 74/25
camera [1] 22/12
can [43] 5/9 5/9 8/5 8/8 10/17 16/6
16/20 18/14 19/20 20/17 38/5 41/11
42/12 45/6 46/21 46/24 49/22 50/19
51/5 55/7 55/7 55/22 57/18 58/20 58/23
59/11 60/21 60/23 60/24 61/14 63/6
63/11 66/16 73/11 73/23 74/9 75/3 75/8
75/14 75/15 75/25 77/17 77/20
can't [9] 5/16 5/20 5/21 15/6 15/11
47/20 50/11 51/6 54/6
cannot [9] 15/18 41/8 44/5 44/5 45/3
46/4 46/12 71/8 71/9
capable [1] 73/3
capacity [2] 23/25 30/12
captured [2] 55/11 64/9
carefully [3] 5/13 19/21 43/19
carried [1] 64/21
carries [1] 62/22
carry [1] 38/6
case [30] 3/2 3/25 6/16 8/13 12/14 12/17
13/2 13/17 16/6 17/15 18/5 19/8 21/7
22/8 22/13 30/9 31/5 37/16 39/7 41/17
46/8 47/4 48/22 55/3 60/9 60/13 61/10

**C**     Case 1:12-cr-00065-CKK

**case... [3]** 61/14 72/24 78/5
**cases [1]** 61/12
**category [3]** 50/1 50/5 52/1
**cause [2]** 13/6 66/25
**centered [1]** 30/17
**certain [9]** 17/4 18/13 44/17 47/5 54/18 56/15 59/24 64/14 66/7
**certainly [7]** 22/12 23/9 31/8 31/12 70/4 73/24 74/9
**certify [1]** 78/15
**certifying [1]** 63/20
**cetera [1]** 19/4
**challenge [1]** 59/7
**challenges [1]** 64/20
**chance [1]** 74/16
**change [6]** 5/21 48/13 48/15 51/1 59/9 71/9
**changed [2]** 69/18 69/19
**changes [1]** 59/22
**charge [8]** 23/9 29/23 37/13 38/7 38/8 38/10 38/16 57/16
**charged [5]** 4/1 6/7 28/11 28/12 68/21
**charges [6]** 12/6 12/7 12/8 13/1 38/4 46/19
**CHARTERED [1]** 2/2
**chat [6]** 24/3 24/4 24/22 31/25 32/2 33/6
**CHEVALIER [1]** 2/2
**child [65]** 1/20 4/1 4/3 6/13 6/16 6/17 6/22 6/25 20/11 20/16 21/16 21/17 21/22 21/24 22/1 22/7 22/7 22/18 22/20 23/4 23/5 23/8 23/10 23/11 24/1 28/1 28/4 28/14 28/16 28/17 29/1 29/5 29/8 29/16 29/19 29/21 29/25 30/16 30/21 30/24 31/8 36/18 36/25 37/13 37/13 37/14 38/5 38/12 39/7 40/8 41/16 41/17 42/21 43/4 43/9 44/9 44/10 46/9 56/14 61/10 61/11 72/20 72/25 73/8 73/10 74/24
**children [6]** 24/5 32/3 37/6 41/18 42/2 42/22
**choices [2]** 47/2 47/14
**cholesterol [1]** 10/19
**choose [1]** 63/18
**circumstances [2]** 17/4 19/5
**citizens [1]** 13/19
**civil [5]** 64/12 66/13 66/23 68/1 71/1
**claim [1]** 17/1
**claiming [1]** 59/14
**clarification [2]** 8/20 9/6
**clear [4]** 7/19 10/23 11/1 73/20
**clearly [1]** 37/8
**Clerk [1]** 62/7
**client [3]** 58/10 68/8 68/24
**CNF93647RQ [1]** 27/19
**Code [3]** 21/17 21/23 22/21
**coerced [1]** 71/20
**coercion [1]** 6/8
**collateral [2]** 59/6 59/10
**collaterally [1]** 59/15
**COLLEEN [1]** 1/10
**COLUMBIA [11]** 1/1 13/19 13/22 26/4 26/9 26/15 27/2 27/6 30/13 34/23 36/7
**combination [1]** 40/21
**come [16]** 3/19 3/20 5/16 31/15 36/7 53/1 54/25 55/6 57/18 57/20 58/14 60/1 62/1 70/2 74/18 74/20
**comes [3]** 49/20 62/8 68/23
**coming [1]** 50/10
**commence [1]** 21/25 22/9
**commerce [9]** 22/3 22/11 28/10 29/4 29/7 29/11 29/17 42/9 42/24
**Commission [3]** 50/10 59/22 73/17
**commit [2]** 53/7 67/6

**committed [4]** 13/6 13/7 45/20 66/11
**communicate [5]** 26/6 26/11 27/22 35/4 40/2
**communicating [3]** 24/18 31/19 33/1
**communication [2]** 25/7 33/21
**communications [6]** 25/16 27/13 30/2 32/11 34/7 35/1
**community [2]** 44/15 70/17
**competency [1]** 11/25
**competent [1]** 73/3
**complete [4]** 62/11 62/19 67/11 67/15
**completed [1]** 5/22
**completely [1]** 12/13
**compliance [1]** 65/19
**comply [2]** 65/9 65/21
**computer [28]** 2/25 20/18 20/18 20/23 20/23 21/10 21/11 22/1 22/4 27/18 27/22 27/25 28/23 28/23 29/4 29/7 29/17 37/23 39/21 40/1 40/2 40/3 40/9 40/14 42/25 43/2 49/5
**computer-aided [1]** 2/25
**computer-generated [3]** 20/18 21/10 21/11
**concedes [1]** 42/15
**concerning [2]** 26/3 30/6
**concerns [1]** 35/21
**concurrence [1]** 55/19
**concurrent [4]** 7/1 7/18 7/21 52/10
**concurrently [2]** 46/24 52/8
**condition [2]** 18/11 65/20
**conditions [12]** 17/6 17/9 18/13 44/17 44/23 45/24 47/5 54/3 54/17 54/18 54/20 57/3
**conduct [20]** 20/20 20/22 20/25 21/2 28/6 28/19 30/18 41/19 42/3 42/22 43/11 44/19 47/9 47/24 48/6 48/24 49/2 49/5 55/21 67/8
**confer [1]** 76/1
**confirmation [2]** 26/17 35/10
**confront [1]** 14/19
**confused [1]** 11/7
**Congress [1]** 73/18
**connected [5]** 23/18 28/2 28/23 32/2 40/9
**connection [1]** 72/4
**consecutive [4]** 7/15 7/21 46/22 52/9
**consecutively [1]** 52/9
**consent [1]** 56/1
**consenting [2]** 56/2 64/10
**consequences [3]** 4/25 66/7 73/5
**consider [8]** 47/1 47/23 48/2 50/18 50/21 53/22 61/8 70/11
**considerations [1]** 47/24
**considered [4]** 50/19 66/6 68/10 71/8
**constituted [2]** 43/4 45/2
**Constitution [2]** 2/9 18/7
**constitutional [5]** 12/23 15/8 16/13 16/24 64/20
**consult [1]** 5/8
**contact [17]** 4/2 6/16 6/24 22/20 23/3 23/12 29/24 30/16 32/25 34/3 36/25 37/3 39/7 46/8 55/17 72/24 73/9
**contained [13]** 21/22 22/18 28/4 28/15 28/22 28/25 29/13 29/19 29/21 41/16 41/23 42/21 43/1
**contemplation [1]** 63/21
**content [1]** 41/3
**contested [1]** 64/15
**contesting [1]** 42/11
**context [1]** 15/1
**continue [2]** 32/21 49/21
**continued [5]** 24/17 26/6 33/1 35/1 49/24
**continuing [2]** 33/6 34/6

**control [2]** 42/19 62/10
**conversation [3]** 24/19 32/21 33/2
**convicted [5]** 15/19 15/22 71/8
**conviction [6]** 15/23 16/20 21/20 54/15 59/7 59/16
**convictions [1]** 50/4
**convince [1]** 13/5
**copy [3]** 3/22 12/3 12/5
**correct [67]** 10/8 10/9 17/20 18/18 31/23 32/12 32/18 32/22 33/2 33/4 33/9 33/18 33/25 34/4 34/9 34/14 34/19 34/20 34/23 35/5 35/11 35/17 36/3 36/7 36/10 36/11 36/20 36/21 37/4 37/10 37/11 38/24 38/25 39/11 39/15 39/18 39/21 40/4 40/10 41/4 41/20 42/4 42/22 43/5 50/1 51/10 51/11 51/12 54/8 54/9 57/5 57/6 58/5 58/10 58/11 60/16 62/5 63/3 63/4 63/16 63/17 63/24 63/25 64/4 64/17 64/22 78/16
**Corvette [2]** 24/20 33/3
**cost [2]** 18/21 18/22
**could [40]** 3/19 3/20 6/1 8/7 8/24 14/15 15/9 15/11 15/24 15/25 16/7 16/8 18/5 18/14 18/22 40/18 43/1 43/2 50/21 52/4 52/8 53/1 59/13 60/11 62/21 63/18 65/9 65/12 65/21 65/22 70/11 71/7 73/22 73/23 75/18 75/20 75/21 76/8 76/10 77/12
**couldn't [1]** 14/15
**counsel [10]** 3/4 3/20 11/25 13/20 17/14 17/17 43/25 49/15 56/9 59/14
**Count [16]** 4/1 4/2 6/12 6/15 6/22 6/23 7/3 7/4 39/6 44/9 46/7 47/19 72/20 72/23 73/8 73/9
**Counts [1]** 6/8
**couple [2]** 13/18 74/8
**course [2]** 24/21 66/16
**court [65]** 1/1 2/8 2/8 8/1 8/4 8/23 12/4 13/20 14/11 15/9 15/23 17/8 17/13 18/15 19/16 44/5 44/23 44/24 45/6 45/19 45/25 46/12 46/21 47/1 47/13 47/14 47/18 47/23 48/2 48/2 49/22 50/17 50/21 52/3 52/21 53/10 53/25 54/13 55/19 55/20 55/24 56/2 61/7 61/17 61/20 61/24 61/24 62/7 62/14 63/10 63/24 67/20 67/22 70/11 71/16 71/17 71/25 72/5 73/16 76/25 77/2 77/4 77/5 77/7 77/12 77/19
**Court's [1]** 53/24
**Courthouse [1]** 2/9
**courtroom [2]** 13/23 13/25
**covered [2]** 54/7 54/23
**CR [1]** 1/4
**created [2]** 21/1 63/23
**credit [6]** 44/25 45/7 45/14 46/1 63/1 70/20
**crime [3]** 13/6 46/16 53/7
**crimes [3]** 13/8 66/10 67/7
**criminal [20]** 1/20 3/2 3/25 6/10 44/22 45/23 50/3 50/4 51/25 52/1 58/13 62/21 65/24 66/5 66/10 66/13 66/24 66/24 67/20 67/23
**cross [1]** 14/20
**cross-examine [1]** 14/20
**current [4]** 65/3 77/1 77/5 77/13

**D**

**D.C [13]** 6/17 16/5 16/9 22/21 24/2 35/3 35/9 46/7 46/14 51/22 52/8 53/4 67/21
**Darcy [1]** 1/19
**darcy.katzin [1]** 1/22
**dash [1]** 27/18
**date [9]** 9/20 14/4 24/6 32/25 57/11 73/22 76/2 77/2 78/21

**dates [2]** 77/16 77/22
**Daubert [1]** 77/17
**daughter [5]** 24/14 24/24 25/9 32/17 33/7
**David [7]** 1/14 3/3 3/6 24/8 72/19 73/3 73/7
**David.Kent [1]** 1/17
**day [5]** 11/3 25/22 26/11 34/14 76/8
**days [2]** 18/20 33/20
**DC [5]** 1/5 1/16 1/21 2/3 2/10
**deadline [2]** 74/10 74/11
**deadlines [2]** 77/2 77/12
**debriefings [2]** 60/22 66/16
**decide [5]** 8/8 8/24 51/3 54/21 64/16
**decided [1]** 15/8
**decision [8]** 4/22 13/23 14/10 15/10 15/12 61/24 70/5 73/4
**defeating [1]** 63/22
**defect [1]** 16/22
**defendant [67]** 1/7 2/1 3/12 3/22 3/23 4/3 4/5 4/12 21/21 22/17 22/23 23/3 23/7 23/11 24/8 24/9 24/11 24/15 24/17 24/18 24/22 25/1 25/2 25/4 25/4 25/7 25/11 25/13 25/17 25/19 25/23 26/2 26/5 26/10 26/13 26/14 26/21 26/22 26/24 27/1 27/4 27/5 27/6 27/8 27/12 27/19 27/20 27/21 27/24 28/4 28/15 28/21 28/24 29/7 29/19 29/20 30/1 30/15 30/22 31/7 31/9 31/11 36/13 42/18 43/10 73/3 76/15
**defendants [1]** 20/1
**defense [9]** 14/25 23/9 37/12 37/15 38/11 38/23 56/9 57/14 57/16
**defenses [1]** 37/18
**defined [1]** 21/22
**definitely [1]** 71/17
**definition [3]** 20/11 28/17 29/15
**department [4]** 1/19 23/24 30/4 60/8
**departure [3]** 51/8 51/8 53/8
**departures [7]** 50/8 50/14 51/3 52/20 68/19 68/20 70/10
**depending [1]** 44/21
**depends [2]** 45/22 71/1
**depiction [4]** 20/17 20/20 20/22 20/25
**depictions [3]** 28/4 28/18 42/1
**depressant [3]** 10/20 11/14 11/21
**depression [1]** 11/18
**deprive [1]** 70/25
**described [2]** 28/16 29/22
**description [2]** 27/11 39/13
**detective [58]** 23/24 24/1 24/6 24/9 24/10 24/15 24/17 24/19 24/22 24/23 25/1 25/3 25/7 25/8 25/11 25/12 25/14 25/17 25/20 26/3 26/6 26/10 26/14 26/18 26/24 27/2 27/13 27/22 30/4 30/9 30/11 30/20 31/19 32/8 32/9 32/14 33/7 33/11 33/15 33/22 34/2 34/2 34/7 34/12 34/22 35/1 35/8 35/13 35/23 36/2 36/14 36/23 36/24 36/25 37/4 38/2 40/2 75/1
**detective's [1]** 33/25
**determine [5]** 13/24 21/14 40/23 69/2 77/3
**determined [8]** 17/10 17/13 27/21 27/25 40/6 59/10 59/16 70/11
**deterrence [2]** 47/25 47/25
**developed [1]** 48/4
**device [6]** 22/13 28/22 28/25 29/14 29/21 43/1
**did [19]** 7/13 7/19 9/4 20/11 31/21 39/25 43/21 43/21 43/22 48/21 52/5 53/2 53/4 54/14 55/11 58/2 68/6 73/19 75/6
**didn't [10]** 15/6 18/2 31/20 32/4 32/9

**difference [1]** 40/15
**different [15]** 5/4 8/3 43/17 44/7 45/24 46/16 51/4 52/4 53/1 53/6 54/22 54/23 60/2 70/6 77/22
**differently [3]** 47/17 51/20 52/14
**digital [1]** 20/22
**direct [3]** 55/17 59/11 64/20
**directly [4]** 27/16 60/7 62/10 66/13
**disclose [1]** 62/8
**disclosure [2]** 62/12 62/19
**disclosures [1]** 58/3
**discovered [1]** 59/13
**discovery [1]** 58/3
**discuss [12]** 8/15 9/13 12/8 12/17 43/16 50/25 52/24 55/4 55/11 56/10 68/6 69/12
**discussed [24]** 5/4 19/11 24/9 24/22 25/8 25/11 25/17 26/7 26/16 27/4 32/10 33/6 33/24 34/7 36/5 38/11 47/19 50/14 52/14 52/14 58/8 58/10 63/9 67/12
**discussing [2]** 33/6 68/24
**discussion [2]** 34/16 68/24
**discussions [9]** 25/19 25/23 30/6 30/6 30/16 36/17 37/7 43/22 54/3
**dismissed [3]** 6/11 12/4 47/8
**display [2]** 24/20 33/3
**DISTRICT [15]** 1/1 1/1 1/11 13/19 13/22 26/4 26/9 26/15 27/2 27/6 30/13 34/23 36/1 36/7 67/24
**disturbance [1]** 11/13
**Division [3]** 1/20 67/23 68/1
**Divisions [1]** 67/21
**dizziness [1]** 11/7
**do [94]**
**Doctor [1]** 10/6
**doctorate [2]** 9/24 10/5
**does [13]** 3/22 4/3 11/6 13/1 15/18 18/13 38/8 40/17 52/21 71/3 73/18 75/20 76/17
**doesn't [6]** 38/6 52/3 52/23 57/1 67/25 70/12
**doing [12]** 4/20 4/21 11/1 44/19 49/14 51/15 53/11 56/13 62/13 69/21 71/14 73/5
**dollars [2]** 46/15 63/12
**don't [35]** 4/15 5/1 6/1 16/18 17/23 20/2 20/12 20/14 21/2 32/5 39/3 42/14 48/14 49/14 50/4 50/11 50/13 52/1 52/22 53/6 53/16 53/17 57/19 69/19 72/16 73/15 73/19 73/25 74/14 74/21 76/1 76/13 77/9 77/17 77/23
**done [8]** 8/15 52/13 53/2 69/10 75/6 75/8 75/14 76/23
**door [2]** 27/16 39/17
**doubt [8]** 15/18 19/18 21/19 22/22 23/22 41/11 43/10 66/23
**down [3]** 19/20 20/7 73/11
**downward [2]** 68/19 68/20
**Dr [24]** 3/3 3/12 3/14 3/16 3/20 8/23 8/25 31/15 37/20 37/23 38/7 38/14 38/15 38/18 38/19 38/21 38/23 39/5 41/10 42/17 51/9 63/17 69/1 75/24
**drive [5]** 28/2 28/3 40/9 41/16 41/23
**drop [1]** 53/15
**dryer [1]** 27/15
**due [1]** 63/5
**duly [1]** 4/12
**during [11]** 24/21 25/6 25/16 25/25 27/8 27/12 33/21 34/18 44/16 45/20 66/15
**DV7 [1]** 27/18

**E**

**each [12]** 9/2 19/19 20/4 21/18 22/21

**early [1]** 63/18
**easier [2]** 31/17 43/18
**Eastern [1]** 67/24
**educated [1]** 55/9
**effect [2]** 11/6 59/23
**eight [1]** 51/25
**either [10]** 5/15 41/19 42/25 48/13 49/15 51/1 56/9 60/14 65/7 70/10
**electronic [1]** 20/19
**element [11]** 22/16 28/14 29/2 29/15 29/18 30/1 30/8 30/14 30/23 31/6 31/12
**elements [14]** 19/15 19/16 19/19 20/4 20/10 21/18 23/15 23/19 28/11 36/12 39/6 42/17 43/8 43/11
**Eleven [1]** 31/3
**else [10]** 37/24 39/1 54/25 60/7 60/14 60/22 62/11 68/6 76/24 78/6
**elsewhere [1]** 16/9
**emotional [1]** 11/13
**employed [2]** 65/4 65/7
**end [9]** 4/19 19/16 20/9 23/18 35/21 66/2 66/7 75/16 78/11
**enforcement [6]** 23/1 27/9 27/17 30/10 30/12 36/23
**engage [2]** 23/3 30/15 30/20 35/15 36/16 36/24 38/13 66/4 67/8
**engaged [1]** 10/25
**engaging [19]** 20/21 20/24 21/2 24/23 25/8 25/12 25/17 25/21 26/7 28/5 28/18 30/17 33/6 33/22 33/24 34/8 41/18 42/3 44/18
**enhancements [1]** 48/25
**enough [1]** 12/16
**entered [3]** 18/21 59/7 77/1
**entering [6]** 4/19 38/1 66/3 71/20 72/10 72/13
**enticement [1]** 6/8
**enumerated [1]** 44/17
**Esquire [5]** 1/14 1/14 1/19 2/1 2/1
**essence [3]** 35/11 59/21 64/10
**et [1]** 19/4
**evading [1]** 63/22
**evaluate [1]** 63/1
**even [6]** 10/2 37/9 52/7 62/10 67/1 71/6
**evening [6]** 25/20 26/12 27/7 34/12 35/5 36/9
**ever [1]** 11/12
**every [1]** 55/12
**everybody [2]** 74/15 78/7
**everything [6]** 5/13 5/15 5/19 50/17 58/8 67/12
**evidence [15]** 13/25 15/4 15/5 15/7 19/18 19/25 20/1 23/18 23/21 41/7 58/14 58/25 59/13 66/22 67/2
**evidently [1]** 41/5
**examine [1]** 14/20
**examined [1]** 4/12
**except [7]** 16/3 16/9 17/11 19/4 19/9 47/22 57/15
**exception [1]** 61/3
**exceptions [2]** 17/11 18/19
**exchanged [2]** 24/15 32/20
**excuse [1]** 78/6
**exercise [1]** 62/9
**expect [1]** 74/8
**expectation [3]** 63/8 63/13 63/19
**experience [2]** 24/12 32/16
**experts [2]** 14/5 37/22
**explain [4]** 44/13 51/2 51/5 73/16
**explained [1]** 19/2
**explains [1]** 51/14
**explanatory [1]** 56/12

**E**

**explicit [9]** 20/19 20/21 20/25 21/2 28/6
28/19 41/19 42/3 42/22
**explicitly [1]** 29/12
**Exploitation [2]** 1/20 24/1
**expressed [2]** 26/15 35/8
**extending [1]** 77/1
**external [10]** 28/2 28/3 28/22 28/25
29/13 29/21 40/8 41/16 41/22 43/1
**extra [2]** 74/21 75/9

**F**

**fabulous [2]** 26/22 30/22
**factors [2]** 48/3 62/13
**factual [1]** 73/6
**fail [2]** 65/9 66/4
**failing [1]** 65/24
**failure [3]** 15/10 65/11 65/21
**fair [2]** 13/22 48/3
**fairly [1]** 56/11
**false [2]** 6/2 53/10
**falsehood [1]** 62/20
**family [1]** 75/12
**fantasy [1]** 38/11
**far [5]** 9/22 11/13 57/3 74/9 74/10
**fashioning [1]** 48/3
**faster [1]** 75/14
**FBI [1]** 23/25
**FCRR [3]** 2/8 78/15 78/22
**February [19]** 23/23 24/16 25/6 25/15
25/15 26/2 26/5 26/11 26/13 30/3 30/3
30/19 32/24 33/20 34/5 34/6 34/21
34/25 36/15
**February 14th [2]** 34/6 34/21
**February 14th, 2012 [2]** 25/15 26/2
**February 16th [1]** 34/25
**February 16th, 2012 [1]** 26/5
**February 17th [3]** 26/11 26/13 30/3
**February 1st [5]** 23/23 24/16 30/3 32/24
36/15
**February 3rd [2]** 25/6 33/20
**February 6th [2]** 25/15 34/5
**federal [15]** 6/9 6/14 6/18 17/2 17/3
44/10 46/13 46/16 47/19 47/21 53/4
58/13 67/22 71/6 71/6
**felon [1]** 71/8
**felony [2]** 12/25 70/25
**few [1]** 18/19
**fewer [1]** 49/4
**fictitious [15]** 4/3 6/16 6/17 6/25 22/20
23/10 29/25 37/13 38/5 38/12 39/7 46/9
61/11 72/25 73/9
**Fifteenth [1]** 2/2
**fifth [3]** 23/7 31/6 31/12
**file [8]** 18/22 49/23 59/20 61/22 69/13
73/14 74/19 76/20
**filed [2]** 18/20 61/14
**files [13]** 28/1 28/4 28/8 29/8 40/8 40/16
40/18 40/19 41/1 41/3 41/9 42/1 42/7
**filing [2]** 61/15 61/16
**film [1]** 20/17
**finalized [1]** 5/17
**financial [10]** 62/12 62/19 62/20 63/2
63/23 64/2 69/17 75/4 75/10 75/13
**find [4]** 39/4 43/7 43/17 73/7
**finding [4]** 4/18 4/20 19/17 70/25
**finds [1]** 45/19
**fine [15]** 7/3 7/3 17/6 44/11 46/10 50/6
65/13 72/18 73/24 74/3 74/17 76/1
76/15 76/18 77/11
**fines [2]** 63/5 63/6
**finish [1]** 7/23
**firearm [2]** 71/5 71/10

**first [17]** 3/17 4/13 8/15 14/6 21/16
27/21 22/3 22/5 22/14 22/23 28/12
28/12 28/14 29/14 29/15 30/1 31/18
**fit [4]** 21/6 21/8 22/14 49/6
**five [3]** 44/12 46/9 62/22
**fixed [1]** 75/14
**floating [1]** 67/16
**FOIA [1]** 60/6
**follow [2]** 61/25 66/4
**following [7]** 23/22 25/22 26/8 26/11
34/14 35/3 75/21
**follows [1]** 4/13
**Foradori [3]** 2/8 78/15 78/22
**Force [1]** 24/1
**forced [2]** 15/6 71/19
**forecast [2]** 27/4 36/6
**forego [2]** 16/15 58/3
**foregoing [2]** 38/23 78/16
**foreign [10]** 21/25 22/3 22/9 22/11 28/10
29/3 29/6 29/11 29/12 38/16
**forensic [3]** 27/19 27/24 39/25
**forfeited [1]** 64/13
**forfeiting [1]** 64/5
**forfeiture [5]** 6/10 17/6 64/15 64/17
64/21
**form [4]** 23/18 58/19 59/12 62/12
**formal [1]** 3/23
**forms [1]** 59/22
**forth [3]** 20/14 32/11 63/10
**forward [9]** 8/9 12/19 15/3 15/22 18/2
48/16 52/24 70/4 77/25
**found [2]** 40/1 44/23
**four [6]** 23/8 31/7 37/9 41/14 49/2 49/4
**fourth [4]** 1/15 23/5 30/23 30/23
**frankly [2]** 43/2 68/22
**free [4]** 66/8 66/12 72/11 73/6
**Freedom [1]** 60/10
**frequented [1]** 24/4
**Friday [8]** 25/20 26/11 26/13 34/12 35/4
35/7 74/2 76/9
**front [9]** 8/13 16/17 20/14 26/21 31/16
35/16 43/13 52/18 63/15
**fulfill [1]** 64/2
**full [1]** 18/21
**fully [5]** 10/25 24/13 32/16 66/10 73/3
**fund [1]** 46/16
**fundamental [1]** 16/22
**further [7]** 26/20 26/22 27/25 47/9 57/1
57/2 58/3
**furthest [1]** 64/2 71/9

**G**

**garage [2]** 27/16 39/17
**gave [2]** 18/3 34/2
**gay [1]** 32/5
**generally [3]** 8/1 8/12 10/17
**generated [4]** 20/18 20/23 21/10 21/11
**get [32]** 8/15 31/21 43/12 44/25 45/7
45/14 45/25 48/11 48/12 48/14 49/23
61/23 63/1 68/4 69/3 69/13 69/22 69/22
70/20 71/7 71/7 74/15 74/25 75/9 75/13
75/14 76/13 77/2 77/7 77/8 77/8 77/24
**gets [1]** 61/23
**girl [8]** 25/2 25/4 30/7 31/1 31/4 33/12
33/16 36/17
**girlfriend [1]** 33/8
**girlfriend's [4]** 24/13 24/24 25/9 32/17
**girls [3]** 45/5 28/18 42/2
**give [8]** 10/17 13/10 15/9 19/8 69/14
74/21 75/24 76/2
**given [1]** 73/21
**gives [3]** 17/3 56/14 70/20
**giving [10]** 12/23 16/3 16/25 17/1 17/4
18/6 19/1 37/21 64/13 65/6

**glasses [1]** 39/16
**go [36]** 3/22 6/5 8/2 8/9 12/18 12/22
13/15 16/4 16/18 19/14 19/22 20/2 20/7
20/10 31/17 39/24 43/15 43/21 43/23
44/5 44/7 44/8 47/13 48/16 48/17 50/23
54/18 55/8 56/15 62/13 64/14 68/17
69/20 71/2 73/11 77/18
**go-round [1]** 68/17
**goes [4]** 46/15 48/6 50/24 69/7
**going [36]** 4/17 4/21 5/2 5/12 6/5 6/11
10/2 12/24 14/5 19/13 19/13 32/9 37/19
38/2 39/24 43/15 44/4 44/6 45/7 47/17
52/20 52/24 53/14 54/20 59/15 60/13
64/1 69/13 70/4 74/10 74/19 74/20
76/4 77/3 77/4 77/24
**gone [15]** 8/13 9/22 23/20 38/3 39/18
42/9 43/3 47/11 53/23 58/1 59/5 67/14
68/5 74/6 77/18
**Goober [1]** 27/10
**good [9]** 3/7 3/8 3/9 3/11 3/13 3/15 3/15
70/19 76/7
**got [3]** 45/13 71/15 77/17
**Government [40]** 1/4 1/14 6/20 7/6 8/1
8/8 8/24 13/4 13/20 19/14 19/18 19/25
19/25 21/19 22/16 22/21 39/4 41/11
42/12 42/15 43/8 48/12 49/23 51/14
52/23 54/12 54/17 54/19 56/5 56/9 57/1
61/23 64/11 66/12 66/20 68/8 70/13
73/14 73/20 75/24
**Government's [6]** 15/17 23/21 39/5 41/7
66/8 71/24
**Grand [2]** 13/3 13/5
**grant [1]** 49/22
**grape [6]** 25/24 27/10 27/10 27/12 34/17
39/11
**grounds [1]** 58/23
**group [1]** 51/25
**guess [1]** 50/1
**guideline [17]** 17/13 17/16 17/19 17/24
48/9 50/8 52/5 52/5 53/1 59/24 73/16
**guidelines [17]** 18/5 45/5 46/3 47/16
48/20 50/11 50/20 50/22 51/4 51/9
51/23 52/7 59/23 68/5 69/2 75/5 75/11
**guilt [4]** 13/24 15/8 15/12 15/18
**guilty [31]** 4/5 4/24 12/6 12/24 13/16
14/7 15/16 16/3 16/21 19/1 19/1 19/7
38/22 57/10 57/19 58/5 58/14 58/22
66/9 70/24 71/14 71/20 72/4 72/11
72/13 72/14 72/20 72/21 72/22 73/1
73/8
**Guy [2]** 24/8 31/22

**H**

**had [53]** 5/24 8/22 10/1 11/20 12/7
12/16 12/20 14/13 17/18 21/3 21/24
22/1 22/2 22/8 22/10 22/10 23/20 24/11
27/21 28/2 28/9 29/3 29/5 29/5 29/9
29/16 30/2 30/6 32/15 32/15 35/9 38/3
39/13 39/18 40/9 41/2 41/2 41/6 42/8
42/9 42/19 42/21 44/23 45/1 45/14 53/3
57/12 60/1 60/22 68/9 68/24 68/24
76/25
**hand [1]** 4/8
**handle [1]** 10/4
**happened [2]** 61/12 75/12
**happens [1]** 8/1
**has [35]** 3/22 11/14 13/2 18/20 19/25
19/25 20/25 42/14 43/8 43/10 46/2
46/25 47/1 47/23 49/8 49/16 49/16
49/23 50/10 54/19 59/9 61/12 63/11
69/9 69/18 69/19 70/14 71/12 71/16
71/19 72/3 72/7 73/16 74/16 75/12
**have [140]**
**haven't [4]** 11/20 54/22 61/15 63/21

## H

**having [5]**  4/12 8/10 32/10 35/2 38/13
**he [22]**  24/11 24/12 26/20 29/20 30/2
31/9 31/10 32/9 32/15 32/15 32/16
35/14 35/15 35/20 38/8 38/10 38/22
40/1 41/11 42/14 42/15 63/8
**he's [3]**  37/20 73/5 73/5
**health [1]**  11/21
**hear [2]**  77/9 77/23
**HEARING [1]**  1/10
**hearings [1]**  77/17
**held [3]**  9/9 15/11 62/10
**help [2]**  15/24 31/16
**helpful [4]**  38/7 73/13 73/14 73/18
**here [13]**  3/17 20/2 38/5 38/11 41/10
47/7 54/4 54/20 56/8 56/16 69/4 72/5
76/21
**Hertzfeld [2]**  1/14 3/10
**high [1]**  10/19
**higher [1]**  69/9
**him [4]**  3/18 3/19 16/17 68/10
**his [14]**  24/12 24/13 25/13 27/7 27/13
28/23 32/17 38/4 38/18 38/23 55/25
57/3 73/6 73/6
**history [4]**  50/3 50/5 51/25 52/1
**HITE [52]**  1/6 3/3 3/12 3/14 3/16 3/20
4/11 8/24 8/25 24/8 24/9 24/11 24/15
24/17 24/18 24/22 25/1 25/3 25/4 25/4
25/7 25/11 25/13 25/17 25/19 26/2 26/5
26/10 26/13 26/14 26/21 26/22 26/24
27/1 27/4 27/6 27/12 27/21 28/3 31/15
37/20 38/15 38/22 41/10 42/11 57/5
63/18 69/1 72/19 73/3 73/8 75/24
**Hite's [8]**  25/23 27/5 27/8 27/19 27/20
27/24 38/18 39/5
**hold [1]**  71/4
**home [6]**  27/7 27/8 27/19 39/9 39/21
56/15
**Honor [29]**  3/9 3/11 3/13 7/12 8/18 12/1
12/9 14/12 21/4 21/5 23/15 32/13 37/25
38/15 39/3 40/13 43/14 44/3 54/9 58/11
61/3 63/17 74/3 75/22 76/16 76/25
77/11 78/4 78/8
**HONORABLE [1]**  1/10
**hope [2]**  35/20 58/8
**hoping [1]**  26/23
**hours [1]**  10/15
**how [18]**  4/3 7/10 9/18 9/22 10/4 14/11
23/14 43/21 59/16 62/13 64/16 71/2
72/19 72/23 74/1 74/6 76/8 76/19
**HP [3]**  27/17 27/20 39/20
**hundred [2]**  41/14 46/15

## I

**I'd [2]**  53/22 74/21
**I'll [11]**  8/2 19/22 20/2 36/13 43/7 44/8
47/18 48/16 69/4 76/2 77/8
**I'm [36]**  4/17 5/1 5/2 5/12 6/5 8/12 8/14
8/19 10/1 10/11 10/21 31/4 32/9 39/23
40/13 43/15 44/4 44/6 47/16 51/10
51/16 53/14 53/15 58/16 58/17 59/21
68/15 68/19 71/14 72/18 73/2 73/13
74/11 75/1 77/10 77/24
**I've [13]**  5/24 8/13 11/22 19/2 19/11
47/11 49/7 53/23 58/1 67/14 67/14 68/5
70/9
**idea [2]**  74/6 75/23
**identifiable [1]**  21/1
**identified [3]**  24/8 61/9 61/13
**identify [2]**  3/4 74/6
**illegal [3]**  17/12 17/15 18/3
**illness [1]**  11/13
**image [7]**  20/22 20/23 21/4 21/22 28/16

**images [30]**  14/6 20/18 20/25 21/7 22/13
28/16 28/21 40/15 40/17 40/19 40/22
40/24 41/5 41/8 41/9 41/12 41/14 41/23
42/6 42/7 42/21 42/21 43/4 49/4 49/6
49/9 49/10 49/13 49/17 64/9
**immediately [1]**  63/6
**impartial [1]**  13/22
**impeach [1]**  58/20
**important [1]**  10/3 69/10
**importantly [3]**  6/19 48/8 66/12
**impose [1]**  44/24
**imposed [2]**  45/13 63/23
**imprisonment [1]**  17/6
**incarceration [3]**  7/14 45/20 62/22
**inclination [1]**  69/4 69/24 74/13
**inclined [4]**  8/12 8/14 73/13 74/11
**include [4]**  44/18 51/21 56/20 65/6
**included [6]**  12/11 25/19 25/23 28/4
34/16 42/1
**includes [1]**  71/24
**including [9]**  17/5 22/1 22/4 29/4 29/7
29/17 64/20 66/11 66/15
**incriminate [1]**  15/7
**incriminating [1]**  60/20
**indicate [1]**  51/16
**indicated [7]**  8/22 26/18 26/20 32/14
49/16 60/23 67/14
**indicates [1]**  30/11
**indicating [1]**  49/24
**indicted [1]**  13/2
**indictment [6]**  6/8 12/3 12/11 13/2 13/4
47/8
**indirectly [2]**  62/10 66/13
**indistinguishable [1]**  20/24
**individual [1]**  24/7
**individuals [2]**  24/3 24/4
**ineffective [3]**  17/14 17/17 59/14
**inference [1]**  15/12
**information [19]**  3/18 3/22 3/23 6/12
9/25 12/5 12/11 13/1 28/13 29/24 48/8
53/3 58/4 60/10 60/21 65/8 66/14 75/10
76/5
**informed [1]**  24/11
**initial [1]**  12/24
**Initially [1]**  36/16
**innocence [1]**  13/24
**innocent [1]**  15/17
**instance [4]**  16/9 30/4 30/10 30/25
**instances [2]**  5/2 59/24
**instant [16]**  24/7 24/16 24/18 24/21 25/2
25/6 25/16 26/6 27/23 32/20 33/1 33/12
33/21 34/6 35/2 40/3
**instead [1]**  35/25
**instruction [1]**  15/10
**intended [2]**  23/10 37/14
**intent [3]**  38/18 38/19
**intention [1]**  38/6
**interest [5]**  24/5 24/10 32/3 32/10 62/9
**Internet [1]**  22/9
**interrupt [1]**  7/12
**interstate [11]**  21/25 22/3 22/8 22/11
28/10 29/3 29/6 29/11 29/16 42/8 42/24
**investigation [1]**  60/9
**involuntary [1]**  16/21
**involved [1]**  71/25
**involves [2]**  9/11 20/21
**involving [1]**  42/22
**is [210]**
**isn't [5]**  17/22 19/3 22/6 39/1 71/25
**issue [11]**  8/4 9/12 16/7 30/25 31/1 37/6
38/5 38/19 55/25 69/11 74/25
**issues [3]**  11/25 43/17 56/12
**it [184]**

**it's [45]**  8/9 10/3 15/13 16/6 16/18 16/18
15/18 17/22 17/23 17/24 22/6 23/9 32/5
32/6 40/13 40/20 40/20 40/21 43/18
44/22 44/22 45/22 45/23 46/1 46/11
47/24 50/1 50/25 51/2 51/7 52/3 55/2
57/17 57/18 58/15 58/17 60/11 60/23
66/24 69/9 69/11 70/25 73/20 76/13
76/20
**items [2]**  22/17 29/19 43/4
**its [1]**  66/8
**itself [4]**  8/5 60/13 73/12 76/8

## J

**jail [11]**  6/23 6/25 7/8 7/23 44/11 44/14
46/10 46/23 50/6 65/12 70/16
**January [1]**  9/21
**January the [1]**  9/21
**jar [4]**  25/24 27/10 27/14 34/17
**jelly [5]**  25/25 27/11 27/12 34/17 39/11
**JUDGE [1]**  1/11
**judgment [1]**  18/20
**judgments [1]**  59/12
**July [2]**  12/19 14/4
**July 6th [1]**  14/4
**jurisdiction [1]**  65/3
**jurisdictional [2]**  16/7 23/25
**jurors [2]**  13/5 13/21
**jury [4]**  13/4 13/16 15/10 71/4
**just [18]**  5/9 6/5 8/20 11/16 19/2 19/24
23/16 23/18 26/16 31/17 43/23 45/16
68/23 69/6 69/11 75/7 77/13 77/23
**justice [3]**  1/19 53/11 66/12
**justification [2]**  73/15 73/21
**justifying [1]**  51/14

## K

**Katzin [1]**  1/19
**keep [4]**  4/15 65/2 73/17 77/23
**Kent [2]**  1/14 3/6
**key [4]**  44/24 45/6 45/25 67/14
**kind [3]**  10/14 41/23 71/5
**kinds [1]**  48/1
**knew [9]**  17/24 22/17 28/3 28/25 29/19
29/21 41/15 41/22 43/3
**know [31]**  5/9 5/17 9/4 9/25 10/3 11/7
13/18 20/12 21/3 25/5 31/20 32/4 33/17
36/22 38/12 40/19 42/19 50/13 52/19
53/8 56/10 60/12 70/10 70/15 73/15
74/9 74/11 76/10 77/7 77/12 78/5
**knowing [1]**  14/11
**knowingly [6]**  4/19 21/21 28/15 42/18
42/19 65/9
**knowledge [2]**  40/15 42/15
**known [2]**  32/6 42/20
**KOLLAR [1]**  1/10
**KOLLAR-KOTELLY [1]**  1/10
**KOTELLY [1]**  1/10

## L

**laid [1]**  29/12
**lapsed [1]**  57/12
**laptop [5]**  27/17 27/20 27/24 39/21 64/5
**large [1]**  21/18
**larger [1]**  41/9
**last [5]**  10/15 18/11 50/12 66/2 68/17
**later [10]**  9/13 24/8 24/16 25/4 26/4
32/24 33/21 34/23 57/10 58/22
**laundry [1]**  27/15
**law [8]**  15/16 17/2 23/1 27/9 27/17 30/10
30/12 36/23
**lawsuit [1]**  66/23
**lawyer [16]**  12/8 14/14 14/19 15/24
43/22 48/11 52/15 54/12 55/11 57/24
60/18 65/16 67/13 71/24 71/24 72/17

## L    Case 1:12-cr-00065-CKK

**lawyers [1]** 5/8
**leaned [1]** 49/7
**leaning [1]** 4/16
**least [12]** 7/5 13/5 16/8 27/25 28/23 40/7 49/3 53/5 54/23 61/7 61/8 71/23
**left [2]** 40/25 68/13
**legal [2]** 43/25 44/19
**legally [1]** 64/17
**legitimate [1]** 35/10
**less [6]** 23/5 30/24 37/8 38/5 38/14 70/11
**let [20]** 5/9 9/17 12/22 13/15 16/4 16/17 25/5 43/12 44/13 47/7 47/16 52/17 57/20 62/25 68/4 75/8 75/15 75/16 76/20 78/6
**let's [2]** 8/15 21/15
**letter [15]** 5/3 5/7 6/6 9/11 16/17 16/23 17/2 43/13 43/13 44/8 52/17 53/5 53/14 70/6 72/5
**level [15]** 48/21 49/22 53/9 66/23 68/11
**license [1]** 71/7
**life [1]** 44/12
**like [8]** 9/4 23/15 26/23 53/9 54/14 54/23 56/11 75/16
**limitations [4]** 46/2 57/9 57/12 57/17
**limited [19]** 19/4 24/11 32/16 50/16 58/19 60/12
**line [4]** 43/25 43/25 67/15 67/15
**line-by-line [1]** 43/25
**lines [3]** 42/10 42/25 43/3
**link [1]** 19/15
**Lisa [3]** 2/8 78/15 78/22
**listen [2]** 19/20 19/21
**listing [1]** 48/15
**litigated [1]** 61/21
**little [5]** 9/7 26/16 46/16 47/17 74/22
**live [2]** 65/3 71/1
**lived [1]** 71/7
**local [1]** 67/22
**located [3]** 27/14 28/2 40/8
**locked [2]** 11/15 69/18
**long [1]** 57/4
**look [17]** 20/11 48/12 48/23 50/3 51/23 51/25 56/11 61/17 61/20 69/17 69/23 73/18 73/19 74/16 74/24 75/15 76/2
**looked [2]** 54/17 75/6
**looks [3]** 45/25 48/2 75/16
**lot [2]** 56/22 71/24
**lower [1]** 60/2
**lowest [1]** 51/17

## M

**machine [2]** 27/15 39/17
**made [16]** 9/7 20/18 22/23 22/25 30/2 30/5 30/9 30/20 36/13 36/14 58/18 58/21 66/14 68/14 71/13 72/3
**mailed [7]** 22/2 22/10 28/9 29/6 29/10 29/10 42/8
**make [33]** 4/18 4/20 4/23 5/5 5/13 5/14 5/19 5/25 7/13 7/19 13/22 19/17 19/23 20/12 36/15 38/8 40/17 48/16 54/13 55/9 58/9 60/11 61/18 62/6 64/1 68/23 69/1 70/1 70/5 74/14 74/15 77/14 77/18
**makes [4]** 31/17 48/12 59/22 61/24
**making [5]** 6/2 10/22 14/10 47/2 73/4
**man [1]** 55/9
**mandatory [1]** 61/7
**manner [2]** 17/9 59/9
**March [3]** 28/1 28/24 40/7
**March 2011 [3]** 28/1 28/24 40/7
**masochistic [2]** 49/2 49/5
**matched [1]** 39/13

**matches [1]** 53/5
**matching [1]** 27/11
**material [1]** 49/1
**materials [9]** 22/2 22/10 28/9 29/5 29/9 29/13 42/7 64/8 66/15
**matter [6]** 17/25 21/22 23/20 28/15 69/11 78/17
**matters [1]** 76/12
**maximum [11]** 17/12 18/4 44/6 44/10 44/11 44/11 45/4 46/9 46/10 47/20 51/7
**may [25]** 3/21 5/3 9/11 20/7 40/14 41/5 41/6 43/16 52/13 53/8 53/9 54/21 54/21 61/9 61/25 69/17 70/25 74/18 74/19 74/23 75/8 76/9 76/20 77/3 77/9
**May 21st [2]** 76/20 77/3
**May 6th [4]** 74/18 74/19 75/8 77/9
**maybe [1]** 76/5
**me [30]** 5/2 5/9 9/17 10/17 12/22 13/15 16/4 16/17 20/15 23/15 23/16 25/5 31/17 43/12 44/13 47/7 47/16 52/17 68/4 72/17 73/14 73/23 75/8 75/15 75/16 76/2 76/20 77/9 77/23 78/6
**mean [5]** 10/19 40/20 43/23 74/8 74/12
**means [11]** 20/16 20/19 21/25 22/3 22/9 29/4 29/7 29/17 42/20 42/25 75/9
**meant [1]** 9/2
**mechanical [2]** 2/24 20/19
**medication [4]** 10/15 10/18 10/20 10/20
**Medicine [1]** 10/6
**meet [8]** 26/3 27/2 29/14 34/13 34/23 36/2 36/19 39/5
**meeting [12]** 24/25 25/10 25/18 25/20 26/8 26/12 33/8 33/23 34/9 34/12 35/3 35/5
**meets [2]** 19/19 23/15
**memorandum [1]** 73/15
**memory [1]** 49/15
**men [3]** 28/7 28/20 42/4
**mental [2]** 11/13 11/21
**mention [1]** 8/17
**mentioned [1]** 27/12
**message [2]** 24/7 31/22
**messenger [15]** 24/16 24/18 24/22 25/2 25/7 25/16 26/7 27/23 32/21 33/1 33/12 33/21 34/7 35/2 40/3
**met [5]** 20/12 28/17 31/13 37/4 43/8
**Metropolitan [2]** 23/23 30/4
**mic [1]** 4/15
**might [8]** 8/20 54/25 55/5 58/21 59/23 63/15 68/10 70/5 75/23
**milchev.com [1]** 2/4
**MILLER [1]** 2/2
**mind [7]** 5/21 10/22 11/1 21/3 67/13 68/23 77/23
**minimum [2]** 63/11 65/2
**minor [4]** 6/9 20/21 20/24 21/2
**minors [6]** 24/10 32/11 49/1 49/1 49/17 55/17
**minute [1]** 76/21
**mistake [1]** 7/13
**model [3]** 27/18 27/20 39/23
**modification [1]** 59/12
**modifications [1]** 55/6
**modified [1]** 21/1
**modify [1]** 59/8
**monitoring [1]** 24/3
**monthly [1]** 63/11
**months [12]** 6/21 6/22 6/23 6/25 7/20 7/20 7/21 50/5 51/11 52/2 52/2 69/21
**more [15]** 6/6 13/5 23/8 26/17 31/7 37/8 40/18 41/6 44/6 45/4 46/11 47/20 51/6 52/21 70/10
**morning [3]** 3/7 3/8 3/9 3/11 3/13 3/15 3/16 11/5 27/1 35/25 75/19 76/12

**mest [5]** 27/5 54/24 55/19 56/20 57/15
**motion [3]** 59/6 59/20
**motions [3]** 14/4 14/8 37/22
**move [3]** 47/7 47/16 51/22
**moved [2]** 36/18 76/13
**moving [5]** 32/7 39/8 54/16 58/12 66/2
**MPD [1]** 23/25
**MPD/FBI [1]** 23/25
**Mr [2]** 58/10 68/6
**much [3]** 54/14 56/16 73/25
**multi [1]** 23/25
**multi-jurisdictional [1]** 23/25
**multiple [1]** 41/3
**murder [1]** 57/15
**must [2]** 22/22 74/11
**mutual [2]** 24/10 32/10
**my [20]** 6/1 12/24 16/4 16/15 16/23 20/8 40/14 41/9 43/25 68/4 68/17 68/23 69/4 69/24 72/8 73/18 74/12 75/22 76/2 76/8

## N

**name [6]** 24/7 24/20 31/22 32/10 33/3 65/6
**names [2]** 24/16 32/21 65/7
**narrow [1]** 50/9
**nature [2]** 32/6 73/4
**near [3]** 27/7 39/16 39/17
**need [24]** 3/18 4/18 4/19 5/18 20/4 26/16 39/2 46/13 50/25 51/1 51/2 51/4 52/24 56/10 61/16 61/20 66/25 69/13 69/25 70/4 70/14 73/25 75/9 75/9
**needs [9]** 19/17 48/1 50/13 57/2 61/7 61/17 61/25 70/2 75/7
**negotiations [1]** 71/23
**neither [2]** 9/4 70/13
**nephew [17]** 24/12 25/13 25/18 25/21 26/1 26/8 26/20 26/25 27/3 32/15 33/25 34/19 35/3 35/15 36/2 36/18 55/24
**networking [2]** 24/3 31/25
**never [3]** 23/10 37/14 38/13
**new [19]** 1/21 8/14 12/5 13/1 38/17 44/19 44/22 44/24 45/1 45/3 45/13 45/14 45/15 45/22 46/1 66/24 69/7 69/10 77/21
**newly [1]** 59/13 68/21
**next [4]** 27/14 27/16 60/5 64/25
**niece [1]** 55/24
**night [3]** 26/8 35/3 36/1
**nine [1]** 41/14
**no [26]** 1/4 9/2 9/7 11/8 11/9 11/9 11/11 12/1 12/12 15/11 17/21 21/4 37/25 39/3 44/3 46/11 55/17 57/1 57/1 64/1 67/18 71/17 71/18 71/21 72/6 72/9
**nobody [1]** 52/20
**Norfolk [1]** 10/13
**not [87]**
**nothing [3]** 67/16 68/22 78/6
**notice [2]** 18/19 64/14
**notified [1]** 61/13
**now [33]** 5/25 6/5 7/10 13/15 14/3 16/2 17/11 17/18 18/25 36/22 37/18 45/3 47/11 48/19 48/22 49/13 50/7 51/22 53/7 53/20 54/10 54/16 54/21 55/16 55/22 67/4 67/11 70/9 70/22 70/24 72/3 77/2 77/13
**number [5]** 25/14 27/18 27/20 27/21 34/3
**NW [3]** 1/15 2/2 2/9

## O

**o'clock [1]** 76/20
**oath [1]** 6/1
**object [1]** 55/4
**objection [1]** 48/13

86

**O**

objections [3]  48/12 48/14 48/15
obligation [1]  63/18
obligations [5]  63/2 63/23 64/3 66/4
66/8
Obscenity [1]  1/20
obstructing [1]  53/11
obstruction [1]  66/11
obviously [17]  7/21 11/24 31/18 37/8
38/4 49/13 51/6 54/10 54/11 55/2 61/10
63/17 64/8 66/22 67/5 70/20 77/19
occurred [1]  31/10
October [3]  27/25 28/24 40/7
October 2009 [3]  27/25 28/24 40/7
of 2012 [3]  30/3 30/19 34/5
off [4]  11/22 48/23 53/6 60/22
offender [5]  56/20 64/24 65/2 65/11
65/19
offense [37]  19/14 19/16 19/23 21/16
22/19 28/12 31/13 38/22 39/6 43/8
43/11 44/10 44/22 45/23 46/8 46/13
46/14 46/17 47/19 47/24 48/6 48/20
48/23 48/24 51/22 51/24 53/9 57/14
62/21 65/10 65/24 67/22 67/22 68/10
68/21 70/25 71/6
offenses [8]  19/15 19/19 20/4 28/12
31/10 47/10 57/15 70/22
offer [1]  12/17
office [10]  1/15 24/2 48/5 53/10 56/1
63/1 67/21 67/23 67/25 71/4
officer [6]  23/1 30/10 30/12 35/11 36/23
75/6
offices [1]  68/1
Official [1]  2/8
oh [4]  9/2 49/9 49/9 77/15
okay [92]
old [50]  9/18 24/12 24/13 24/24 25/2
25/3 25/9 25/13 25/18 25/21 25/25 26/8
26/19 26/20 26/25 27/3 30/7 30/7 30/17
30/18 30/25 31/1 31/2 31/4 31/5 31/10
31/11 32/15 32/17 33/7 33/12 33/16
33/23 33/25 34/8 34/14 34/18 35/3
35/15 35/24 36/2 36/17 36/18 37/1 37/3
37/7 37/7 45/3 69/8 69/9
old's [1]  26/21
older [3]  23/8 31/7 37/9
once [1]  5/21
one [54]  4/1 5/14 5/19 6/8 6/12 6/22 7/3
7/18 7/23 7/24 8/20 9/4 14/5 14/15
15/24 15/25 17/18 17/19 17/22 21/3
22/5 22/6 38/17 40/18 41/6 43/18 44/9
45/3 46/22 47/19 48/4 48/5 48/19 50/5
52/9 53/4 53/5 55/8 55/12 55/16 56/1
56/17 58/2 58/15 60/5 64/25 69/8 69/9
69/10 71/7 72/20 73/8 73/13 75/6
ones [5]  54/4 54/24 55/3 55/25 66/15
only [10]  13/23 45/17 45/19 56/19 58/14
58/20 66/21 66/25 67/20 76/9
open [1]  72/5
operates [1]  8/12
operating [1]  24/2
opportunity [2]  12/7 54/12
opposed [3]  40/15 40/24 51/7
option [1]  47/2
options [2]  12/21 12/21
orally [1]  5/15
order [14]  13/21 18/16 20/5 20/12 21/20
32/21 36/6 52/25 61/18 62/7 63/11 74/5
77/17 77/16
ordering [1]  62/14
orders [1]  13/3
ordinarily [3]  16/13 50/18 58/19
original [11]  13/2 32/25 35/4 38/8 38/10

46/5 47/8 54/14 54/15 56/16 75/6
originally [4] 6/7 7/23 48/5 48/21
other [46]  5/3 5/20 7/1 7/24 9/5 11/20
11/21 13/4 14/24 16/22 19/10 20/19
28/7 28/20 35/21 37/18 37/18 39/8 42/4
42/9 43/2 46/22 47/22 51/3 52/10 54/20
56/18 58/18 58/20 58/21 58/23 59/10
61/10 61/12 65/8 66/10 67/5 67/25 68/1
68/1 68/8 68/12 69/25 71/15 71/25 72/4
others [4]  47/25 54/7 55/1 75/1
otherwise [4]  18/6 59/8 59/14 64/12
our [2]  77/1 77/13
out [31]  5/14 12/5 13/5 17/7 17/7 18/12
18/13 19/5 24/2 29/12 38/7 39/18 45/5
46/3 47/10 47/22 48/6 48/9 51/2 54/4
54/18 61/17 61/18 62/13 64/21 67/16
68/13 70/14 74/6 75/23 76/9
outside [2]  51/9 54/6
over [20]  4/16 6/5 16/18 19/14 42/9
42/19 42/25 43/3 43/15 43/19 43/24
47/11 47/13 58/1 59/5 62/9 63/15 63/16
67/14 68/5
own [9]  4/22 14/23 15/4 15/7 51/23
67/13 71/9 72/11 73/6

**P**

P.M [1]  78/11
page [13]  16/19 47/11 47/16 48/22
52/19 53/21 53/21 53/23 54/16 55/17
58/12 59/6 64/25
pair [1]  27/14
Palchak [36]  23/24 24/1 24/6 24/9 24/11
24/15 24/17 24/19 24/22 25/1 25/3 25/7
25/11 25/14 25/17 25/20 26/3 26/6
26/10 26/14 26/18 26/24 27/2 27/13
27/22 30/5 30/10 30/11 30/20 31/19
32/8 32/14 36/14 36/23 40/2 75/1
Palchak's [4]  24/23 25/9 25/12 33/8
papers [2]  76/21 76/23
paragraph [4]  16/18 16/19 47/12 53/23
parameters [1]  46/2
parole [2]  70/14 70/15
part [16]  4/18 5/18 10/3 23/25 31/8
31/18 34/11 41/9 44/25 45/7 45/25
49/18 67/7 67/17 68/13 70/16
particular [8]  21/3 21/4 37/15 47/4 48/22
50/12 51/9 55/21
particularly [1]  43/17
parts [2]  53/14 67/14
party [1]  62/11
past [3]  11/23 61/15 77/2
PAUL [7]  1/6 3/3 4/11 24/8 72/19 73/3
73/7
Pause [2]  75/17 76/22
pay [3]  18/21 46/13 63/8
payment [4]  63/11 63/15 63/15 63/16
payments [1]  63/6
peanut [5]  25/24 27/10 27/11 34/17
39/11
penalties [4]  44/5 45/24 46/18 48/7
penalty [1]  62/22
pending [1]  14/4
penetration [2]  49/8 49/17
penis [1]  26/21
people [4]  32/3 57/19 74/6 75/19
period [4]  44/16 44/25 65/2 69/20
perjury [2]  6/2 66/11
person [3]  13/7 31/19 35/21
personal [2]  9/17 42/14
perspective [1]  68/23
pertain [1]  60/9
phone [4]  25/13 34/3 34/22 35/8
photo [5]  25/1 25/4 33/11 33/16 33/17
photograph [1]  20/17

photos [1]  40/25
pick [1]  59/17
picture [1]  20/17
place [4]  27/1 35/25 43/18 49/25
places [2]  44/7 65/7
planned [1]  38/13
plans [2]  26/3 34/22
plea [55]  1/10 3/17 4/6 4/18 4/19 4/25
5/3 6/6 6/19 8/2 8/4 8/4 8/9 8/15 8/16
8/23 8/25 9/1 9/3 9/11 10/1 12/4 12/17
15/16 16/9 16/17 16/21 17/2 19/1 38/2
43/13 52/22 52/23 52/23 53/5 54/11
57/10 57/12 57/18 58/5 58/14 58/22
63/10 64/21 66/9 71/14 71/20 72/4 72/5
72/10 72/13 73/7 73/7 73/12 77/4
plead [7]  4/4 13/16 19/1 19/7 57/19
72/20 72/23
pleading [10]  4/24 6/12 12/6 12/23
12/25 14/7 16/2 38/22 70/24 71/14
pleads [1]  4/5
pleas [1]  70/3
please [3]  3/4 4/9 5/5
plenty [1]  12/20
point [16]  6/20 9/13 10/23 14/7 19/13
35/14 44/2 47/15 49/23 50/14 52/19
61/8 69/24 70/14 71/6 71/23
points [6]  28/23 49/1 49/3 49/3 49/4
49/25
police [3]  23/24 30/4 35/11
Pollack [4]  2/1 3/12 58/10 68/6
polygraph [1]  56/19
pornography [34]  4/2 6/13 6/23 20/11
20/16 21/17 21/22 21/24 22/1 22/8
22/18 28/1 28/4 28/14 28/16 28/17 29/1
29/3 29/5 29/9 29/16 29/20 29/22 40/8
41/16 41/17 42/21 43/5 43/9 44/10
61/10 72/20 73/8 74/25
portrays [1]  49/2
position [3]  55/3 55/4 77/3
possess [2]  71/5 71/10
possessed [5]  21/21 28/15 41/12 42/18
42/18
possession [9]  4/1 6/13 6/22 21/17
28/13 43/8 44/9 72/20 73/8
possible [1]  55/2
potential [5]  18/16 24/24 25/10 33/8
54/5
potentially [1]  37/23
practical [1]  17/25
practice [1]  10/7
precisely [1]  5/6
precluded [1]  56/13
predated [1]  11/15
premixed [3]  25/25 27/12 34/18
prepare [1]  15/24
preponderance [2]  66/22 67/1
prepubescent [9]  24/5 28/5 28/5 28/18
32/3 41/18 42/1 42/2 49/1
present [9]  3/18 13/19 14/23 15/4 15/5
15/7 47/17 51/4 53/24
presented [2]  13/23 13/25
presentence [10]  48/4 50/25 69/3 69/7
69/16 69/22 70/5 74/5 77/9 77/24
preserved [1]  19/10
pressures [1]  4/22
presumably [2]  54/4 67/24
presumed [1]  15/16
pretty [1]  73/22
previously [2]  26/16 35/9
prior [5]  26/12 35/4 50/4 66/5 72/8
prison [1]  70/18
Prisons [2]  69/8 70/19
privacy [2]  60/5 60/10
private [3]  24/6 24/21 31/21

## P

**probable [2]** 13/6 66/25
**probably [8]** 38/14 52/18 52/21 54/5 55/9 69/19 75/2 75/4
**probation [13]** 44/16 48/5 48/12 50/24 53/3 53/10 54/21 55/18 55/19 55/23 56/1 75/5 75/10
**problem [1]** 59/17
**procedure [1]** 58/13
**proceed [4]** 9/4 21/15 38/16 64/17
**proceeding [1]** 66/14
**proceedings [4]** 2/24 16/22 78/11 78/17
**process [4]** 43/23 48/17 61/19 64/11
**produced [2]** 2/25 20/18 22/2 22/10 28/8 29/5 29/9 42/7
**production [1]** 20/20
**proffer [14]** 19/17 23/14 23/15 23/16 23/17 28/17 29/8 29/13 29/20 30/11 31/9 31/16 39/5 43/9
**proffers [1]** 20/8
**programs [1]** 56/20
**prohibitions [1]** 55/20
**promise [1]** 72/3
**promised [2]** 71/16 72/7
**promises [1]** 71/13
**promising [2]** 62/18 64/1
**prong [2]** 29/14 29/15
**property [1]** 64/13
**prosecute [4]** 57/11 57/13 57/19 67/8
**prosecuted [4]** 6/2 47/9 65/9 65/24
**prosecution [4]** 60/9 60/12 63/22 66/10
**Protection [1]** 56/14
**prove [11]** 15/17 21/19 22/17 22/22 41/8 41/11 42/12 42/16 66/21 66/25 67/4
**provide [3]** 23/11 37/14 55/25
**provided [7]** 16/23 20/9 25/13 55/24 58/4 58/8 66/15
**provides [1]** 48/7
**providing [1]** 62/17
**psychologist [1]** 11/22
**public [1]** 71/4
**Pull [1]** 4/15
**punishment [1]** 47/25
**purpose [6]** 24/25 25/10 25/19 33/9 34/9 63/22
**purposes [1]** 67/5
**pursuant [4]** 5/4 64/21 65/1
**push [1]** 75/23
**put [10]** 5/14 5/19 23/18 37/20 44/15 51/20 53/5 59/19 69/6 69/10
**puts [4]** 48/5 51/24 51/24 52/1
**putter [1]** 25/24
**putting [2]** 59/21 69/11

## Q

**question [1]** 17/18
**questions [16]** 4/18 4/21 6/1 9/18 9/18 10/2 10/4 10/22 11/24 12/10 12/24 13/21 44/2 55/5 68/5 71/12
**quickly [2]** 73/22 75/10

## R

**raise [3]** 4/8 17/16 57/14
**raised [1]** 37/19
**range [5]** 17/13 17/24 45/6 50/5 73/16
**ranges [2]** 46/14 48/9
**re [3]** 57/11 57/13 57/19
**re-prosecute [3]** 57/11 57/13 57/19
**reach [1]** 75/25
**reached [1]** 71/23
**read [5]** 12/7 23/16 43/18 43/22 67/15
**reading [1]** 3/23
**reads [1]** 40/25

**real [4]** 4/3 6/16 22/20 29/25
**realize [3]** 1/3 32/9 37/21
**really [2]** 22/6 53/23
**realm [1]** 51/10
**reason [8]** 8/23 18/2 52/21 57/10 58/16 70/3 76/10 77/20
**reasonable [4]** 15/18 19/18 21/19 22/22 23/21 41/11 43/10 48/3 66/23
**reasons [1]** 58/18
**recall [1]** 68/19
**receive [1]** 74/11
**received [5]** 3/22 11/12 12/3 17/14 24/6
**recently [2]** 61/14 61/16
**recollection [1]** 68/17
**recommend [1]** 54/21 54/22
**recommendation [1]** 75/22
**recommendations [2]** 9/11 53/25
**record [12]** 3/5 3/21 5/15 5/19 10/1 10/4 37/21 51/2 51/5 60/22 73/17 78/16
**recorded [1]** 2/24
**recording [2]** 22/13
**records [3]** 60/8 60/11 60/14
**recovered [4]** 27/9 27/17 39/10 39/20
**reduce [1]** 49/25
**reduction [2]** 49/22 70/19
**reference [1]** 26/19
**reflect [1]** 3/21
**reflux [1]** 10/20
**regards [1]** 33/5
**register [3]** 56/14 65/1 65/11
**registering [1]** 65/9 65/24
**registration [4]** 64/24 65/3 65/6 65/20
**rehabilitation [1]** 48/1
**reinitiated [2]** 24/19 33/2
**reject [3]** 8/7 54/10 58/17
**rejection [1]** 47/14
**relate [1]** 4/21
**related [3]** 47/10 48/24 60/12
**relates [2]** 16/6 52/21
**relating [4]** 9/12 14/5 47/1 70/21
**release [20]** 7/2 7/17 7/22 17/7 17/9 18/12 44/12 44/14 44/14 44/15 45/9 45/12 45/16 46/11 47/1 47/6 54/3 54/16 65/21 65/22 65/23
**released [1]** 45/18
**relevant [3]** 38/14 38/21 40/14
**reluctance [2]** 26/15 35/8
**remain [2]** 9/9 54/11
**remember [1]** 20/2
**reoffend [1]** 48/14
**report [13]** 48/4 48/14 50/25 63/1 69/3 69/7 69/22 70/5 74/5 75/4 75/14 77/9 77/24
**Reporter [2]** 2/8 2/8
**reporting [2]** 44/19 56/22
**represented [7]** 14/14 23/5 23/8 30/24 31/1 31/5 31/8
**request [4]** 15/9 60/7 61/16 61/22
**requests [5]** 60/11 62/1 74/6 74/10 74/20
**require [3]** 14/24 44/20 55/19
**required [4]** 50/23 50/23 65/1 66/21
**requirements [3]** 64/14 65/5 65/19
**reserved [2]** 9/10 9/10
**reserving [5]** 18/10 59/20 59/25 60/3 67/7
**reside [1]** 65/4
**residence [1]** 65/6
**residing [1]** 67/25
**resolved [2]** 14/8 14/11
**respect [17]** 21/16 22/19 23/14 28/11 28/13 28/14 29/2 29/18 29/23 30/1 30/8 30/14 30/17 30/18 30/23 31/6 31/12
**responded [2]** 26/22 30/22

**response [1]** 67/21
**responsibility [2]** 49/21 49/24
**rest [4]** 4/23 69/18 69/19 75/12
**restitution [12]** 9/12 18/15 18/15 54/5 61/6 61/7 61/16 61/20 62/6 62/14 69/15 75/25
**restitutions [1]** 63/5
**retain [3]** 16/14 16/25 18/17
**retroactive [1]** 59/25
**reviewed [2]** 49/16 57/2
**revocation [2]** 65/22 65/23
**Richmond [4]** 27/7 27/9 36/10 39/9
**right [77]** 3/15 3/17 4/7 4/8 4/7 7/10 7/16 9/22 10/14 11/12 12/2 12/22 13/3 13/11 13/16 14/1 14/14 14/19 14/23 14/24 15/3 15/8 15/22 16/12 16/13 16/14 16/16 16/24 17/1 17/3 17/5 17/5 17/15 18/1 18/6 18/11 18/17 19/9 19/13 20/5 22/15 23/13 31/14 32/24 33/13 34/21 37/21 42/17 43/7 43/12 44/1 44/4 45/1 47/4 49/12 57/4 58/3 59/20 60/1 60/1 60/3 61/5 63/13 64/13 66/9 67/7 67/19 68/4 70/9 71/3 71/3 71/4 71/5 72/19 73/2 74/1 76/23
**rights [14]** 12/23 12/25 13/16 16/3 16/14 19/2 19/8 19/10 19/10 58/1 59/6 60/6 60/6 71/1
**risks [1]** 12/21
**room [6]** 2/9 24/3 24/4 27/15 31/25 32/2
**round [1]** 68/17
**RPR [3]** 2/8 78/15 78/22
**Rule [16]** 4/6 5/20 6/19 8/11 46/23 46/25 47/12 51/10 51/15 52/22 54/2 58/23 61/5 63/7 69/25 72/8
**rules [3]** 58/13 58/13 58/19
**ruling [1]** 69/14
**rulings [1]** 48/16
**run [6]** 7/1 7/17 7/22 7/23 46/24 57/20

## S

**sadistic [2]** 49/2 49/5
**said [5]** 19/9 19/22 35/14 50/16 69/24
**same [4]** 7/1 46/24 52/10 75/5
**satellite [1]** 24/2
**satisfied [4]** 12/13 37/2 57/5 73/2
**satisfy [4]** 35/17 35/20 63/2 63/18
**say [4]** 5/17 8/12 35/19 53/2
**schedule [6]** 19/4 63/6 63/8 63/11 77/6 77/21
**schedules [1]** 77/13
**scheduling [3]** 24/24 25/9 33/8
**Schmitt [2]** 2/1 3/14
**school [1]** 9/23
**screen [4]** 24/7 24/16 31/22 32/21
**sealed [2]** 27/9 39/10
**searches [2]** 27/8 39/9
**second [9]** 21/24 22/5 22/14 22/19 22/25 29/2 29/15 29/23 30/8
**secondary [1]** 11/16
**Section [4]** 1/20 21/18 21/23 22/21
**sections [1]** 47/22
**see [5]** 69/17 75/11 75/16 75/24 76/2
**seen [1]** 11/22
**select [1]** 13/21
**self [3]** 56/12 56/22 60/20
**self-explanatory [1]** 56/12
**self-incriminating [1]** 60/20
**self-reporting [1]** 56/22
**sense [2]** 38/9 74/4
**sent [3]** 25/1 31/21 33/11
**sentence [51]** 6/21 7/23 8/5 8/6 8/10 8/11 17/4 17/9 17/11 17/12 17/15 17/16 18/3 18/11 44/6 44/24 45/1 45/3 45/6 46/2 46/5 46/22 46/22 46/24 47/1 47/20

**S**

**sentence... [25]** 48/3 51/4 51/6 52/2 52/3 52/4 52/8 52/9 54/13 59/8 59/9 59/16 59/24 60/2 65/12 65/23 69/3 69/5 70/16 70/19 70/21 71/13 71/15 72/7 73/19
**sentenced [1]** 70/18
**sentences [1]** 17/19
**sentencing [34]** 7/6 8/3 9/5 9/10 18/3 18/5 43/17 45/5 46/3 47/8 47/18 48/9 48/16 48/20 50/7 50/7 50/10 50/11 50/18 50/20 51/8 52/7 52/24 54/1 54/14 59/22 59/23 60/21 66/5 68/5 68/18 73/17 75/5 75/19
**separate [3]** 62/21 65/10 71/14
**separately [1]** 36/13
**serial [2]** 27/18 27/21
**seriously [1]** 65/11
**serve [4]** 45/13 52/10 70/18 71/4
**served [5]** 45/1 45/8 45/15 46/1 70/21
**services [1]** 12/14
**session [2]** 26/25 35/24
**set [23]** 5/14 14/4 17/7 17/7 17/8 18/12 18/13 19/3 19/5 20/14 34/11 45/5 46/3 47/10 47/22 51/1 61/17 62/13 73/22 74/9 76/19 77/8 77/20
**sets [4]** 12/5 48/6 48/8 63/10
**setting [2]** 33/23 54/18
**several [1]** 49/11
**severe [2]** 70/10 70/11
**sex [6]** 35/2 56/20 64/24 65/1 65/11 65/19
**sexual [50]** 4/2 6/16 6/24 20/19 22/20 23/3 23/3 23/11 23/11 24/5 24/10 24/11 24/23 25/8 25/12 25/18 25/21 25/25 26/7 28/6 28/19 29/24 30/6 30/15 30/16 30/18 30/20 32/3 32/10 32/16 33/6 33/22 33/24 34/8 34/13 34/18 35/15 36/16 36/20 36/24 36/25 37/3 37/15 39/7 42/3 42/21 46/8 56/13 72/24 73/9
**sexually [8]** 20/21 20/24 21/2 24/13 28/6 28/19 41/19 42/3
**shall [1]** 66/20
**she [4]** 25/5 33/17 75/7 75/14
**she's [2]** 69/10 75/6
**shipped [8]** 22/2 22/11 28/9 29/6 29/10 29/10 42/8 43/2
**short [6]** 69/5 69/6 69/20 73/15 73/15 74/22
**shorthand [1]** 9/8
**should [12]** 7/19 12/5 12/18 12/18 36/6 37/19 37/20 46/21 51/21 54/13 62/18 67/8
**show [3]** 25/3 33/16 49/17
**showing [2]** 49/10 49/13
**shown [2]** 14/6 23/21
**sic [4]** 8/11 38/3 69/16 70/3
**sides [1]** 18/13
**sign [1]** 76/21
**signed [1]** 13/13
**simply [2]** 77/5 77/12
**since [7]** 8/13 11/14 38/5 56/22 61/11 74/24 77/2
**sir [1]** 9/18
**sit [3]** 19/20 20/7 73/11
**site [2]** 24/4 31/25
**sitting [1]** 76/9
**situation [1]** 11/17
**situational [1]** 11/18
**six [1]** 52/2
**Sixty [2]** 6/22 9/19
**skip [1]** 43/15
**slightly [1]** 43/16
**slowly [1]** 5/12

**small [2]** 21/18 50/15
**Smucker's [1]** 27/10 39/10
**so [107]**
**social [2]** 24/3 31/25
**some [35]** 4/17 4/20 5/2 8/23 9/17 9/25 10/2 16/22 17/11 18/2 40/21 40/22 41/5 41/5 43/16 44/17 47/22 49/9 49/16 52/21 53/11 54/24 55/3 55/10 57/10 57/10 58/16 63/15 63/16 70/2 74/4 74/23 74/23 77/1 77/20
**somebody [6]** 60/7 60/14 61/19 62/1 62/11 74/21
**somehow [1]** 16/21
**something [27]** 5/1 8/14 11/15 19/24 26/23 35/20 49/6 52/4 53/6 54/22 54/25 56/3 56/11 57/23 58/7 58/9 59/2 60/17 61/21 62/3 65/10 65/15 69/6 69/13 75/9 75/12 76/5
**sometimes [7]** 19/25 53/15 54/22 59/25 61/14 76/13 76/13
**soon [2]** 77/7 77/8
**sooner [1]** 75/13
**sorry [4]** 7/12 8/19 10/11 31/4
**sort [5]** 11/18 43/23 47/23 54/6 74/16
**sounds [1]** 5/4
**sources [1]** 75/2
**speak [3]** 5/5 53/17 53/17
**special [2]** 46/12 46/14
**specific [3]** 8/10 65/20 71/3
**specifically [4]** 18/10 22/9 37/21 56/10
**specify [1]** 17/3
**spend [1]** 70/16
**spoke [4]** 26/3 26/14 34/22 35/8
**St [1]** 2/2
**staff [1]** 76/8
**stand [1]** 56/25
**standard [1]** 61/17
**standards [1]** 61/24
**start [5]** 44/4 47/18 48/23 53/6 53/21
**starting [3]** 28/12 36/15 56/25
**state [5]** 19/15 42/9 42/25 43/3 71/7
**stated [2]** 76/16 26/22
**statement [7]** 6/2 19/14 19/23 47/10 62/12 62/19 62/20
**statements [6]** 53/10 58/18 58/21 58/21 58/24 66/14
**STATES [8]** 1/1 1/3 1/11 3/3 3/7 3/10 21/23 60/8
**statuses [1]** 77/17
**statute [18]** 6/14 6/17 6/18 17/3 18/7 44/6 45/5 46/4 47/21 53/22 57/9 57/11 57/17 57/20 60/1 65/1 66/25 71/9
**statutes [2]** 6/9 48/7
**statutorily [1]** 18/1
**statutory [14]** 16/14 17/1 17/5 17/12 44/5 44/11 45/4 46/9 46/10 46/18 47/20 48/7 51/7 62/24
**stenography [1]** 2/24
**step [1]** 5/9
**stick [1]** 75/7
**still [3]** 19/10 38/20 38/21
**stop [1]** 5/1
**storage [6]** 28/25 29/14 29/21 40/8 41/16 41/22
**Street [1]** 1/15
**Stripes [1]** 27/11
**student [1]** 65/4
**studying [1]** 65/8
**subject [4]** 62/21 65/12 65/21 66/10
**subpoena [1]** 14/24
**subsequent [1]** 25/16
**such [14]** 16/9 20/20 20/22 20/25 21/24 22/1 22/7 22/17 29/2 29/4 29/15 29/19 64/1 64/2

**suck [1]** 26/20
**suggest [9]** 28/23 35/20 74/12 76/5 77/5
**suggesting [2]** 41/1 73/20
**suggestion [2]** 25/24 34/17
**suitable [1]** 27/5
**Suite [1]** 2/3
**summary [4]** 5/2 23/18 58/19 59/22
**summoned [1]** 13/18
**sun [1]** 39/16
**sunglasses [1]** 27/14
**Superior [2]** 67/20 67/22
**superseding [2]** 28/13 29/24
**supervised [23]** 7/2 7/17 7/22 17/6 18/12 44/12 44/14 44/14 44/16 45/9 45/12 45/16 45/18 46/11 47/1 47/5 54/3 54/16 55/22 56/2 65/20 65/22 65/23
**supposed [3]** 48/2 50/17 50/18
**supposedly [1]** 33/7
**sure [20]** 4/23 5/5 5/13 5/14 5/19 5/25 8/21 10/22 10/24 19/23 20/12 40/13 55/9 58/9 68/23 69/11 70/1 74/15 76/1 77/18
**suspend [1]** 77/5
**sustain [1]** 21/20
**sworn [2]** 4/12 5/24
**symptoms [1]** 11/9
**system [1]** 70/16

**T**

**take [10]** 10/19 11/3 13/13 21/9 26/25 31/24 35/24 40/3 61/20 69/23
**taken [3]** 10/14 50/10 65/10
**takes [1]** 51/9
**talk [6]** 5/10 12/16 37/19 39/2 55/16 69/4
**talked [10]** 39/14 48/25 57/23 59/2 60/17 62/3 65/15 68/10 70/9 72/5
**talking [5]** 10/18 35/2 45/17 58/16 58/17
**talks [2]** 53/22 53/24
**Task [1]** 24/1
**technically [1]** 22/13
**telephone [2]** 26/3 26/14
**tell [1]** 73/23
**telling [2]** 16/24 56/21
**ten [6]** 7/2 7/22 11/23 44/11 46/11 65/12
**ten-year [1]** 65/12
**term [4]** 17/5 45/13 45/14 46/11
**terms [34]** 4/24 4/24 5/20 6/23 7/1 7/5 7/14 7/17 7/21 9/12 10/21 10/22 10/25 11/7 12/10 16/12 32/11 36/12 45/8 45/20 47/11 49/10 50/14 56/12 56/12 61/7 61/18 66/19 67/1 68/14 69/22 73/12 75/3 75/25
**terribly [1]** 40/14
**test [1]** 56/21
**testified [1]** 4/13
**testify [5]** 14/25 15/3 15/5 15/9 15/11
**testifying [2]** 37/22 38/3
**testimony [3]** 38/4 38/14 38/19
**testing [1]** 56/19
**than [26]** 5/4 5/20 8/3 11/21 13/5 23/6 23/8 23/8 30/24 31/7 31/7 37/8 37/9 40/18 41/6 44/6 45/4 46/11 46/16 47/20 49/4 51/4 51/6 53/1 70/6 72/4
**thank [5]** 5/11 5/23 9/6 20/6 53/19 72/18 78/4 78/8 78/10
**Thanks [1]** 78/9
**that [472]**
**that's [42]** 5/13 6/17 15/6 16/23 16/23 16/24 17/12 18/12 40/25 40/25 41/4 47/9 49/18 50/19 50/22 50/24 51/12 54/9 56/11 56/21 57/6 57/19 58/7 58/9 58/9 58/11 59/21 60/17 62/3 63/19 66/22 69/8 69/11 73/24 74/3 74/12

**T**

**that's...** [5] 74/17 76/9 76/15 76/18 77/11
**their** [3] 48/19 51/23 62/12
**them** [26] 5/10 13/21 14/24 14/24 41/2 43/18 44/7 44/7 44/8 49/11 49/16 55/8 55/14 56/14 56/22 57/7 58/20 59/3 62/4 63/9 64/10 69/12 69/14 74/11 74/15 74/24
**themselves** [5] 28/6 28/19 41/19 42/4 45/24
**then** [52] 7/23 8/4 8/6 8/8 8/9 8/15 8/23 9/4 19/21 20/9 21/15 23/17 25/20 32/7 33/20 34/5 34/13 34/25 35/25 37/1 39/8 39/9 42/17 43/7 43/12 44/15 44/21 44/23 46/7 48/15 49/21 49/23 49/25 50/3 50/3 50/21 51/16 53/8 54/11 57/11 57/20 58/18 58/23 60/23 65/12 66/25 70/4 77/11 77/13 77/19 77/20 78/6
**there** [56] 6/9 7/2 9/11 14/4 15/11 16/14 19/2 19/23 30/5 30/19 34/13 37/3 37/18 37/23 38/6 39/1 39/9 40/7 44/13 44/16 45/10 45/24 46/2 46/13 47/14 47/21 48/24 49/6 49/21 50/8 50/13 51/10 51/13 54/2 55/2 55/20 56/8 56/15 61/13 61/24 63/8 63/14 63/15 66/7 67/16 68/8 68/12 68/24 69/7 69/12 69/15 70/12 70/15 74/10 76/24 77/12
**there's** [19] 6/6 7/24 11/9 13/6 17/11 20/2 46/12 54/25 57/2 59/13 61/17 61/19 64/14 67/16 68/22 69/14 69/15 73/6 78/6
**therefore** [2] 71/8 73/7
**Thereupon** [1] 4/10
**these** [38] 10/2 10/2 10/22 11/24 13/7 16/4 21/18 23/15 25/19 25/23 28/4 28/8 28/21 29/13 31/10 34/6 35/1 37/22 42/6 42/7 42/20 42/21 43/4 43/4 46/19 49/6 49/13 50/11 50/22 55/10 55/10 55/12 55/19 58/12 58/19 60/11 74/23 74/23
**they** [75] 6/25 13/19 13/24 17/2 19/15 19/18 20/8 20/9 21/6 21/11 25/24 26/7 28/17 30/6 39/10 39/20 39/25 41/8 41/8 42/9 42/25 44/18 44/19 46/10 46/24 48/13 48/14 48/15 48/21 50/19 51/22 51/25 53/4 54/11 54/18 54/22 54/22 54/25 56/11 56/11 56/19 57/11 57/12 57/13 57/16 57/18 58/23 61/9 61/14 61/14 61/15 61/15 61/16 61/18 61/22 61/22 64/11 64/16 64/16 66/16 66/25 67/7 69/6 69/17 69/19 71/9 73/17 73/18 73/19 74/18 74/25 75/3 75/8 75/24 76/13
**they'll** [1] 7/22
**they're** [17] 7/24 21/9 50/9 50/15 50/16 50/17 50/23 51/5 51/14 51/23 54/19 55/4 58/19 59/25 59/25 61/13 62/10
**they've** [8] 9/10 19/22 48/25 59/19 61/15 62/12 69/20 70/17
**thing** [8] 3/17 5/14 5/17 5/21 56/18 58/2 69/17 73/13
**things** [13] 5/3 37/19 44/19 47/22 48/1 50/9 53/9 54/23 56/15 68/8 68/12 70/1 71/25
**think** [26] 8/22 16/18 17/22 21/7 32/6 38/11 40/15 40/21 42/14 50/12 52/18 53/20 54/7 54/24 56/9 56/16 57/2 64/11 67/16 69/12 69/19 73/23 73/25 74/23 75/3 78/3
**thinks** [1] 25/5
**third** [6] 22/16 23/2 29/18 29/18 30/14 62/11
**this** [120]

**these** [21] 6/11 8/11 12/7 12/8 14/5 14/11 18/16 21/8 23/16 41/3 41/25 44/21 47/2 48/1 48/3 54/5 60/14 60/24 64/16 72/4 77/18
**though** [1] 10/2
**thought** [2] 5/18 33/17
**thousand** [1] 63/12
**threatened** [1] 71/19
**three** [34] 21/8 24/12 25/13 25/18 25/21 25/25 26/8 26/19 26/20 26/21 26/25 27/3 30/7 30/17 30/18 30/25 31/1 31/10 32/15 33/25 34/8 34/14 34/18 35/3 35/15 35/24 36/2 36/18 37/1 37/3 37/7 49/25 74/13 74/14
**three-year-old** [27] 24/12 25/13 25/18 25/21 25/25 26/8 26/19 26/20 26/25 27/3 30/7 30/17 30/18 30/25 32/15 33/25 34/8 34/14 34/18 35/3 35/15 35/24 36/2 36/18 37/1 37/3 37/7
**three-year-old's** [1] 26/21
**through** [38] 5/12 8/2 8/13 12/22 13/15 13/17 13/20 14/19 16/14 19/22 20/3 20/8 20/10 31/17 33/1 35/1 36/15 39/24 43/23 44/7 44/8 48/6 48/18 50/23 50/24 53/20 53/23 54/18 55/8 59/11 60/7 64/11 64/15 66/4 69/20 71/2 74/24 77/18
**thumbnails** [1] 40/24
**Thursday** [1] 76/14
**tie** [1] 20/3
**time** [34] 5/9 6/23 7/2 7/8 7/23 11/3 12/16 12/20 20/1 31/11 31/20 37/9 44/15 44/16 45/1 45/7 46/1 46/23 46/25 47/7 50/6 50/12 52/10 52/10 54/1 56/1 58/5 63/15 63/16 69/12 69/14 70/19 70/20 73/25
**timeframe** [2] 57/15 71/2
**Timothy** [2] 23/24 30/4
**Title** [1] 21/23
**titled** [1] 78/17
**today** [7] 11/1 31/9 58/21 66/16 73/4 74/12 74/13
**today's** [1] 77/2
**together** [3] 7/22 48/5 51/20
**too** [1] 9/7
**top** [5] 27/15 32/8 39/17 52/19 66/20
**total** [5] 6/21 7/3 7/20 49/20 50/1
**totally** [2] 46/4 67/18
**track** [1] 73/17
**transcript** [3] 1/10 2/24 78/16
**transcription** [1] 2/25
**transferred** [1] 63/21
**transfers** [1] 64/2
**transported** [11] 21/25 22/3 22/8 22/11 28/9 29/3 29/6 29/10 32/8 42/8 42/24
**travel** [4] 26/15 27/1 35/9 36/1
**treatment** [4] 11/5 11/24 11/21 56/20
**trial** [19] 12/19 13/17 13/17 14/4 14/6 14/14 14/15 14/18 15/3 15/19 15/22 19/3 19/3 19/8 23/20 38/3 38/16 58/1 75/16
**trickier** [1] 56/10
**tried** [4] 16/5 16/6 16/7 16/8
**true** [1] 41/15
**truthful** [1] 62/20
**truthfully** [1] 6/1
**turnaround** [1] 74/9
**two** [21] 4/2 6/8 6/15 6/24 7/4 13/1 19/15 33/20 37/6 39/6 46/7 49/1 49/3 49/22 72/23 73/9 74/12 74/13 74/22 74/22 75/23
**type** [2] 10/18 51/24

**U**

**U.S** [7] 1/15 2/9 21/17 63/1 67/21 67/23

67/25
**U.S.C** [2] 1/7 59/20
**ultimately** [2] 9/12 36/17
**umbrella** [1] 47/24
**unable** [2] 18/21 40/23
**under** [15] 5/25 18/6 22/14 41/18 42/2 42/2 49/1 51/10 55/17 59/8 59/20 60/1 60/10 65/23 77/13
**undercover** [2] 23/25 30/12
**understand** [60] 5/1 5/13 5/16 5/22 5/25 6/3 12/25 13/3 13/25 14/13 14/16 14/18 14/22 15/2 15/12 15/15 15/21 16/2 18/23 18/25 31/20 32/8 37/12 38/10 45/8 46/18 47/2 51/18 52/11 53/12 53/16 53/17 55/14 57/5 58/25 60/24 61/8 62/15 62/18 62/23 65/5 65/13 65/18 65/25 66/17 66/18 67/2 67/9 67/12 67/13 67/19 68/2 70/2 70/7 70/22 71/10 71/22 72/1 72/16
**understanding** [12] 5/6 7/5 9/14 16/4 16/15 18/7 18/17 41/10 41/13 59/17 60/3 60/15
**understands** [2] 38/22 73/4
**understood** [3] 5/4 55/10 78/1
**unilateral** [1] 9/1
**UNITED** [8] 1/1 1/3 1/11 3/3 3/6 3/10 21/23 60/8
**universally** [1] 32/6
**unlawful** [1] 16/21
**unless** [5] 15/15 18/3 54/24 71/9 75/11
**unopened** [2] 27/10 39/10
**until** [5] 15/15 15/18 64/2 69/3 77/3
**unusual** [1] 78/2
**up** [42] 3/19 3/20 5/5 8/12 11/15 12/23 13/10 16/3 16/25 17/1 17/4 18/6 19/2 19/8 20/4 20/11 31/15 33/23 34/11 37/21 50/10 50/12 52/17 53/1 53/17 53/18 54/25 55/6 56/25 58/2 58/14 62/1 62/8 63/15 64/13 65/12 65/22 68/9 69/4 69/18 74/21 77/8
**updating** [3] 74/5 75/3 75/11
**upon** [1] 77/1
**upward** [1] 53/8
**us** [2] 31/21 77/2
**usdoj.gov** [2] 1/17 1/22
**use** [9] 20/21 25/24 32/9 36/6 49/3 58/20 58/23 66/12 66/16
**used** [7] 27/21 40/1 40/3 60/21 60/23 60/24 70/15
**using** [10] 22/2 22/10 24/7 24/19 28/8 29/5 29/9 31/22 33/2 42/7
**usual** [2] 64/14 69/21
**usually** [4] 16/5 51/14 60/2 64/15

**V**

**vacate** [1] 77/15
**vacated** [4] 57/10 57/13 57/18 58/15
**vacating** [1] 77/16
**valuable** [1] 71/1
**variance** [8] 50/22 51/3 51/7 51/9 51/10 51/13 51/15 51/17
**variances** [1] 68/18
**various** [5] 5/3 6/9 44/19 48/25 58/13
**vehicle** [2] 27/5 36/6
**venue** [1] 16/5
**veracity** [1] 56/21
**versus** [1] 3/3
**very** [9] 6/6 6/7 50/9 50/15 50/15 59/21 69/5 69/6 76/10
**Vet** [2] 24/7 31/22
**via** [6] 24/18 25/2 26/6 27/22 30/21 40/2
**victim** [1] 74/20
**victims** [7] 9/13 18/16 46/15 54/5 61/9 61/13 69/13

## V

**video [2]**  20/17 22/12
**videos [2]**  40/22 40/24
**violate [1]**  44/21
**violated [1]**  44/24
**violation [14]**  6/9 6/13 6/17 21/17 22/20
44/13 44/22 45/10 45/11 45/13 45/15
45/20 45/23 66/24
**Virginia [6]**  10/13 16/10 27/7 27/9 39/10
67/24
**visit [1]**  27/6
**visitation [2]**  55/22 56/2
**visiting [1]**  56/12
**visual [4]**  20/17 20/20 20/22 20/25
**voluntarily [3]**  4/20 72/11 73/5
**voluntariness [1]**  71/12
**voluntary [4]**  51/23 52/3 52/8 53/21
**vote [1]**  71/3

## W

**waive [5]**  3/23 46/13 60/6 64/16 64/19
**waiver [1]**  13/13
**waiving [2]**  16/5 37/20
**Walsh [1]**  56/14
**want [23]**  5/5 5/8 5/10 5/14 5/25 8/8
15/6 19/7 19/20 19/21 20/7 48/23 49/14
58/2 58/9 61/25 64/16 68/23 69/1 70/1
72/17 73/19 77/13
**wanted [5]**  15/4 33/17 35/10 57/11
57/13
**was [69]**  4/12 5/18 6/10 10/7 12/11 13/6
13/23 16/21 16/23 17/1 17/18 22/25
23/1 23/2 23/5 23/7 23/8 23/10 23/24
24/1 24/12 26/23 27/6 27/14 30/9 30/10
30/11 30/15 30/19 30/24 30/25 31/1
31/5 31/7 31/9 31/19 31/24 32/9 32/16
32/25 32/25 34/11 35/10 35/11 35/21
36/22 36/24 37/13 37/14 38/12 38/12
39/16 40/3 40/5 40/17 43/23 46/5 47/10
47/13 48/4 54/2 57/10 58/15 59/16
61/11 63/7 68/7 68/7 68/18
**washing [2]**  27/15 39/17
**Washington [6]**  1/5 1/16 1/21 2/3 2/10
24/2
**wasn't [1]**  17/24
**way [7]**  5/19 8/11 12/2 53/11 56/19
71/20 77/8
**ways [2]**  43/3 43/17
**we [50]**  3/18 5/18 5/5 5/14 5/19 13/18
14/3 17/23 18/2 20/12 37/20 39/1 40/23
40/25 48/17 49/14 50/3 50/8 50/22
50/25 51/22 53/3 53/6 53/20 54/14
68/18 69/13 69/20 69/25 70/4 73/22
73/25 74/7 74/9 74/11 74/14 74/15
74/18 74/20 74/21 74/24 75/15 76/8
76/19 77/16 77/16 77/17 77/17 77/20
77/24
**we'd [2]**  75/14 77/22
**we'll [6]**  8/15 9/13 43/15 53/21 69/3
69/12
**we're [11]**  3/17 10/18 11/1 19/13 41/1
41/1 45/17 52/18 52/23 69/21 76/4
**we've [9]**  10/1 19/3 19/8 21/13 47/19
59/5 70/11 72/5 77/17
**weather [2]**  27/4 36/5
**webcam [7]**  26/19 26/25 30/21 35/14
35/16 35/24 37/1
**website [1]**  32/5
**Wednesday [1]**  23/23
**week [10]**  5/16 26/4 73/24 74/2 74/8
74/21 75/16 75/21 75/23 76/6
**weeks [5]**  74/12 74/13 74/15 74/22
74/22

**weigh [3]**  12/20 61/23 61/23
**weight [14]**  4/24 5/9 57/16/10 20/13 22/7
31/13 43/11 46/4 51/23 53/4 54/17 56/6
65/24
**went [9]**  13/17 15/2 15/21 18/2 18/4
35/19 42/25 43/24 53/20
**were [48]**  6/7 8/23 10/10 10/12 13/1
14/6 15/22 17/7 28/2 28/8 28/18 28/22
28/22 29/9 29/13 30/5 31/18 31/19 36/9
36/17 36/19 37/2 37/7 37/18 37/19
38/15 39/8 39/9 40/7 40/23 40/24 41/5
41/9 42/7 45/10 55/9 55/10 56/11 56/16
56/25 61/4 64/9 64/9 68/8 68/12 68/24
70/4 77/19
**what [54]**  4/23 5/3 5/4 5/6 8/1 9/14 10/5
11/1 11/3 12/11 13/23 19/21 19/22 25/5
33/17 36/6 41/7 41/10 43/23 45/5 45/14
46/5 46/23 46/25 47/10 47/12 47/14
47/17 49/5 50/8 50/14 50/22 51/4 52/14
53/2 53/5 54/13 56/13 56/21 58/16
61/12 61/18 62/14 68/7 68/7 70/15
71/13 72/5 73/5 75/2 75/16 76/10 77/4
78/5
**what's [4]**  5/7 7/8 9/20 17/2
**whatever [5]**  5/10 51/1 64/11 74/20
75/12
**when [9]**  14/7 22/25 30/8 31/11 37/1
37/4 57/12 73/23 77/8
**whenever [1]**  5/17
**where [16]**  10/10 10/12 16/6 16/7 20/20
39/17 65/3 65/3 65/4 65/7 67/24 70/16
71/1 71/7 74/7 74/25
**whether [23]**  4/21 8/8 8/24 12/18 12/18
12/24 16/22 19/22 20/2 20/12 20/18
21/3 36/6 40/23 44/21 44/22 45/22
45/23 50/13 50/21 60/6 69/15 77/4
**which [76]**  4/1 6/12 6/13 6/15 6/24 8/2
8/5 9/11 12/3 12/5 12/19 13/1 14/5 16/5
16/24 17/1 17/9 17/14 18/4 18/5 19/8
22/12 22/21 27/1 27/5 28/22 29/14
30/21 35/5 35/25 36/1 36/18 37/9 37/13
39/6 39/13 41/18 42/2 43/1 44/9 46/12
46/14 46/15 46/16 46/22 46/25 47/19
48/20 48/21 49/22 49/25 50/9 51/17
52/1 53/22 53/25 55/3 55/17 56/16
56/19 57/16 57/16 59/9 59/11 59/12
62/9 62/21 64/25 66/23 66/25 70/10
70/18 70/19 74/11 75/4 76/12
**While [1]**  7/23
**who [5]**  13/7 13/22 24/4 32/3 35/21
**whole [2]**  50/24 61/19
**why [8]**  40/25 40/25 48/15 50/24 51/14
73/19 74/14 76/1
**wife [1]**  55/25
**will [32]**  4/8 7/23 8/1 8/12 12/4 14/8
19/14 19/15 19/21 20/8 31/16 48/13
48/14 53/2 55/8 58/24 62/17 62/19
64/16 66/9 66/12 69/15 69/19 69/20
71/13 71/17 72/11 74/5 75/5 75/11
77/15 77/15
**willful [1]**  62/20
**willing [6]**  13/10 14/8 16/15 26/18 35/14
76/11
**wind [2]**  65/22 74/21
**wish [1]**  4/3
**withdraw [8]**  8/8 8/25 9/1 9/3 52/22
52/23 61/4 66/9
**withdrawn [7]**  8/9 58/15 58/16 58/17
58/22 60/23 70/3
**within [6]**  18/20 21/8 51/8 57/15 73/24
74/12
**without [6]**  4/22 9/9 14/10 18/22 55/18
55/23
**witnesses [2]**  14/20 14/23

**won't [5]**  47/13 54/25 69/2 71/2 71/17
**words [9]**  9/7 13/4 14/4 24/4 42/9 51/3
58/20 59/10 68/12 71/15
**work [3]**  20/8 75/20 76/17
**working [2]**  30/11 65/8
**works [3]**  7/10 76/3 78/3
**worry [1]**  17/23
**would [165]**
**wouldn't [5]**  15/5 38/7 45/14 47/9 78/2
**writ [1]**  59/12
**writing [1]**  5/15
**written [4]**  8/25 55/18 55/23 56/1
**wrong [1]**  40/14

## Y

**Yahoo [17]**  24/16 24/18 24/20 24/21
25/2 25/6 25/16 26/6 27/22 32/20 33/1
33/3 33/12 33/21 34/6 35/1 40/2
**Yeah [3]**  45/17 50/2 77/22
**year [42]**  24/12 24/13 24/24 25/2 25/3
25/9 25/13 25/18 25/21 25/25 26/8
26/19 26/20 26/21 26/25 27/3 30/7 30/7
30/17 30/18 30/25 32/15 32/17 33/7
33/12 33/16 33/23 33/25 34/8 34/14
34/18 35/3 35/15 35/24 36/2 36/17
36/18 37/1 37/3 37/7 37/7 65/12
**years [23]**  7/2 7/22 11/23 13/18 23/6
23/8 30/24 31/1 31/2 31/4 31/5 31/7
31/10 31/10 31/11 37/8 37/9 44/11
44/12 46/9 46/12 62/22 65/2
**yes [111]**
**York [1]**  1/21
**you [445]**
**you'd [7]**  9/4 14/14 31/15 40/1 49/25
70/18 70/20
**you'll [4]**  19/1 65/7 66/5 66/9
**you're [69]**  4/19 4/20 4/21 5/6 5/25 11/7
12/6 12/23 12/25 13/7 14/7 14/10 16/3
16/5 16/15 16/25 17/4 18/1 18/6 18/21
31/21 37/8 37/21 38/2 39/25 41/25 42/6
44/15 44/15 45/7 49/13 55/3 55/8 56/21
57/4 57/7 57/17 58/2 59/6 59/14 59/15
59/15 59/19 59/25 60/2 60/6 60/13
60/13 62/8 62/11 62/18 62/25 63/20
64/1 64/5 64/10 64/13 64/15 64/19
64/25 65/1 65/4 65/4 66/20 70/12 70/17
70/24 74/19 76/11
**you've [28]**  5/4 5/24 9/9 11/14 16/8 46/1
47/5 52/14 52/19 54/19 56/3 56/22 58/7
58/18 60/22 62/3 65/15 66/6 66/11
66/15 67/12 67/15 67/24 68/6 69/18
70/20 71/15 73/21
**your [142]**
**yourself [4]**  3/4 15/7 33/16 43/22

## Z

**ZO6 [2]**  24/8 31/22