UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>PAUL DAVID HITE,<br><br>Defendant. | Criminal No. 12-65 (CKK) |

**MEMORANDUM OPINION**
(June 29, 2015)

This matter comes before the Court on the government's [240] Motion for Restitution, and the government's [250] Supplemental Motion for Restitution. The government seeks restitution for five victims from the "Misty," "8 Kids," "Sponge B," and "Angela" series pursuant to 18 U.S.C. § 2259(a). On June 12, 2015, the Court held a sentencing hearing in this matter and made oral findings, which the Court INCORPORATES herein, with respect to the issue of restitution for the five victims. That same day, the Court memorialized its ruling through a five written orders, directing restitution to paid by Dr. Hite in the following amounts: $2,500 to John Doe II of the "8 Kids" series; $2,500 to John Doe IV of the "8 Kids" series; $5,000 to the victim from the "Sponge B" series; $5,000 to the victim from the "Misty" series; and $1,750 to the victim from the "Angela" series. The Court now enters this Memorandum Opinion setting forth the basis for its ruling.

**BACKGROUND**

On April 15, 2015, Defendant Paul David Hite pleaded guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(5)(B), and one count of arranging for a sexual contact with a real or fictitious child in violation of D.C. Code § 22-3010.02. Pursuant to the terms of the plea agreement, the parties agreed to an appropriate sentence as to the terms of

incarceration, the amount of the fine, and the term of supervised release pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. However, the plea agreement also set forth: "The Court may impose other applicable statutory provisions as part of the sentence, including restitution . . . ." Plea Agmt. at 3, ECF No. [232]. The Court reviewed the terms of the plea agreement during the plea hearing held on April 15, 2015, and ultimately accepted Dr. Hite's plea. Prior to sentencing, on May 6, 2015, the government filed a Motion for Restitution, seeking restitution on behalf of the victims of the "Misty," "8 Kids," and "Sponge B" series, who had been identified from the 409 images of child pornography extracted from the Thumbcache files on Dr. Hite's laptop. On June 4, 2015, the government filed a Supplemental Motion for Restitution, also seeking restitution on behalf of the victim in the "Angela" series.

At the sentencing hearing on June 12, 2015, the Court addressed the issue of the restitution requests for the one victim in the "Misty" series, the one victim in the "Sponge B" series, the one victim in the "Angela" series, and the two victims, John Does II and IV, in the "8 Kids" series. At the hearing, Dr. Hite informed the Court that he had reached an agreement with the victims of the "Misty," "Sponge B," and "Angela" series as to the appropriate amount of restitution to be ordered consistent with the relevant legal standard. Dr. Hite informed the Court that he had not reached an agreement with John Does II and IV of the "8 Kids" series.

## LEGAL STANDARD

Pursuant to 18 U.S.C. § 2259, the victims of certain federal crimes, including possession of child pornography, are entitled to mandatory restitution. A victim may recover the full amount of his or her losses including: medical services relating to physical, psychiatric, or psychological care; physical and occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorneys' fees, as well as other costs incurred; and

any other losses suffered by the victim as a proximate result of the offense. 18 U.S.C. § 2259(b)(3). The amount of restitution ordered with respect to a particular defendant is "proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." *Paroline v. United States*, -- U.S. --, --, 134 S. Ct. 1710, 1722 (2014). "[W]here it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id.* at 1727. However, the restitution amount should not be "severe," nor "token or nominal." *Id.* An award that is neither severe nor nominal "serve[s] the twin goals of helping the victim achieve eventual restitution for all her [or his] child-pornography losses and impressing upon offenders the fact that child-pornography crimes, even simple possession, affect real victims." *Id.*

To determine an appropriate restitution amount, the district court must first determine "the amount of the victim's losses caused by the continuing traffic in the victim's images." *Id.* at 1728. After the court has determined the amount of the victim's total losses, the district court must weigh several factors in determining the relative causal significance of the defendant's conduct in relation to the victim's total losses. Indeed, a district court making such a determination should consider:

> the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id.* However, these factors need not be converted to a rigid formula, but rather should serve as rough guideposts for determining an amount that fits the offense. *Id.* Ultimately, "[i]t is well recognized that district courts by necessity 'exercise . . . discretion in fashioning a restitution order.'" *Id.* (quoting 18 U.S.C. § 3664(a)).

## DISCUSSION

At the sentencing hearing, the government made a proffer, which Dr. Hite accepted, with respect to the identification of the victims seeking restitution and the number of images that had been connected to each of the victims seeking restitution. In light of the government's proffer, the Court found by a preponderance of the evidence that if Christie Gardner, the government's computer forensics expert, had testified, her testimony would have established that she recovered approximately 409 images of child pornography from her forensic analysis of the Thumbcache on Dr. Hite's laptop. Ms. Gardner then submitted these images to the National Center for Missing and Exploited Children ("NCMEC") who informed Ms. Gardner that the 409 images included: four images of the victim from the "Misty" series; four images of the victim from the "Sponge B" series; two images of the victim from the "Angela" series; and 14 total images of victims from the "8 Kids" series, including 11 images of John Doe IV and three images of John Does II and IV depicted together. The images of the victims from the "8 Kids" series also were sent to the law enforcement agency responsible for investigating the production of the images, and the officer responsible for that investigation also assisted in the identification of the victims in the "8 Kids" series. As such, the Court found that each of the five victims seeking restitution was entitled to recover pursuant to 18 U.S.C. § 2259. Having determined that each victim is entitled to restitution, the Court shall next address the victims' losses and the *Paroline* factors, and then shall turn to the

amount of restitution to be paid.

1. Victims' Losses and the *Paroline* Factors

Turning first to the victims' losses caused by the continued trafficking of the victim's images, each victim has submitted to the Court materials documenting his or her economic losses. Based on this uncontroverted information, the Court finds that the government has carried its burden in establishing the aggregate amount of losses for each victim for whom restitution is sought. As such, the Court finds that the general losses for the victim in the "Misty" series is $3,367,854, for the victim in the "Sponge B" series is $2,121,963, for the victim in the "Angela" series in $366,000, for the victim John Doe II in the "8 Kids" series is $988,304, and for the victim John Doe IV in the "8 Kids" series is $978,736. The Court further accepts these amounts as set forth in the documentation provided by each victim as reasonable.

The Court next shall address each factor set forth by the Supreme Court in *Paroline*. The Court notes as a preliminary matter that it is uncontroverted by Dr. Hite that the ordered amount of restitution should exclude losses incurred prior to Dr. Hite's possession of these images in 2009, and should exclude losses attributable to the original abuse as opposed to the possession of the trafficked child pornography images. The Court relies in part on information provided by the government with respect to prior restitution orders provided to the same victims by federal district courts in other cases. However, it is unknown whether these restitution amounts as ordered were or will be upheld on appeal, or whether the restitution was or will be collectible once the offenders have completed their terms of incarceration.

    a. *The number of past criminal defendants found to have contributed to the victim's general losses.*

There have been 198 restitution orders on behalf of the victim in the "Misty" series, 132 restitution orders on behalf of the victims in the "8 Kids" series, 31 restitution orders on behalf of the victim in the "Sponge B" series, and 106 restitution orders on behalf of the victim in the "Angela" series.

> b. *Reasonable predictions of the number of future offenders likely to be convicted for crimes contributing to the victim's general losses.*

The government provides no estimate as to the number of offenders likely to be convicted for crimes contributing to any of the victim's general losses.  Further, the government indicated that it does not have "sufficient, reliable data" to make such an estimate, which the Court accepts.

> c. *Any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted).*

The government provides no estimate of the broader number of offenders involved.  The government indicates that there is no reliable way to calculate this estimate nor does the government have "any data from which to extrapolate the number of undetected possessors and traders," which the Court accepts.

> d. *Whether the defendant reproduced or distributed images of the victim.*

The government does not have any evidence that Dr. Hite either reproduced or distributed any images of the victims.

> e. *Whether the defendant had any connection to the initial production of the images.*

It is uncontested by the parties that Dr. Hite had no connection to the production of any of the images in question.

> f. *How many images of the victim the defendant possessed.*

As set forth above, the Court finds that Dr. Hite possessed four images of the victim from the "Misty" series, four images of the victim from the "Sponge B" series, two images of the victim from the "Angela" series, and 14 total images from the "8 Kids" series, 11 images of John Doe IV alone, and three images of John Doe II and John Doe IV together.

      g.  *Other facts relevant to the relative causal role.*

The government provided the following uncontested information in its briefing that is relevant to the issue of Dr. Hite's relative causal role. First, the government contends that there is no evidence that Dr. Hite knows any of the victims, attempted to discover their identities, or attempted to contact them. Further, the government is not aware of any efforts by Dr. Hite to groom other minors for sexual exploitation using the images. Finally, the Court considers that fact that Dr. Hite possessed approximately 409 total images of child pornography.

    2.  Restitution Award

The Court next turns to its determination of the appropriate amount of restitution to which each victim is entitled. The Court has reviewed relevant case law, including the cases relied on by the parties in their briefs. *See generally U.S. v. Moreira*, 10cr02 (ESH) (D.D.C. Oct. 25, 2010) (ordering by consent, that the defendant pay restitution in the amount of $5,800 to the victim in the "Misty" series); *U.S. v. Monzel*, 09cr243 (GK) (D.D.C.) (motion for restitution pending); *U.S. v. Massa*, No. 14-471 (WQH), 2014 WL 6980503 (S.D. Cal. Dec. 9, 2014) (ordering the defendant who pleaded guilty to one count of possession of child pornography to pay restitution in the amount of $8,000 to the victim in the "Angela" series of whom the defendant possessed 85 images, $8,000 to the victim in the "Misty" series of whom the defendant possessed 73 images, and $1,000 to the victim in the "Sponge B" series of whom the defendant possessed two images); *U.S. v. Bellah*, No. 13-10169 (EFM), 2014 WL 7073287 (D. Kan. Dec. 12, 2014) (ordering the defendant, who was


found guilty of one count of transportation of child pornography, to pay restitution in the amount of $7,500 each to John Does II and IV, when defendant was accountable for 68 images of the victims from the "8 Kids" series and $5,000 to the victim of "Spongebob" series, of whom the defendant was accountable for three videos and eight images). In light of the parties' arguments, the agreements reached between certain victims and Defendant, and the relevant legal standard, the Court shall discuss the restitution amounts ordered for the victim of the "Misty" series, the victim of the "Sponge B" series, the victim of the "Angela" series, and victims John Doe II and John IV of the "8 Kids" series in turn.

      a.  *"Misty" Series*

At the sentencing hearing, Dr. Hite informed the Court that he and the victim in the "Misty" series reached an agreement that restitution in the amount of $5,000 would be appropriate. The Court finds that restitution in the amount of $5,000 comports with Defendant's relative role in the causal process that underlies the victim's general losses.

      b.  *"Sponge B" Series*

At the sentencing hearing, Dr. Hite informed the Court that he and the victim in the "Sponge B" series reached an agreement that restitution in the amount of $5,000 would be appropriate. The Court finds that restitution in the amount of $5,000 comports with Defendant's relative role in the causal process that underlies the victim's general losses.

      c.  *"Angela" Series*

Prior to the sentencing hearing, Dr. Hite informed that Court that he and the victim in the "Angela" series reached an agreement that restitution in the amount of $1,750 would be appropriate. The Court finds that restitution in the amount of $1,750 for the victim in the "Angela" series comports with Defendant's relative role in the causal process that underlies the victim's general losses.

d.  *"8 Kids" Series*

Dr. Hite and victims John Doe II and John IV in the "8 Kids" series did not reach an agreement as to an appropriate amount of restitution to present to the Court. The victims requested that the Court direct Defendant to pay $25,000 each to John Doe II and John Doe IV. Dr. Hite requested that the Court enter restitution orders in the amount of $2,500 for each of the two victims. At the sentencing hearing, the Court ordered Dr. Hite to pay $2,500 each to victims John Doe II and John Doe IV of the "8 Kids" series for the reasons described herein.

The victims argue that Dr. Hite should be required to pay $25,000 to each victim for several reasons. Both victims submitted documentation demonstrating their losses which are uncontroverted by the parties. John Doe II has total losses of $988,304, including $888,720 in loss of earning potential and $99,584 in future medical and rehabilitation costs. John Doe IV has total losses of $978,736, including $888,720 in loss of earning potential and $90,016 in future medical and rehabilitation costs. The Court gleans from the record that at the time the abuse documented in the photographs was perpetrated against them, John Doe II was approximately nine or ten years old and John Doe IV was approximately five years old. Both victims either directly or through a parent provided a victim impact statement regarding the negative effects of the ongoing circulation of images of the abuse perpetrated against them. Further, the government represented to the Court that there have been 132 previously restitution orders for the victims of the "8 Kids" series, although the government did not indicate the number of these orders that specifically addressed John Doe II and John IV as opposed to the other victims of the series. The government indicated that the restitution amounts ranged from $50 to $37,500, with 60 of 66 restitution orders for the victims in the "8 Kids" series within the range of $50 to $16,000.[1]

---

[1] The Court notes that in its initial briefing on the issue of restitution, the government

Here, Dr. Hite possessed 14 images from the "8 Kids" series, all 14 images portrayed John Doe IV and three of those images portrayed John Doe II and John Doe IV together. There is no evidence that Dr. Hite reproduced or distributed images of the victim, that he was involved in the initial production of the images, or that he knew or attempted to contact any of the victims.

Dr. Hite relies on *U.S. v. Bellah*, No. 13-10169 (EFM), 2014 WL 7073287 (D. Kan. Dec. 12, 2014), to support his requested amount of restitution. In that case, the court awarded $7,500 per victim in the "8 Kids" series. Dr. Hite seeks to distinguish this case by noting that the defendant in *Bellah* was found guilty of one count of transportation, rather than possession, of child pornography, and the defendant in that case possessed 68 images, as opposed to 14 images, of the victims in the "8 Kids" series. In *Bellah*, the district court noted that it had reviewed 11 other restitution orders in federal district courts since the Supreme Court's ruling in *Paroline* and based on that review, was not persuaded to adopt the approach used by some courts in reaching a restitution amount by dividing the amount of a victim's outstanding losses by the number of restitution orders. *Id.* at *4. Instead, the district court noted that it was persuaded that restitution should be based in part on the number of images of each victim that were possessed by the defendant, meaning that "more images are possessed by a defendant, the more damages are accountable to that defendant." *Id.* Further, the district court indicated that it would consider the

---

indicated that it was aware of approximately 66 other cases in which the victims in the "8 Kids" series were awarded restitution. Govt.'s Mot. for Restitution at 10. The restitution awards to the victims ranged from $50 to $37,500, with 60 of the 66 awards in the range of $50 to $16,000. *Id.* The government provided updated figures in its supplemental motion, indicating that the government was aware of approximately 132 cases in which the victims of the "8 Kids" series were awarded restitution. Govt.'s Supp. Mot. for Restitution at 7 n.2. The government did not provide updated information on the range of such awards. Accordingly, the Court shall accept the updated total number of cases with restitution awards and shall accept the original range of awards provided by the government for the purposes of its analysis.

average of the other awards in order to determine the proper amount of restitution. *Id.* As such, Dr. Hite argues that his proposed restitution amounts for victims John Doe II and John Doe IV of the "8 Kids" series are appropriate in light of the holding in *Bellah*. Dr. Hite sets forth that in *Bellah* the restitution amount represented $110 per image ($7,500 restitution amount/68 images of the victims in the "8 Kids" series). Here, Dr. Hite proposes a restitution amount that would represent $178 per image ($2,500 proposed restitution amount/14 images of the victims in the "8 Kids" series). Further, Dr. Hite asserts his conduct made him less culpable because he was charged only with possession, and not transportation, of child pornography like the defendant in *Bellah*.

This Court is not persuaded by Dr. Hite's argument that an appropriate restitution amount can be reached based on a mathematical formula that takes into account some of the factors that this Court is required to consider under *Paroline*. However, the Court agrees that in light of all the relevant factors, which the Court treats as rough guideposts for determining an appropriate restitution amount, and in light of the information provided regarding prior restitution awards for these victims, that $2,500 per victim in the "8 Kids" series is the appropriate amount of restitution. Accordingly, in an exercise of its discretion, and based on the entire record before it, the Court has determined that restitution in the amount of $2,500 for both John Doe II and John Doe IV comports with Defendant's relative role in the causal process that underlies the victim's general losses.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the government's [240] Motion for Restitution, and GRANTS the government's [250] Supplemental Motion for Restitution. The Court INCORPORATES as part of this Memorandum Opinion its oral findings made at the sentencing hearing held on June 12, 2015. In an exercise of its discretion, the Court finds that the following restitution amounts comport with Defendant's relative role in the causal process that

underlies the victim's general losses in light of the record before it and the relevant legal standard:

- Restitution in the amount of $5,000, to the victim from the "Misty" series.

- Restitution in the amount of $5,000, to the victim of the "Sponge B" series.

- Restitution in the amount of $1,750, to the victim of the "Angela" series.

- Restitution in the amount of $2,500, to the victim John Doe II of the "8 Kids" series.

- Restitution in the amount of $2,500, to the victim John Doe IV of the "8 Kids" series.

<div style="text-align: right;">

*/s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE

</div>